# Exhibit 3

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

HEIDI BERGMANN-SCHOCH, COALITION OF NEW JERSEY
FIREARM OWNERS, GUN OWNERS OF AMERICA, INC.,
and GUN OWNERS FOUNDATION,

    Plaintiffs,

-against-    Civil Action No.: 25-CV-997(CPO)(MJS)

MATTHEW PLATKIN, in his official capacity as the Attorney General of New Jersey, COLONEL PATRICK J. CALLAHAN, in his official capacity as the Superintendent of the New Jersey State Police, and LACHIA L. BRADSHAW, in her Official capacity as the Burlington County Prosecutor,

    Defendants.

_____

CONFIDENTIAL

DEPOSITION OF

COLONEL PATRICK J. CALLAHAN

TAKEN ON

THURSDAY, OCTOBER 2, 2025

8:56 A.M.

NEW JERSEY STATE POLICE

1040 RIVER ROAD WEST BUILDING 15 WEST

TRENTON, NEW JERSEY  08628

```
                                   Page 2                                         Page 4
 1            APPEARANCES                      1            EXAMINATION INDEX
 2                                             2                                       PAGE
 3   Appearing on behalf of the Plaintiffs:    3
 4   STEPHEN D. STAMBOULIEH, ESQUIRE           4   EXAMINATION BY MR. STAMBOULIEH        7
 5   Stamboulieh Law Offices, PLLC             5
 6   P.O. Box 428                              6
 7   Olive Branch, Mississippi  38654          7
 8   (601) 852-3440                            8
 9   stephen@sdslaw.us                         9
10                                            10
11   Appearing on behalf of the Defendants:   11
12   JONATHAN MANGEL, ESQUIRE                 12
13   State of New Jersey Department of Law and Public  13
14   Safety Division of Law                  14
15   124 Halsey Street P.O. Box 45029        15
16   Newark, New Jersey 07101                 16
17   (973) 504-6200                           17
18   jonathan.mangel@law.njoag.gov            18
19                                            19
20                                            20
21                                            21
22                                            22
23                                            23
24                                            24
25                                            25

                                   Page 3                                         Page 5
 1        APPEARANCES (CONTINUED)              1            EXHIBIT INDEX
 2                                             2   EXHIBIT                             PAGE
 3   Appearing on behalf of Colonel Patrick J. Callahan:   3
 4   ANDREW H. YANG, ESQUIRE                   4   1   NOTICE                          10
 5   State of New Jersey Department of Law and Public   5   2   CIVIL ACTION            17
 6   Safety Division of Law                    6   3   FIREARMS INFORMATION            25
 7   124 Halsey Street                         7   4   SPEER AMMUNITION                28
 8   P.O. Box 45029                            8   5   CHANGE NOTICE                   29
 9   Newark, New Jersey  07101                 9
10   (973) 504-6200                           10
11   andrew.yang@law.njoag.gov                11
12                                            12
13                                            13
14                                            14
15                                            15
16                                            16
17                                            17
18                                            18
19                                            19
20                                            20
21                                            21
22                                            22
23                                            23
24                                            24
25                                            25
```

COLONEL PATRICK CALLAHAN                    October 02, 2025                              6 to 9
89653                                                                                Confidential

Page 6

1              DEPOSITION OF
2         COLONEL PATRICK J. CALLAHAN
3                  TAKEN ON
4         THURSDAY, OCTOBER 2, 2025
5                  8:56 A.M.
6
7         THE REPORTER:  The time is 8:56 a.m., and
8  we are now on the record.
9         Sir, if I could have you raise your right
10 hand please.  Thank you.
11        Do you affirm under penalty of perjury
12 that you are Patrick Callahan and that the testimony
13 you are about to give will be the truth, the whole
14 truth, and nothing but the truth?
15        THE DEPONENT:  I do.
16        THE REPORTER:  Thank you, sir.  You can
17 put your hand down.
18        Counsel, for the record, will you please
19 state your names and whom you represent?
20        MR. STAMBOULIEH:  Stephen Stamboulieh, and
21 I represent the plaintiffs.
22        MR. MANGEL:  Deputy Attorney General
23 Jonathan Mangel, representing Defendant.
24        MR. YANG:  Deputy Attorney General Andrew
25 Yang representing Defendant Patrick Callahan.

Page 7

1         THE REPORTER:  Please proceed.
2         MR. STAMBOULIEH:  Thank you.
3  COLONEL PATRICK J. CALLAHAN, having been first duly
4  affirmed to tell the truth, was examined, and
5  testified as follows:
6  EXAMINATION
7  BY MR. STAMBOULIEH:
8     Q.   Good morning, Colonel Callahan.  My name
9  is Stephen Stamboulieh.  I'm here representing the
10 plaintiffs in this case.  And I'm going to ask you
11 just some basic questions about the lawsuit that's
12 been filed, your understanding of the lawsuit, and
13 then some other random things.  Have you ever given
14 a deposition before?
15    A.   Yes, I have.
16    Q.   Okay.  How long ago was that?
17    A.   A week ago, I think was my last one.
18    Q.   Okay.  Did it have anything to do with the
19 second amendment case?
20    A.   It did not.
21    Q.   Okay.  Great.  So you're generally
22 familiar with how this is going to go.  We have a
23 court reporter who's taking down everything we say.
24         I have a tendency to talk fast, Madam
25 Court Reporter.  So if for some reason you're

Page 8

1  missing what I'm -- what I'm saying, kick me under
2  the table or say something and I'll try to slow
3  down.
4         And the same goes for you.  If I talk too
5  fast or if I say something that you don't
6  understand, I ask that you don't answer the
7  question, that you ask me to rephrase it.  Since
8  she's taking down everything, if you say -- if you
9  give me an answer to a question that you didn't
10 understand or if I just asked it poorly, then we're
11 going to assume that you understood it and then it's
12 going to maybe create a problem down the road.
13        If at any point you need to get up and use
14 the restroom or anything, the only thing that I ask
15 is that you answer the question that's posed on the
16 table before you leave.  Beyond that, I will do my
17 best not to interrupt you while you're answering.
18 If you'll do your best not to interrupt me while --
19 while I'm asking the question so we can get a good
20 record.
21        And then also your attorneys are here with
22 you and they might be objecting to some of the
23 questions that I'm asking, so give like a little
24 pause before you answer to give them plenty of time
25 to object.  And then finally, as you see the court

Page 9

1  reporter's steadily writing right now.  Don't shake
2  your head yes or no.
3         You have to give verbal responses to
4  things, so the court reporter can take it down,
5  because uh-huh and uh-uh look really, really similar
6  on the transcript.  And we don't want there to be a
7  question as to what you actually want it to say.  Do
8  you understand?
9     A.   Yes, sir.
10    Q.   Okay.  Perfectly.  And is it okay if I
11 address you as Colonel?
12    A.   That's fine.  Thank you.
13    Q.   Okay.  Perfect.  The first exhibit that
14 I'm going to mark for this --
15        MR. MANGEL:  Counsel, sorry, one second.
16        MR. STAMBOULIEH:  Yes.
17        MR. MANGEL:  Before we dive into the
18 substantive testimony as the state for the record,
19 that the state will reserve its right to review the
20 transcript and designate anything is confidential
21 after the fact under the Court's protective order.
22 Thank you.
23        MR. STAMBOULIEH:  Yeah.  Can we just go
24 off the record for a second?
25        THE REPORTER:  Yeah.  It's 8:59.  We're

Page 10

1  off the record.
2          (WHEREUPON, a recess was taken.)
3          THE REPORTER: And we're on the record.
4  Go ahead, sir.
5          MR. MANGEL: Thank you.
6          Yes. We'd like to designate the whole
7  transcript as confidential at the outset, reserving
8  our right to review and adjust designation
9  accordingly.
10         MR. STAMBOULIEH: Yes. And the plaintiffs
11 will reserve their right to challenge any
12 confidentiality invocation at the appropriate time.
13         May I proceed? Thank you.
14         MR. MANGEL: Have at it.
15 BY MR. STAMBOULIEH:
16     Q.  First thing I'm going to hand you and your
17 attorney to look at is a Notice of Deposition.
18         THE REPORTER: Exhibit 1?
19         MR. STAMBOULIEH: It's just going to be 1.
20 Yes, ma'am.
21         (WHEREUPON, Exhibit 1 was marked for
22 identification.)
23         THE REPORTER: Okay.
24         MR. STAMBOULIEH: I haven't pre-marked
25 these or anything.

Page 11

1          THE REPORTER: Okay.
2  BY MR. STAMBOULIEH:
3      Q.  Have you ever seen this before, Colonel?
4      A.  I have not.
5      Q.  Okay. This sets -- if you flip to the
6  second page, on the back of the second page, this is
7  just the document that sets your deposition today.
8  And I just always make this my first exhibit.
9      A.  Thank you.
10     Q.  Yes, sir. And if I could have that back.
11 I'll ask the court reporter to mark this. How long
12 have you been the superintendent of state police,
13 Colonel?
14     A.  Eight years.
15     Q.  And what did -- what was your position
16 before current superintendent?
17     A.  I was the lieutenant colonel that oversaw
18 the operation's branch, which is basically all the
19 road troopers on the road, about 2,000 troopers.
20     Q.  In -- in your position as the
21 superintendent for the previous eight years, do you
22 set policy for the New Jersey State Police?
23     A.  I do.
24     Q.  Okay. Can you give me a -- a brief, like
25 obviously the -- well, let me start over. Obviously

Page 12

1  the New Jersey State Police has a lot of policies,
2  right?
3      A.  That's correct.
4      Q.  Okay. And do you have input from other
5  agencies when you're setting these policies from the
6  New Jersey State Police?
7      A.  I do.
8      Q.  Okay. And who would be like -- give me
9  like your top three agencies that would help you
10 establish policies?
11     A.  First and foremost, it's the Office of the
12 Attorney General as the state police as a division
13 within the Department of Law and Public Safety. So
14 anything we do with regards to policy is vetted and
15 reviewed by the Attorney General's Office.
16         Also within the Attorney General's Office
17 is the Office of Law Enforcement Professional
18 Standards, the acronym OLEPS, with regards to
19 recruiting, retention, hire, you know, training.
20 Basically, all aspects with regards to policy and
21 the Division of State Police. Definitely
22 collaboration with OLEPS within the Attorney
23 General's Office on those matters.
24     Q.  Would -- would -- would that one, the
25 Office of Law Enforcement Professional Standards, be

Page 13

1  one of the agencies that would collaborate with you
2  on setting like what firearms to carry, what type of
3  ammunition to carry?
4      A.  I don't think in that instance, no.
5  There's more relegated to training, to improvements
6  with promotional processes, discipline, internal
7  affairs, but not with regard specifically to
8  firearms. Doesn't mean that I don't know if we run
9  by those recommended changes by them, but I don't --
10 I don't recall them weighing in in any way on that
11 issue.
12     Q.  What would be the agency, if any, that you
13 collaborate with when you set like standards for
14 what type of firearms to carry or what type of
15 ammunition to carry?
16     A.  Our -- we have built within the Division
17 of State Police, a Weapons and Tactics Committee.
18     Q.  Mm-hmm.
19     A.  In concert with our ballistics unit, which
20 we deem as our subject matter experts, whether
21 that's with regards to a weapon and/or ammunition.
22 That's who we defer to in -- in that recommendation
23 process.
24     Q.  Do you know if New Jersey bans any type of
25 handguns? I'm not talking about machine guns, but

Page 14

1  I'm talking about just normal handguns.  Does New
2  Jersey ban any type of handgun that you know of?
3      A.   Not that I know of, no.
4           MR. MANGEL:  Objection to relevance.
5  BY MR. STAMBOULIEH:
6      Q.   Okay.  And do you know if New Jersey
7  prohibits its citizens from -- from, I guess
8  possessing any type of handgun?  Not machine guns,
9  but just normal handguns.
10     A.   Not that I know -- not that I'm aware of.
11 No.
12     Q.   Okay.  Are you familiar with the -- the
13 case that the plaintiffs filed?
14     A.   I am.
15     Q.   Okay.  Do you have an understanding of New
16 Jersey's laws on civilians or non-law enforcement,
17 non-military purchasing or carrying hollow point
18 ammunition?
19     A.   I do.
20     Q.   Okay.  And what is that understanding?
21     A.   The understanding is that beyond one's
22 private property or home, that hollow point
23 ammunition is not permitted to be in their weapon
24 with regards to a concealed carry permit or, again,
25 outside of their personal property.

Page 15

1      Q.   Okay.
2      A.   That's only for law enforcement in New
3  Jersey.
4      Q.   And does that -- when you say, "Private
5  property," do you also mean like carrying it inside
6  their car, or is it just limited to the home?
7           MR. MANGEL:  Objection, calls for legal
8  conclusion.
9           THE DEPONENT:  I think the legislation
10 speaks for itself, but I -- I think it means the --
11 the home.
12 BY MR. STAMBOULIEH:
13     Q.   Okay.  And is it true that law enforcement
14 are required to carry hollow points in New Jersey?
15     A.   In the state police, it's a requirement.
16 Yes.
17     Q.   Do you know if -- do you have any
18 knowledge of any other local -- I think you all call
19 them townships here, townships or cities or anything
20 like that, do you know what type of ammunition they
21 carry?
22     A.   I do not.
23     Q.   Okay.  And the -- the standard around that
24 law enforcement, or I guess I should say state
25 police carry Gold Dot hollow points?

Page 16

1      A.   That's correct.
2      Q.   Okay.  And do you know about how long that
3  policy has been in effect where you require them to
4  carry Gold Dot hollow points?
5      A.   For as long as my 30-plus-year career and
6  probably beyond that, maybe 40 plus years.
7      Q.   Okay.  You haven't changed that policy
8  since you've been the superintendent?
9      A.   I have not.
10     Q.   Okay.  Have you had an opportunity, or I
11 guess -- let me strike that.
12          Have you been asked to change that policy
13 in the eight years that you've been superintendent?
14     A.   I have not.
15     Q.   And do you anticipate changing that policy
16 at any point?
17     A.   I do not.
18     Q.   I'm going to hand you a document.  This
19 document purport to be your Answers to Plaintiff's
20 Second Set of Interrogatories.  Do you recall -- if
21 you flip to page 5, is that your signature?
22     A.   Yes, it is.
23     Q.   Okay.  Did you review these interrogatory
24 responses?
25     A.   I did.

Page 17

1      Q.   Is that -- and I -- I think I asked you,
2  I'm sorry.  That is your signature, right?
3      A.   That is my signature, yes.
4      Q.   Okay.  To -- to your knowledge, do you
5  have -- beyond the Gold Dot hollow points, is there
6  any type of other hollow points that the New Jersey
7  State Police, and that's all I'm asking about here,
8  are -- are allowed or required to carry?
9      A.   I'm -- I'm not aware of that, no.
10     Q.   Okay.  Are you familiar with Hornady
11 Critical Defense rounds?
12     A.   I am not.
13     Q.   Okay.  Are you familiar with the type of
14 rounds that non-law enforcement -- like non-law
15 enforcement, non-military -- non-military are
16 allowed to carry outside their home in New Jersey?
17     A.   Only -- only that hollow points are not
18 permitted.  Beyond that, the specifics of those
19 rounds, I'm not aware of that.
20     Q.   Perfect.  Perfect.
21          THE REPORTER:  This will be Exhibit 2
22 then, sir?
23          MR. STAMBOULIEH:  Yes.  Since we talked
24 about it, but I was just getting a signature.
25          (WHEREUPON, Exhibit 2 was marked for

Page 18

1  identification.)
2           MR. STAMBOULIEH:  Can you just take one
3  minute real quick please?
4           THE REPORTER:  It's 9:10 a.m.
5           (WHEREUPON, a recess was taken.)
6           THE REPORTER:  Okay.  The time is 9:11
7  a.m.  We're on the record.
8           Go ahead, sir.
9  BY MR. STAMBOULIEH:
10      Q.  Have you ever made a determination that
11  Hornady Critical Defense is not considered a hollow
12  point round?
13      A.  I'm unable to.  I don't have -- I wouldn't
14  have enough knowledge to answer that question.
15      Q.  Okay.  Just making sure that I understand
16  what you're saying, is that you don't know if you
17  have ever made a determination that Hornady Critical
18  Defense is not hollow point round?
19      A.  I'm not aware that I've made that
20  determination, no.
21      Q.  Okay.  Okay.  Do you know who at New
22  Jersey State Police would have made that
23  determination?  Or maybe a better way to ask it is
24  you said that you have the Weapons and Tactics
25  Committee and then a separate ballistics committee?

Page 19

1  Is that --
2       A.  The way it is, the Weapons and Tactics
3  Committee is comprised of I believe five enlisted
4  members.
5       Q.  Mm-hmm.
6       A.  One of those voting members is the subject
7  matter expert from our ballistics unit.
8       Q.  Okay.
9       A.  And based upon their analysis on either
10  weapon and/or ammunition, they make a recommendation
11  to the superintendent with regards to both.
12      Q.  Got you.  So in the previous eight years
13  you just don't know if you've made a determination
14  on a specific type of ammo, and whether or not it's
15  considered a hollow point round?
16      A.  I don't recall.
17      Q.  Okay.  Okay.  But you're not saying you
18  didn't, you just don't know if you did.
19      A.  That's correct.  I don't recall doing
20  that.
21      Q.  That's fair enough.  Are the -- the
22  handguns that New Jersey State Police carry, are
23  they Glock 17s?
24      A.  Glock 45, 9 millimeters.  We just
25  transitioned --

Page 20

1       Q.  Okay.
2       A.  -- to that in the past few months.
3       Q.  Nice.  Do you have an idea or an
4  understanding of what a Dum-Dum ammunition round is?
5       A.  I don't believe.  We refer to them
6  strictly as hollow points.  I don't -- we don't use
7  the -- that word, Dum-Dum, but I think they're
8  synonymous.
9       Q.  It's a very old term.
10      A.  Yes.
11      Q.  But that's what the statute says.  They
12  refer to Dum-Dum.  And I'm just wondering if you had
13  an idea of what that word meant?
14      A.  I -- it -- I think it's synonymous with a
15  hollow point.
16      Q.  Okay.  And beyond individuals being
17  allowed to possess hollow points in their personal
18  property, or their place of business, are they --
19  are there any other exceptions that you know about?
20          MR. MANGEL:  Objection, calling for a
21  legal conclusion.
22          THE DEPONENT:  I'm not aware of any other
23  exemptions.
24  BY MR. STAMBOULIEH:
25      Q.  Okay.

Page 21

1       A.  Or exceptions, that is.
2       Q.  Yeah.  If -- do you have any input -- and
3  maybe -- maybe we've -- maybe you've answered this
4  already and if you do -- if you have, I'm sorry for
5  asking it a different way, but just bear with me.
6           Do you have any input as to what
7  ammunition might be exempted from the hollow point
8  ban in New Jersey?
9       A.  I don't recall any opportunity that came
10  up for me to offer my input again, which wouldn't
11  come from me.  It would come from our weapons and
12  tactics --
13      Q.  Okay.
14      A.  -- crew.
15      Q.  In previous, when you were Lieutenant
16  Colonel over the operations, you didn't have any
17  input over what rounds may or may not be considered
18  hollow points?
19      A.  Not that I recall, no.  Never.
20      Q.  Okay.  Do you have any -- to your
21  knowledge, any policies on what ammo is or is not
22  considered a hollow point?
23      A.  I don't know if that's outlined in our SOP
24  with regards to the care and handling of firearms,
25  but I don't -- I think it's just what is, where --

Page 22

1  what is permitted.  I don't recall if it is --
2  what's not permitted in that SOP.
3       Q.   Okay.  On the New Jersey State Police
4  website -- and I don't have a document to show you
5  because these are my notes.  But I will represent to
6  you that on the New Jersey State Police website,
7  there's a firearm FAQ, a Frequently Asked Question.
8  Are you familiar with that?
9       A.   I am familiar with that.
10      Q.   Okay.  I'm going to read this to you and
11 then I'm going to ask you a question about it.  It
12 says, "Hollow point ammunition is not legal for
13 concealed carry in New Jersey."  You agree with
14 that, right?  I'll -- I'll reread it.
15           MR. MANGEL:  Sorry, if I may interject.
16 Can we go off the record for a second?
17           MR. STAMBOULIEH:  Yeah.
18           THE REPORTER:  Yeah.  It's 9:16.  We're
19 off the record.
20           (WHEREUPON, a recess was taken.)
21           THE REPORTER:  The time is 9:23, and we
22 are on the record.
23           Go ahead, sir.
24 BY MR. STAMBOULIEH:
25      Q.   I just handed you a document that you

Page 23

1  printed.  Thank you.  It's a frequently asked
2  questions posted on the New Jersey State Police
3  website.  Have you -- are you familiar with that
4  document?
5       A.   Yes, I am.
6       Q.   The statement that I read for you earlier,
7  we're talking about specifically point 20.  It says,
8  "Hollow point ammunition is not legal for concealed
9  carry in New Jersey."  Do you see that?
10      A.   I do.
11      Q.   Okay.  That's your understanding of the
12 law in New Jersey, right?
13      A.   It is.
14      Q.   Okay.  Right after that it says,
15 "Ammunition lacking a hollow cavity at the tip such
16 as those filled with a polymer filling are not
17 considered to be hollow point ammunition."  Do you
18 see that?
19      A.   I do.
20      Q.   Do you have an understanding as to that
21 specific sentence in that number 20?
22      A.   This is the first I've seen that.
23      Q.   Okay.  And this says, "Last reviewed on
24 June 17th, 2025."
25      A.   It does.

Page 24

1       Q.   Do you have any input on the frequently
2  asked questions on New Jersey State Police website?
3       A.   I do not.
4       Q.   Okay.  Do you know -- do you know who
5  writes these?
6       A.   I think it's our Firearms Investigations
7  Unit.
8       Q.   Does that sentence mean anything to you
9  about ammunition lacking a hollow cavity such as
10 those filled with a polymer filling?  Do you have an
11 understanding that that would make that ammunition
12 not hollow point ammunition?
13           MR. MANGEL:  Objection, compound question.
14           MR. STAMBOULIEH:  It probably is a
15 compound question.
16 BY MR. STAMBOULIEH:
17      Q.   If you understand you can answer, if you
18 don't ask me to rephrase.  Okay.
19      A.   My understanding of the question is that
20 those filled with a polymer filling are not
21 considered to be hollow point rounds.
22      Q.   Perfect.  Back to my previous questions,
23 when I was asking you if you made any determinations
24 for the ammunition such as the Hornady Critical
25 Defense, which I'll represent to you has a polymer

Page 25

1  filling in the hollow cavity of the ammunition.  You
2  don't make any of those determinations.  Is that
3  correct?
4       A.   That's correct.
5           MR. STAMBOULIEH:  Okay.
6           Can we make this the next exhibit, please?
7           THE REPORTER:  Yes.  That'll be Exhibit 3.
8  Okay.
9           (WHEREUPON, Exhibit 3 was marked for
10 identification.)
11 BY MR. STAMBOULIEH:
12      Q.   And you don't publish what type of handgun
13 ammunition the New Jersey State Police carry, do
14 you?  You don't, do you?
15      A.   I think we deem that confidential within
16 our SOP.  It's outlined there.
17      Q.   Okay.
18      A.   But we -- we don't make that document
19 public.
20      Q.   Okay.  Is there a -- a specific reason
21 that it's confidential?
22      A.   I don't know.  I -- I -- I would think
23 it's because of trooper safety.  But beyond that, I
24 -- I don't know why we wouldn't -- that's not a
25 public facing document.

Page 26

1  Q. Do you know if any other police
2  departments in New Jersey published their ammunition
3  allowances, or what's required for their police to
4  carry?
5  A. I do not.
6  Q. Okay. Are you familiar with any federal
7  agencies, Customs and Border Patrol, FBI, what type
8  of ammunition they carry?
9  A. I am not aware of what they carry.
10 Q. Okay. Do you know if they publish their
11 requirements? Or I, -- I shouldn't say
12 requirements. Let me strike that and start over.
13      My name is Stephen. I'm just kidding.
14      Do you know if -- if the like Customs and
15 Border Protection publish what type of ammunition
16 they carry?
17 A. I do not know.
18 Q. Okay. Do you know what the New York PD,
19 New York Police Department, what type of ammunition
20 they carry?
21 A. I do not.
22 Q. I'm going to hand you a document from
23 Speer. And you've probably never seen that. Is
24 that correct?
25 A. I have never seen this document.

Page 27

1  Q. Okay. If I can just take a -- a quick
2  minute and read that, if you will.
3  A. I've read it.
4  Q. Okay. Great. The Speer brand is the
5  brand of ammunition that New Jersey State Police
6  have in their -- in their weapons?
7  A. I think it is.
8       MR. MANGEL: Objection, assuming facts not
9  in evidence.
10      THE DEPONENT: I think it is what we
11 carry.
12 BY MR. STAMBOULIEH:
13 Q. Okay. And this -- this references, if we
14 look down to the one, two, three -- fourth
15 paragraph, it talks about the Speer Gold Dot 9-
16 millimeter round. Do you see that?
17 A. I do.
18 Q. Is that the ammunition that New Jersey
19 State Police carry the Spear Gold Dot?
20 A. I think it is, yes.
21 Q. Do you know what size grain? Is it -- it
22 says 124-grain +P. Is that maybe too esoteric of a
23 question?
24 A. I -- I don't know what the grain is on
25 ours.

Page 28

1       MR. STAMBOULIEH: Okay. That's fair
2  enough.
3       I'd like to make this Exhibit 4 please.
4       THE REPORTER: Thank you.
5       (WHEREUPON, Exhibit 4 was marked for
6  identification.)
7       MR. STAMBOULIEH: Would you like me to
8  make this entirely redacted document an exhibit or
9  can I pick and pull things out of this that I don't
10 need to make --
11      MR. MANGEL: Let's go off the record.
12      THE REPORTER: It's 9:30 a.m. We're off
13 the record.
14      (WHEREUPON, a recess was taken.)
15      THE REPORTER: It's 9:31. We're on the
16 record.
17      Go ahead, sir.
18 BY MR. STAMBOULIEH:
19 Q. I'm going to hand you an entire document.
20 Can you identify what that document is please?
21 A. This is SOPC31 of the care and handling of
22 authorized firearms and defensive equipment for the
23 New Jersey State Police.
24 Q. Are you familiar with that document?
25 A. I am.

Page 29

1  Q. Excellent. I only have one copy of this,
2  but I'm going to ask you certain questions, but
3  we're going to mark this as the next exhibit, which
4  --
5       THE REPORTER: This will be Exhibit 5.
6       (WHEREUPON, Exhibit 5 was marked for
7  identification.)
8       MR. STAMBOULIEH: -- which will be 5.
9       THE REPORTER: To just --
10      MR. STAMBOULIEH: Yes, ma'am. I'll let
11 you do it.
12 BY MR. STAMBOULIEH:
13 Q. I am going to do my best to keep these
14 pages in order, but I'm going to hand you certain
15 pages out of these. On the bottom of page 3, can
16 you review that please, the first one?
17 A. I've read it.
18 Q. Okay. And what does that first section
19 state please?
20 A. Under section III(A)(1) states, "The
21 superintendent shall determine the particular
22 models, makes, types, and configurations of
23 firearms, ammunition, and accessories that will be
24 authorized for use by members."
25 Q. Excellent. So have you had any input or

Page 30

1  have you made any determinations on what ammunition
2  should be carried by the New Jersey State Police,
3  its members?
4      A.   Again, I rely on the Weapons and Tactics
5  Committee's recommendations.  I delegate that
6  authority to them.  But ultimately as the
7  superintendent --
8      Q.   It flows up to you?
9      A.   It does ultimately land on the -- on the
10 superintendent's authority.
11     Q.   Okay.  So with -- with that said, you have
12 the authority, but you don't recall ever having
13 changed anything in the eight years that you've been
14 superintendent with regard to firearms and
15 ammunition?
16     A.   That's correct.
17          MR. MANGEL:  Objection, asked and
18 answered.
19 BY MR. STAMBOULIEH:
20     Q.   Fair.  I am going to hand you page 50 of
21 this document.  Can you look at that please?
22     A.   Yeah.  I've read it.
23     Q.   Okay.  And the -- where it says discusses
24 the nine millimeter round, that's where it
25 references Gold Dot hollow points.  Is that correct?

Page 31

1      A.   That is correct.
2      Q.   Okay.  So this is the only ammunition that
3  a trooper for the New Jersey State Police is allowed
4  to use in their duty weapon?
5      A.   That is correct.
6      Q.   Okay.  And I'm not talking about training
7  because that's a separate type of round that's
8  approved.  Isn't that right?
9      A.   That is correct.
10     Q.   Okay.  And what type of training round is
11 allowed?
12     A.   It's just not a hollow point.  It's a -- a
13 rounded nose.
14     Q.   Like full metal jacket?  If that's what
15 it's called.
16     A.   Yeah.
17     Q.   Okay.
18     A.   I'm not aware of -- of what the -- what
19 the technical term for that non-hollow pointed round
20 is.
21     Q.   Okay.  And would you agree with me that
22 the non-hollow point round that the New Jersey State
23 police use for training is -- is the only round
24 other than the critical defense round that's allowed
25 for individuals with concealed carry permits to

Page 32

1  carry in New Jersey?
2      A.   I don't understand the question.
3      Q.   Thank you.  Thank you.  I will rephrase
4  it.  The non-hollow point round, as you called it,
5  in my term was full metal jacket, but that's okay.
6  It doesn't have to be, your term.  Is -- is allowed
7  for New Jersey State Police to use for training,
8  right, the non-hollow point round?
9      A.   That is correct.
10     Q.   Okay.  The non-hollow point round,
11 whatever it's called, would be the only round that
12 individuals can carry on a concealed weapons permit
13 in New Jersey, outside of the home, right?
14     A.   That's my understanding, yes.
15     Q.   Okay.  Perfect.  I will take that back
16 from you.  Thank you.
17          Are you familiar with the New Jersey
18 Department of Corrections and what type of
19 ammunition they use?
20     A.   I'm familiar with the department.  I am
21 not familiar with the weapon or round that they use.
22     Q.   Okay.  Do you instruct your -- they're
23 called troopers, right, not officers?
24     A.   Troopers.  Yes, sir.
25     Q.   Troopers.  Okay.  Do you -- do you

Page 33

1  instruct your troopers on priorities of -- of laws
2  to enforce and people to arrest?
3      A.   I don't -- I'm not sure I understand the
4  question.
5      Q.   Okay.  Do you -- and you don't have to
6  tell me what your priorities are.  I'm not asking
7  that.
8      A.   Right.
9      Q.   But do you have like let's say a -- a list
10 of priorities?  Like this is the kind of crime that
11 we're looking at, this is what I want you to focus
12 on, things like that to your troopers.
13     A.   No.
14     Q.   Okay.  It's just all crimes that -- under
15 the New Jersey statutes is what you enforce?
16     A.   That's correct.
17     Q.   Okay.  In your eight years as
18 superintendent, are you aware -- and if you're not,
19 it's okay -- of any arrests being made for non-
20 military, non-law enforcement, carrying hollow
21 points outside the home?
22     A.   I'm not aware of any.
23     Q.   Okay.  But that would be a crime that you
24 would arrest people for if you noticed them
25 violating that law, right?

Page 34

1  A.  That's correct.
2  Q.  Okay.  Would you agree with me that
3  ammunition is necessary to effectively use a
4  firearm?
5       MR. MANGEL:  Objection, vague.
6       THE DEPONENT:  I would agree with you.
7  BY MR. STAMBOULIEH:
8  Q.  Okay.  Do you have any understanding as to
9  why New Jersey doesn't require their troopers to use
10 non-hollow points in their duty guns?
11 A.  I think -- is -- can you just rephrase the
12 question?
13 Q.  Sure.  You testified earlier that New
14 Jersey requires their troopers to use Gold Dot
15 hollow points in their duty guns, right?
16 A.  Correct.
17 Q.  Okay.  Is there a reason that you know of
18 that New Jersey doesn't require them to use non-
19 hollow point rounds in their duty guns?
20 A.  No.  I -- I can only speak to as why we
21 think they carry hollow points, which is two-pronged
22 from my understanding.  One is to eliminate the
23 threat as -- as quickly as possible.
24 Q.  Mm-hmm.
25 A.  And two, to prevent potential innocent

Page 35

1  unintended targets by getting struck by a -- a round
2  that may pass through.
3  Q.  When you say, "May pass through," is that
4  like the over penetration?
5  A.  Yes.  That's what it's been referred to
6  often to.
7  Q.  Is -- is it -- is it because hollow points
8  have a tendency to not over penetrate their target?
9  A.  That's my understanding.
10 Q.  Okay.  So beyond the two prongs that you
11 just identified, do you have any other
12 understanding, or is it limited to those two?
13 A.  It's limited to those two.
14 Q.  Okay.  So based on the first prong of that
15 -- that it stops the threat quickly, are you -- I
16 don't want to put words in your mouth, so I'm going
17 to just ask you this.  Do -- is it your
18 understanding that the non-hollow points don't stop
19 the threat as quickly as hollow points do?
20     MR. MANGEL:  Objection, calling for
21 speculation.
22     THE DEPONENT:  Yeah.  I don't -- I don't
23 have the answer to that.  I don't know what studies
24 have been done or what ones are out there with
25 regards to effectiveness of hollow point versus non-

Page 36

1  hollow points.
2  BY MR. STAMBOULIEH:
3  Q.  Okay.  But it was just your understanding
4  on prong one that it stops the threat quickly.  Is
5  that just something that you think but don't
6  actually know?
7  A.  It -- it -- again, it's my understanding
8  that the -- the round, due to its -- the way it's
9  construction tumbles, and is intended to create more
10 trauma, which would then equate to the threat being
11 stopped quicker.
12 Q.  Yeah.
13 A.  Again, maybe more of a personal
14 understanding than -- than one based on a -- on a
15 professional study or information.
16 Q.  And you haven't looked at any studies like
17 from the National Institute of Health or the FBI
18 that says exactly that?
19 A.  I have not.
20     MR. STAMBOULIEH:  Okay.  Okay.  If you
21 would just give me one minute, I will make sure that
22 I'm done and we will probably be done.
23     THE REPORTER:  It's 9:41.  We're off the
24 record.
25     (WHEREUPON, a recess was taken.)

Page 37

1      THE REPORTER:  The time is 9:44 a.m.  And
2  we are on the record.
3      MR. STAMBOULIEH:  Thank you, ma'am.
4  BY MR. STAMBOULIEH:
5  Q.  Do you know why New Jersey has banned it's
6  non-military, non-law enforcement from carrying
7  hollow points outside the home?
8  A.  I do not know that.
9      MR. STAMBOULIEH:  Perfect.  That's all I
10 have for you.
11     It's your witness.
12     MR. MANGEL:  We'll go off the record for a
13 second.
14     THE REPORTER:  Yeah.  It's 9:44.  We're
15 off the record.
16     (WHEREUPON, a recess was taken.)
17     THE REPORTER:  It's 9:45.  We're on the
18 record.
19     Go ahead, sir.
20     MR. MANGEL:  We have nothing further.
21     MR. STAMBOULIEH:  Nice.
22     THE REPORTER:  All right.  I just wanted
23 to check, Mr. Stamboulieh, if you wanted to order
24 the original of this transcript, sir.
25     MR. STAMBOULIEH:  I don't know if I need

Page 38

1  an original-original.  I do need a copy though.
2          THE REPORTER:  Okay.  So the original has
3  to get ordered first, in order for copies to be
4  released.
5          MR. STAMBOULIEH:  I need an original.
6          THE REPORTER:  Yeah.  So --
7          MR. STAMBOULIEH:  Yeah.  And also do you
8  want to explain read and sign or would you like me
9  to do it?
10         MR. MANGEL:  Sorry?
11         MR. STAMBOULIEH:  Read and sign.  I do
12 that every person.
13         MR. MANGEL:  Oh, of -- of the process to
14 --
15         MR. STAMBOULIEH:  Yeah.
16         MR. MANGEL:  -- to -- to review -- review
17 the transcript, and then have the witness sign off
18 and have us do errata and all that.
19         MR. STAMBOULIEH:  Yeah.  Whatever it is.
20 I mean, I don't know if I'm supposed to do it or if
21 you're supposed to do it.
22         MR. MANGEL:  I -- we can -- we can I guess
23 settle the -- the errata process after the fact, if
24 you're okay with that.
25         MR. STAMBOULIEH:  I -- I don't care.  I

Page 39

1  just --
2          MR. MANGEL:  Yeah.  We'll -- we'll --
3  we'll -- we'll email with you after the fact --
4          MR. STAMBOULIEH:  Yeah.
5          MR. MANGEL:  -- to discuss who will -- who
6  will, you know, we'll -- we'll -- I'm sure we'll do
7  a joint errata sheet.  It'll just be a matter of who
8  does it first.
9          MR. STAMBOULIEH:  I think this is my
10 second deposition in New Jersey, so I don't know.
11 Like in Mississippi, we're required to state certain
12 things and so like I just always explain it on the
13 record so that --
14         MR. MANGEL:  Oh, feel -- free to do so.
15         MR. STAMBOULIEH:  Oh, okay.
16         MR. MANGEL:  Yeah.
17         THE REPORTER:  Go ahead.
18         MR. STAMBOULIEH:  Thank you.
19         THE REPORTER:  Mm-hmm.
20         MR. STAMBOULIEH:  You have an opportunity
21 or a right to read and sign your deposition.  That's
22 to make sure that all of your testimony was
23 accurately taken down by the court reporter.  It's
24 not an opportunity to change what you said, but if
25 you said yes and she wrote down no, it's an

Page 40

1  opportunity to correct misstatements or
2  mistranscriptions from the court reporter.
3          Because she probably mistranscribed a lot
4  of your testimony, right.  That's a joke by the way.
5  So you have the right, you can exercise it or not.
6  It's up to you.
7          THE DEPONENT:  I understand.
8          MR. STAMBOULIEH:  Okay.  Would you like to
9  exercise your right to read and sign?
10         THE DEPONENT:  Yes, I would.
11         MR. STAMBOULIEH:  Okay.
12         THE REPORTER:  I did also want to check
13 with you, Mr. Mangel, if you wanted to order a copy
14 of the transcription.
15         MR. MANGEL:  Yes, please.
16         THE REPORTER:  Okay.  All right.
17         With that, the time is 9:46 a.m., and we
18 are off the record.
19         (WHEREUPON, the deposition of COLONEL
20 PATRICK J. CALLAHAN was concluded at 9:46 a.m.)

Page 41

1                    CERTIFICATE
2
3      I, Megan Ramirez, do hereby certify that I
4  reported all proceedings adduced in the foregoing
5  matter and that the foregoing transcript pages
6  constitutes a full, true and accurate record of said
7  proceedings to the best of my ability.
8
9      I further certify that I am neither related to
10 counsel or any party to the proceedings nor have any
11 interest in the outcome of the proceedings.
12
13     IN WITNESS HEREOF, I have hereunto set my hand
14 this 16th day of October, 2025.
15
16
17
18     [signature]
19     Megan Ramirez
20     Certificate No. 1510

```
                                              Page 42
 1  Date:      10/02/25  Assignment #: 89653
 2  Deponent:  Colonel Patrick Callahan
 3  Case:      Berhmann-Schoch, et al vs. Platkin, et al
 4
 5  ATTORNEY - TRANSCRIPT ENCLOSED:
 6  signature of your client is required.  Please have
 7  your client make any corrections necessary.
 8  Sign the Correction Sheet where indicated.  Forward
 9  a COPY of the executed Correction Sheet directly to
10  the attorney(s) listed below.  (The Address(es) can
11  be found on the Appearance page of the deposition.)
12
13  Also, send a COPY of the executed Correction Sheet
14  to our corporation.
15
16  CC:  Naegeli Deposition and Trial
17       Stephen D. Stambouliah, Esquire
18       Andrew H. Yang, Esquire
19
20
21
22
23
24
25
```

```
                                              Page 43
 1                CORRECTION SHEET
 2  Deposition of: Col. Patrick Callahan  Date: 10/02/25
 3  Regarding: Berhmann-Schoch, et al vs. Platkin, et al
 4  Reporter: Ramirez/Mwangi
 5  _____
 6  Please make all corrections, changes or
 7  clarifications to your testimony on this sheet,
 8  showing page and line number.  If there are no
 9  changes, write "none" across the page.  Sign this
10  sheet on the line provided.
11  Page  Line  Reason for Change
12  ____  ____  _____
13  ____  ____  _____
14  ____  ____  _____
15  ____  ____  _____
16  ____  ____  _____
17  ____  ____  _____
18  ____  ____  _____
19  ____  ____  _____
20  ____  ____  _____
21  ____  ____  _____
22  ____  ____  _____
23  ____  ____  _____
24          Signature: _____
25                         Colonel Patrick Callahan
```

```
                                              Page 44
 1                 DECLARATION
 2  Deposition of: Colonel Patrick Callahan  Date: 10/02/2025
 3  Regarding: HEIDI BERGMANN-SCHOCH -against- MATTHEW PLATKIN
 4  Reporter: Megan Ramirez
 5  _____
 6
 7  I declare under penalty of perjury the following to be
 8  true:
 9
10  I have read my deposition and the same is true and
11  accurate save and except for any corrections as made
12  by me on the Correction Sheet herein.
13
14  Signed at _____, _____
15  on the _____ day of _____, 20____.
16
17
18
19
20
21
22
23
24          Signature: _____
25                         Colonel Patrick Callahan
```

**Exhibits**

**EX001 NOTICE** 10:18,21
**EX002 CIVIL ACTION** 17:21,25
**EX003 FIREARMS INFORMATION** 25:7,9
**EX004 SPEER AMMUNITION** 28:3,5
**EX005 CHANGE NOTICE** 29:5,6

**+**

**+P** 27:22

**1**

**1** 10:18,19,21
**124-grain** 27:22
**17s** 19:23
**17th** 23:24

**2**

**2** 17:21,25
**2,000** 11:19
**20** 23:7,21
**2025** 23:24

**3**

**3** 25:7,9 29:15
**30-plus-year** 16:5

**4**

**4** 28:3,5
**40** 16:6
**45** 19:24

**5**

**5** 16:21 29:5,6,8
**50** 30:20

**8**

**8:56** 6:7
**8:59** 9:25

**9**

**9** 19:24
**9-** 27:15
**9:10** 18:4
**9:11** 18:6
**9:16** 22:18
**9:23** 22:21
**9:30** 28:12
**9:31** 28:15
**9:41** 36:23
**9:44** 37:1,14
**9:45** 37:17
**9:46** 40:17

**A**

**a.m.** 6:7 18:4,7 28:12 37:1 40:17
**accessories** 29:23
**accurately** 39:23
**acronym** 12:18
**address** 9:11
**adjust** 10:8
**affairs** 13:7
**affirm** 6:11
**affirmed** 7:4
**agencies** 12:5,9 13:1 26:7
**agency** 13:12
**agree** 22:13 31:21 34:2,6
**ahead** 10:4 18:8 22:23 28:17 37:19 39:17
**allowances** 26:3
**allowed** 17:8,16 20:17 31:3,11,24 32:6
**amendment** 7:19
**ammo** 19:14 21:21
**ammunition** 13:3, 15,21 14:18,23 15:20 19:10 20:4 21:7 22:12 23:8,15, 17 24:9,11,12,24 25:1,13 26:2,8,15, 19 27:5,18 29:23 30:1,15 31:2 32:19 34:3
**analysis** 19:9
**and/or** 13:21 19:10
**Andrew** 6:24
**answering** 8:17
**Answers** 16:19
**anticipate** 16:15
**approved** 31:8
**arrest** 33:2,24
**arrests** 33:19
**aspects** 12:20
**assume** 8:11
**assuming** 27:8
**attorney** 6:22,24 10:17 12:12,15,16, 22
**attorneys** 8:21
**authority** 30:6,10,12
**authorized** 28:22 29:24
**aware** 14:10 17:9,19 18:19 20:22 26:9 31:18 33:18,22

**B**

**back** 11:6,10 24:22 32:15
**ballistics** 13:19 18:25 19:7
**ban** 14:2 21:8
**banned** 37:5
**bans** 13:24
**based** 19:9 35:14 36:14
**basic** 7:11
**basically** 11:18 12:20
**bear** 21:5

**Border** 26:7,15
**bottom** 29:15
**branch** 11:18
**brand** 27:4,5
**built** 13:16
**business** 20:18

### C

**call** 15:18
**Callahan** 6:12,25 7:3,8
**called** 31:15 32:4, 11,23
**calling** 20:20 35:20
**calls** 15:7
**car** 15:6
**care** 21:24 28:21 38:25
**career** 16:5
**carried** 30:2
**carry** 13:2,3,14,15 14:24 15:14,21,25 16:4 17:8,16 19:22 22:13 23:9 25:13 26:4,8,9,16,20 27:11,19 31:25 32:1,12 34:21
**carrying** 14:17 15:5 33:20 37:6
**case** 7:10,19 14:13
**cavity** 23:15 24:9 25:1
**challenge** 10:11
**change** 16:12 39:24

**changed** 16:7 30:13
**changing** 16:15
**check** 37:23 40:12
**cities** 15:19
**citizens** 14:7
**civilians** 14:16
**collaborate** 13:1,13
**collaboration** 12:22
**colonel** 7:3,8 9:11 11:3,13,17 21:16
**committee** 13:17 18:25 19:3
**Committee's** 30:5
**compound** 24:13,15
**comprised** 19:3
**concealed** 14:24 22:13 23:8 31:25 32:12
**concert** 13:19
**conclusion** 15:8 20:21
**confidential** 9:20 10:7 25:15,21
**confidentiality** 10:12
**configurations** 29:22
**considered** 18:11 19:15 21:17,22 23:17 24:21
**construction** 36:9
**copies** 38:3
**copy** 29:1 38:1 40:13

**correct** 12:3 16:1 19:19 25:3,4 26:24 30:16,25 31:1,5,9 32:9 33:16 34:1,16 40:1
**Corrections** 32:18
**Counsel** 6:18 9:15
**court** 7:23,25 8:25 9:4 11:11 39:23 40:2
**Court's** 9:21
**create** 8:12 36:9
**crew** 21:14
**crime** 33:10,23
**crimes** 33:14
**critical** 17:11 18:11, 17 24:24 31:24
**current** 11:16
**Customs** 26:7,14

### D

**deem** 13:20 25:15
**Defendant** 6:23,25
**defense** 17:11 18:11,18 24:25 31:24
**defensive** 28:22
**defer** 13:22
**delegate** 30:5
**department** 12:13 26:19 32:18,20
**departments** 26:2
**DEPONENT** 6:15 15:9 20:22 27:10 34:6 35:22 40:7,10

**deposition** 7:14 10:17 11:7 39:10,21
**Deputy** 6:22,24
**designate** 9:20 10:6
**designation** 10:8
**determination** 18:10,17,20,23 19:13
**determinations** 24:23 25:2 30:1
**determine** 29:21
**discipline** 13:6
**discuss** 39:5
**discusses** 30:23
**dive** 9:17
**division** 12:12,21 13:16
**document** 11:7 16:18,19 22:4,25 23:4 25:18,25 26:22,25 28:8,19, 20,24 30:21
**Dot** 15:25 16:4 17:5 27:15,19 30:25 34:14
**due** 36:8
**duly** 7:3
**Dum-dum** 20:4,7,12
**duty** 31:4 34:10,15, 19

### E

**earlier** 23:6 34:13
**effect** 16:3

effectively 34:3
effectiveness 35:25
eliminate 34:22
email 39:3
enforce 33:2,15
enforcement 12:17, 25 14:16 15:2,13,24 17:14,15 33:20 37:6
enlisted 19:3
entire 28:19
equate 36:10
equipment 28:22
errata 38:18,23 39:7
esoteric 27:22
establish 12:10
evidence 27:9
EXAMINATION 7:6
examined 7:4
Excellent 29:1,25
exceptions 20:19 21:1
exempted 21:7
exemptions 20:23
exercise 40:5,9
exhibit 9:13 10:18, 21 11:8 17:21,25 25:6,7,9 28:3,5,8 29:3,5,6
expert 19:7
experts 13:20
explain 38:8 39:12

**F**

facing 25:25
fact 9:21 38:23 39:3
facts 27:8
fair 19:21 28:1 30:20
familiar 7:22 14:12 17:10,13 22:8,9 23:3 26:6 28:24 32:17,20,21
FAQ 22:7
fast 7:24 8:5
FBI 26:7 36:17
federal 26:6
feel 39:14
filed 7:12 14:13
filled 23:16 24:10,20
filling 23:16 24:10, 20 25:1
finally 8:25
fine 9:12
firearm 22:7 34:4
firearms 13:2,8,14 21:24 24:6 28:22 29:23 30:14
flip 11:5 16:21
flows 30:8
focus 33:11
foremost 12:11
fourth 27:14
free 39:14
frequently 22:7 23:1 24:1
full 31:14 32:5

**G**

General 6:22,24 12:12
General's 12:15,16, 23
generally 7:21
give 6:13 8:9,23,24 9:3 11:24 12:8 36:21
Glock 19:23,24
Gold 15:25 16:4 17:5 27:15,19 30:25 34:14
good 7:8 8:19
grain 27:21,24
Great 7:21 27:4
guess 14:7 15:24 16:11 38:22
guns 13:25 14:8 34:10,15,19

**H**

hand 6:10,17 10:16 16:18 26:22 28:19 29:14 30:20
handed 22:25
handgun 14:2,8 25:12
handguns 13:25 14:1,9 19:22
handling 21:24 28:21
head 9:2

Health 36:17
hire 12:19
hollow 14:17,22 15:14,25 16:4 17:5, 6,17 18:11,18 19:15 20:6,15,17 21:7,18, 22 22:12 23:8,15,17 24:9,12,21 25:1 30:25 31:12 33:20 34:15,19,21 35:7, 19,25 36:1 37:7
home 14:22 15:6,11 17:16 32:13 33:21 37:7
Hornady 17:10 18:11,17 24:24

**I**

idea 20:3,13
identification 10:22 18:1 25:10 28:6 29:7
identified 35:11
identify 28:20
III(A)(1) 29:20
improvements 13:5
individuals 20:16 31:25 32:12
information 36:15
innocent 34:25
input 12:4 21:2,6,10, 17 24:1 29:25
inside 15:5
instance 13:4
Institute 36:17

**instruct** 32:22 33:1

**intended** 36:9

**interject** 22:15

**internal** 13:6

**Interrogatories** 16:20

**interrogatory** 16:23

**interrupt** 8:17,18

**Investigations** 24:6

**invocation** 10:12

**issue** 13:11

### J

**jacket** 31:14 32:5

**Jersey** 11:22 12:1,6 13:24 14:2,6 15:3, 14 17:6,16 18:22 19:22 21:8 22:3,6, 13 23:2,9,12 24:2 25:13 26:2 27:5,18 28:23 30:2 31:3,22 32:1,7,13,17 33:15 34:9,14,18 37:5 39:10

**Jersey's** 14:16

**joint** 39:7

**joke** 40:4

**Jonathan** 6:23

**June** 23:24

### K

**kick** 8:1

**kidding** 26:13

**kind** 33:10

**knowledge** 15:18 17:4 18:14 21:21

### L

**lacking** 23:15 24:9

**land** 30:9

**law** 12:13,17,25 15:2,13,24 23:12 33:25

**laws** 14:16 33:1

**lawsuit** 7:11,12

**leave** 8:16

**legal** 15:7 20:21 22:12 23:8

**legislation** 15:9

**lieutenant** 11:17 21:15

**limited** 15:6 35:12, 13

**list** 33:9

**local** 15:18

**long** 7:16 11:11 16:2,5

**looked** 36:16

**lot** 12:1 40:3

### M

**machine** 13:25 14:8

**Madam** 7:24

**made** 18:10,17,19, 22 19:13 24:23 30:1 33:19

**make** 11:8 19:10 24:11 25:2,6,18 28:3,8,10 36:21 39:22

**makes** 29:22

**making** 18:15

**Mangel** 6:22,23 9:15,17 10:5,14 14:4 15:7 20:20 22:15 24:13 27:8 28:11 30:17 34:5 35:20 37:12,20 38:10,13,16,22 39:2,5,14,16 40:13, 15

**mark** 9:14 11:11 29:3

**marked** 10:21 17:25 25:9 28:5 29:6

**matter** 13:20 19:7 39:7

**matters** 12:23

**means** 15:10

**meant** 20:13

**members** 19:4,6 29:24 30:3

**metal** 31:14 32:5

**military** 33:20

**millimeter** 27:16 30:24

**millimeters** 19:24

**minute** 18:3 27:2 36:21

**missing** 8:1

**Mississippi** 39:11

**misstatements** 40:1

**mistranscribed** 40:3

**mistranscriptions** 40:2

**Mm-hmm** 13:18 19:5 34:24 39:19

**models** 29:22

**months** 20:2

**morning** 7:8

**mouth** 35:16

### N

**names** 6:19

**National** 36:17

**Nice** 20:3 37:21

**non-** 33:19 34:18 35:25

**non-hollow** 31:19, 22 32:4,8,10 34:10 35:18

**non-law** 14:16 17:14 33:20 37:6

**non-military** 14:17 17:15 37:6

**normal** 14:1,9

**nose** 31:13

**notes** 22:5

**Notice** 10:17

**noticed** 33:24

**number** 23:21

### O

**object** 8:25

**objecting** 8:22

**Objection** 14:4 15:7

COLONEL PATRICK CALLAHAN 89653                October 02, 2025                                                        49
ConfidentialIndex: offer..read

20:20 24:13 27:8 30:17 34:5 35:20
**offer** 21:10
**Office** 12:11,15,16, 17,23,25
**officers** 32:23
**OLEPS** 12:18,22
**one's** 14:21
**operation's** 11:18
**operations** 21:16
**opportunity** 16:10 21:9 39:20,24 40:1
**order** 9:21 29:14 37:23 38:3 40:13
**ordered** 38:3
**original** 37:24 38:2,5
**original-original** 38:1
**outlined** 21:23 25:16
**outset** 10:7
**oversaw** 11:17

**P**

**pages** 29:14,15
**paragraph** 27:15
**pass** 35:2,3
**past** 20:2
**Patrick** 6:12,25 7:3
**Patrol** 26:7
**pause** 8:24
**PD** 26:18

**penalty** 6:11
**penetrate** 35:8
**penetration** 35:4
**people** 33:2,24
**Perfect** 9:13 17:20 24:22 32:15 37:9
**Perfectly** 9:10
**perjury** 6:11
**permit** 14:24 32:12
**permits** 31:25
**permitted** 14:23 17:18 22:1,2
**person** 38:12
**personal** 14:25 20:17 36:13
**pick** 28:9
**place** 20:18
**Plaintiff's** 16:19
**plaintiffs** 6:21 7:10 10:10 14:13
**plenty** 8:24
**point** 8:13 14:17,22 16:16 18:12,18 19:15 20:15 21:7,22 22:12 23:7,8,17 24:12,21 31:12,22 32:4,8,10 34:19 35:25
**pointed** 31:19
**points** 15:14,25 16:4 17:5,6,17 20:6,17 21:18 30:25 33:21 34:10,15,21 35:7, 18,19 36:1 37:7
**police** 11:12,22 12:1,6,12,21 13:17

15:15,25 17:7 18:22 19:22 22:3,6 23:2 24:2 25:13 26:1,3, 19 27:5,19 28:23 30:2 31:3,23 32:7
**policies** 12:1,5,10 21:21
**policy** 11:22 12:14, 20 16:3,7,12,15
**polymer** 23:16 24:10,20,25
**poorly** 8:10
**posed** 8:15
**position** 11:15,20
**possess** 20:17
**possessing** 14:8
**posted** 23:2
**potential** 34:25
**pre-marked** 10:24
**prevent** 34:25
**previous** 11:21 19:12 21:15 24:22
**printed** 23:1
**priorities** 33:1,6,10
**private** 14:22 15:4
**problem** 8:12
**proceed** 7:1 10:13
**process** 13:23 38:13,23
**processes** 13:6
**professional** 12:17, 25 36:15
**prohibits** 14:7
**promotional** 13:6

**prong** 35:14 36:4
**prongs** 35:10
**property** 14:22,25 15:5 20:18
**Protection** 26:15
**protective** 9:21
**public** 12:13 25:19, 25
**publish** 25:12 26:10, 15
**published** 26:2
**pull** 28:9
**purchasing** 14:17
**purport** 16:19
**put** 6:17 35:16

**Q**

**question** 8:7,9,15, 19 9:7 18:14 22:7, 11 24:13,15,19 27:23 32:2 33:4 34:12
**questions** 7:11 8:23 23:2 24:2,22 29:2
**quick** 18:3 27:1
**quicker** 36:11
**quickly** 34:23 35:15, 19 36:4

**R**

**raise** 6:9
**random** 7:13
**read** 22:10 23:6 27:2,3 29:17 30:22

38:8,11 39:21 40:9

**real** 18:3

**reason** 7:25 25:20 34:17

**recall** 13:10 16:20 19:16,19 21:9,19 22:1 30:12

**recess** 10:2 18:5 22:20 28:14 36:25 37:16

**recommendation** 13:22 19:10

**recommendations** 30:5

**recommended** 13:9

**record** 6:8,18 8:20 9:18,24 10:1,3 18:7 22:16,19,22 28:11, 13,16 36:24 37:2, 12,15,18 39:13 40:18

**recruiting** 12:19

**redacted** 28:8

**refer** 20:5,12

**references** 27:13 30:25

**referred** 35:5

**regard** 13:7 30:14

**released** 38:4

**relegated** 13:5

**relevance** 14:4

**rely** 30:4

**rephrase** 8:7 24:18 32:3 34:11

**reporter** 6:7,16 7:1, 23,25 9:4,25 10:3,

18,23 11:1,11 17:21 18:4,6 22:18,21 25:7 28:4,12,15 29:5,9 36:23 37:1, 14,17,22 38:2,6 39:17,19,23 40:2, 12,16

**reporter's** 9:1

**represent** 6:19,21 22:5 24:25

**representing** 6:23, 25 7:9

**require** 16:3 34:9,18

**required** 15:14 17:8 26:3 39:11

**requirement** 15:15

**requirements** 26:11, 12

**requires** 34:14

**reread** 22:14

**reserve** 9:19 10:11

**reserving** 10:7

**responses** 9:3 16:24

**restroom** 8:14

**retention** 12:19

**review** 9:19 10:8 16:23 29:16 38:16

**reviewed** 12:15 23:23

**road** 8:12 11:19

**round** 18:12,18 19:15 20:4 27:16 30:24 31:7,10,19, 22,23,24 32:4,8,10, 11,21 35:1 36:8

**rounded** 31:13

**rounds** 17:11,14,19 21:17 24:21 34:19

**run** 13:8

---

### S

**safety** 12:13 25:23

**section** 29:18,20

**sentence** 23:21 24:8

**separate** 18:25 31:7

**set** 11:22 13:13 16:20

**sets** 11:5,7

**setting** 12:5 13:2

**settle** 38:23

**shake** 9:1

**sheet** 39:7

**show** 22:4

**sign** 38:8,11,17 39:21 40:9

**signature** 16:21 17:2,3,24

**similar** 9:5

**sir** 6:9,16 9:9 10:4 11:10 17:22 18:8 22:23 28:17 32:24 37:19,24

**size** 27:21

**slow** 8:2

**SOP** 21:23 22:2 25:16

**SOPC31** 28:21

**speak** 34:20

**speaks** 15:10

**Spear** 27:19

**specific** 19:14 23:21 25:20

**specifically** 13:7 23:7

**specifics** 17:18

**speculation** 35:21

**Speer** 26:23 27:4,15

**Stambouleh** 6:20 7:2,7,9 9:16,23 10:10,15,19,24 11:2 14:5 15:12 17:23 18:2,9 20:24 22:17, 24 24:14,16 25:5,11 27:12 28:1,7,18 29:8,10,12 30:19 34:7 36:2,20 37:3,4, 9,21,23,25 38:5,7, 11,15,19,25 39:4,9, 15,18,20 40:8,11

**standard** 15:23

**standards** 12:18,25 13:13

**start** 11:25 26:12

**state** 6:19 9:18,19 11:12,22 12:1,6,12, 21 13:17 15:15,24 17:7 18:22 19:22 22:3,6 23:2 24:2 25:13 27:5,19 28:23 29:19 30:2 31:3,22 32:7 39:11

**statement** 23:6

**states** 29:20

**statute** 20:11

**statutes** 33:15

**steadily** 9:1

**Stephen** 6:20 7:9 26:13

**stop** 35:18

**stopped** 36:11

**stops** 35:15 36:4

**strictly** 20:6

**strike** 16:11 26:12

**struck** 35:1

**studies** 35:23 36:16

**study** 36:15

**subject** 13:20 19:6

**substantive** 9:18

**superintendent** 11:12,16,21 16:8,13 19:11 29:21 30:7,14 33:18

**superintendent's** 30:10

**supposed** 38:20,21

**synonymous** 20:8, 14

**T**

**table** 8:2,16

**tactics** 13:17 18:24 19:2 21:12 30:4

**taking** 7:23 8:8

**talk** 7:24 8:4

**talked** 17:23

**talking** 13:25 14:1 23:7 31:6

**talks** 27:15

**target** 35:8

**targets** 35:1

**technical** 31:19

**tendency** 7:24 35:8

**term** 20:9 31:19 32:5,6

**testified** 7:5 34:13

**testimony** 6:12 9:18 39:22 40:4

**That'll** 25:7

**thing** 8:14 10:16

**things** 7:13 9:4 28:9 33:12 39:12

**threat** 34:23 35:15, 19 36:4,10

**time** 6:7 8:24 10:12 18:6 22:21 37:1 40:17

**tip** 23:15

**today** 11:7

**top** 12:9

**townships** 15:19

**training** 12:19 13:5 31:6,10,23 32:7

**transcript** 9:6,20 10:7 37:24 38:17

**transcription** 40:14

**transitioned** 19:25

**trauma** 36:10

**trooper** 25:23 31:3

**troopers** 11:19 32:23,24,25 33:1,12 34:9,14

**true** 15:13

**truth** 6:13,14 7:4

**tumbles** 36:9

**two-pronged** 34:21

**type** 13:2,14,24 14:2,8 15:20 17:6, 13 19:14 25:12 26:7,15,19 31:7,10 32:18

**types** 29:22

**U**

**uh-huh** 9:5

**uh-uh** 9:5

**ultimately** 30:6,9

**unable** 18:13

**understand** 8:6,10 9:8 18:15 24:17 32:2 33:3 40:7

**understanding** 7:12 14:15,20,21 20:4 23:11,20 24:11,19 32:14 34:8,22 35:9, 12,18 36:3,7,14

**understood** 8:11

**unintended** 35:1

**unit** 13:19 19:7 24:7

**V**

**vague** 34:5

**verbal** 9:3

**versus** 35:25

**vetted** 12:14

**violating** 33:25

**voting** 19:6

**W**

**wanted** 37:22,23 40:13

**weapon** 13:21 14:23 19:10 31:4 32:21

**weapons** 13:17 18:24 19:2 21:11 27:6 30:4 32:12

**website** 22:4,6 23:3 24:2

**week** 7:17

**weighing** 13:10

**wondering** 20:12

**word** 20:7,13

**words** 35:16

**writes** 24:5

**writing** 9:1

**wrote** 39:25

**Y**

**Yang** 6:24,25

**years** 11:14,21 16:6, 13 19:12 30:13 33:17

**York** 26:18,19