# Exhibit 5

Harfenist Kraut & Perlstein, LLP
Steven J. Harfenist, Esq. (Atty Id. No. 045671989)
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: sharfenist@hkplaw.com
*Attorney for Plaintiffs*

Stephen D. Stamboulieh*
Stambouliesh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------------X

| | |
|---|---|
| HEIDI BERGMANN-SCHOCH, COALITION OF NEW JERSEY FIREARM OWNERS, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION,<br><br>                              Plaintiffs,<br><br>     -against-<br><br>MATTHEW PLATKIN, in his official capacity as the Attorney General of New Jersey, COLONEL PATRICK J. CALLAHAN, in his official capacity as the Superintendent of the New Jersey State Police, and LACHIA L. BRADSHAW, in her Official capacity as the Burlington County Prosecutor,<br><br>                              Defendants. | **Civil Action No.: 25-CV-997(CPO)(MJS)**<br><br>**GUN OWNERS OF AMERICA, INC. AND GUN OWNERS FOUNDATION'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES** |

-----------------------------------------------------------------X

To:    Andrew H. Yang, Esq.
       Giancarlo Piccinini, Esq.
       Jonathan Mangel, Esq.
       New Jersey Office of the Attorney General
       124 Halsey Street
       Newark, NJ  07101

1

Andrew.Yang@law.njoag.gov
Jonathan.Mangel@law.njoag.gov
Giancarlo.Piccinini@law.njoag.gov

## INTRODUCTORY STATEMENT

Investigation, discovery and preparation for trial have not been completed, and the following responses are given without prejudice to the right to produce evidence at trial or on a motion for summary judgment of any subsequently discovered facts. These responses, therefore, do not purport to state herein anything more than the information presently known.

In responding to these Interrogatories, you have been furnished with such information as is presently available. This may include hearsay and other forms of evidence which are neither reliable nor admissible in evidence. Each answer is subject to appropriate objections (including, but not limited to, objections concerning competency, relevancy, materiality, propriety, privilege and admissibility) which would require the exclusion of any statement contained herein if the request were asked of, or any statement contained herein were made by, a witness present and testifying in court. All such objections and grounds are preserved and may be interposed at the time of trial.

Except for explicit facts admitted herein, no admissions of any nature whatsoever are implied or should be inferred. The fact that any request herein has been answered, should not be taken as an admission or acceptance of the existence of any facts set forth or assumed by such a request, or that such answer constitutes admissible or reliable evidence. This preliminary statement is incorporated into each of the responses set forth below.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY 1:** Identify all Person(s) who have, claim to have, or who You believe may have knowledge, Documents, or information relating to any fact alleged in the Complaint filed in this Action, or any fact underlying the subject matter of this Action.

**RESPONSE 1:** Luis Valdes, State Director of Florida for Gun Owners of America, Erich Pratt, and the remaining Plaintiffs and Defendants in this action.

**INTERROGATORY 2:** Describe in detail the nature and substance of the knowledge, Documents, or information that You believe the Person(s) Identified in response to Interrogatory No. 1 may have.

**RESPONSE 2:** Luis Valdes may have information regarding the effectiveness of hollow point ammunition, including with respect to the usage of hollow points by law enforcement, military, and civilians. Erich Pratt may have information that tracks with the information provided in his declaration attached to the Complaint. The remainder of the organizations and individuals listed in the initial disclosures may have information according to their declarations filed in this case, the Answer filed in this case, or pursuant to their discovery responses or deposition testimony.

**INTERROGATORY 3:** As to the Individual Plaintiff, state how long You have been and/or previously were a member of each of the Organizational Plaintiffs, if at all, including the date range(s) of any such membership.

**RESPONSE 3:** Not directed to these plaintiffs.

**INTERROGATORY 4:** As to the Individual Plaintiff, Identify issuance and expiration dates of each and every Firearms Purchaser Identification Card, Permit to Purchase a Handgun, or Permit to Carry a Handgun You have obtained in New Jersey. Identify all documents Concerning Your Firearms Purchaser Identification Card(s), Permit(s) to Purchase a Handgun, and Permit(s) to Carry a Handgun.

**RESPONSE 4:** Not directed to these plaintiffs.

**INTERROGATORY 5:** As to the Individual Plaintiff, state whether any application for a Firearms Purchaser Identification Card, Permit to Purchase a Handgun, or Permit to Carry a Handgun was previously denied in New Jersey. If yes, Describe the reason(s) provided for the denial and Identify all documents Concerning such denial.

**RESPONSE 5:** Not directed to these plaintiffs.

**INTERROGATORY 6:** As to the Individual Plaintiff, state whether any Firearms Purchaser Identification Card, Permit to Purchase a Handgun, or Permit to Carry a Handgun was revoked in New Jersey. If yes, Describe the reason(s) provided for the denial and Identify all documents Concerning such revocation.

**RESPONSE 6:** Not directed to these plaintiffs.

**INTERROGATORY 7:** As to the Individual Plaintiff, state whether You have ever previously owned Hollow Point Ammunition in New Jersey. If yes, Identify (a) date range(s) of such ownership; (b) purpose(s) of such ownership; (c) events Relating to its use, if any; and (d) any Documents or Information Concerning the acquisition or disposition of such Hollow Point Ammunition.

**RESPONSE 7:** Not directed to these plaintiffs.

**INTERROGATORY 8:** As to the Individual Plaintiff, state whether You have previously used a firearm for self- defense, either through showing or brandishing the firearm, or actually discharging it. If yes, Describe the events in which You used a firearm in self-defense, and Identify (a) date(s); (b) firearm(s) and ammunition(s) used for self-defense; and (3) any Documents Relating to the events, including but not limited to: police report(s), if any.

**RESPONSE 8:** Not directed to these plaintiffs.

3

**INTERROGATORY 9:** As to the Individual Plaintiff, Describe the primary basis for seeking to load Hollow Point Ammunition "in a firearm she carries for self-defense," Comp. ¶ 14, including identifying any Documents Concerning same.

**RESPONSE 9:** Not directed to these plaintiffs.

**INTERROGATORY 10:** As to the Individual Plaintiff, Identify any and all types of firearm(s) and ammunition(s) You carry or have carried in the past outside the home for self-defense, Comp. ¶ 14, including identifying any Documents Concerning same.

**RESPONSE 10:** Not directed to these plaintiffs.

**INTERROGATORY 11:** As to the Individual Plaintiff, Identify and Describe fully each and every Source of Knowledge about the factual allegation that Hollow Point Ammunition "in the firearm she publicly carries" will have "the increased effectiveness of stopping a threat," Comp. ¶ 80, including identifying any Documents Concerning same.

**RESPONSE 11:** Not directed to these plaintiffs.

**INTERROGATORY 12:** As to the Organizational Plaintiffs, Identify all "affected members and supporters [who] would have standing to sue individually to challenge" the Challenged Law, Comp. ¶ 18, including, but not limited to: names of such members, and whether they reside in New Jersey, and Describe membership details, including the date range(s) of each membership.

**RESPONSE 12**: Plaintiffs object to this interrogatory to the extent it seeks identification of members or supporters of Plaintiffs. The settled doctrine of representational standing does not require the identification of all individual members in order to obtain relief on their behalf. *See Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2158 (2023) ("Where, as here, an organization has identified members and represents them in good faith, our cases do not require further scrutiny into how the organization operates."). *See also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("Compelled disclosure of membership in an organization engaged in advocacy of particular beliefs is" an "effective … restraint on freedom of association."). To the extent an association does have to identify a member with individual standing, Plaintiffs already have with specificity. *See also Marszalek v. Kelly*, 2021 U.S. Dist. LEXIS 107613, at *10-11 (N.D. Ill. June 9, 2021) ("Only one qualifying member is needed to satisfy this requirement, and he need not be named."). Without waiving the foregoing objections, Plaintiffs have named Heidi Bergmann-Schoch as a member of Gun Owners of America. Heidi became a Gun Owners of America member on January 27, 2025. John Pyle, who filed a declaration in this case, has been a member of Gun Owners of America for a number of years, but recently became a Patriot Member in August 2024.

**INTERROGATORY 13:** As to the Organizational Plaintiffs, provide all facts, Documents, and expert opinions that show, support, explain, Describe, or Identify how the Challenged Law affects or has affected Your member(s) Identified in Your response to Interrogatory No. 12.

**RESPONSE 13**: Plaintiffs object to this request as it prematurely seeks "expert opinions" and to provide "all facts" with regard to Plaintiffs' members or supporters. Without waiving the foregoing objections, Plaintiffs state that their members overwhelmingly desire to carry hollow point ammunition in their firearms in public for self-defense. It is a commonly known fact that individuals, including law enforcement, carry hollow points in their publicly carried firearms. It is a commonly known fact that full metal jacket ammunition can over penetrate a human target and that hollow point ammunition typically does not. Carrying hollow point ammunition is thus safer to bystanders when in public if the need arises to actually discharge a self-defense firearm in public.

Until the late 1990s, the New York City Police Department (NYPD) was one of the last major law enforcement agencies still using full metal jacket (FMJ) ammunition. This outdated choice had serious consequences: numerous bystanders were injured by bullets that passed through suspects or ricocheted, a risk inherent with FMJ rounds.

A March 6, 1997 New York Times article titled "Hollow Point Ammunition Saves Lives, Backers Say" (https://www.nytimes.com/1997/03/06/nyregion/hollow-point-ammunition-saves-lives-backers-say.html) highlighted the problem:

"In New York City during the last two years, seven of the bystanders shot by the police were struck by bullets that passed through other people, walls or doors—shootings that would not be expected with hollow-points."

In that article, Criminologist James Fyfe explained the benefits of hollow point bullets:

"The energy of the bullet is absorbed very quickly. Although it produces a wider hole, it's not as deep, making it much less likely to penetrate a person and hit someone else."

This conclusion was echoed by the FBI and several major departments including Los Angeles, Dallas, Newark, and others. Hollow point ammunition was adopted specifically to reduce the risk of over-penetration and improve public safety.

At a City Council hearing, then-NYPD Commissioner Howard Safir defended the switch:

"When a police officer uses a hollow point bullet, the perpetrator, who is usually armed, is brought down with fewer shots, eliminating danger to the officer and the public."

The NYPD Civilian Review Board (https://www.nyc.gov/html/ccrb/downloads/pdf/hollow.pdf) also endorsed the transition:

"The decision to move from full metal jackets to hollow-points is consistent with modern,

enlightened law enforcement… Hollow-points are neither exploding dum-dums nor fragmenting bullets… Full metal jackets present a great risk of pass-through and ricochet danger."

Even the U.S. Army—historically the last major holdout—transitioned from FMJ to hollow point ammunition with the adoption of the M1153 Special Purpose 9mm load, a hollow point design. As noted in the Department of Defense Fiscal Year (FY) 2016 President's Budget Submission - Justification Book of Procurement of Ammunition, Army (https://www.asafm.army.mil/Portals/72/Documents/BudgetMaterial/2016/base%20budget/justification%20book/Ammunition.pdf):

"The JHP cartridge is required for use in situations where limited over-penetration is necessary to reduce collateral damage."

In short, the move from FMJ to hollow point ammunition was made to enhance safety—for officers, soldiers, and civilians alike.

Yet, in states like New Jersey, hollow point ammunition remains off-limits to the general public. This ban is not only a violation of the Second Amendment, but also a direct threat to public safety. It forces civilians to rely on less effective, more dangerous ammunition that increases the risk of over-penetration and may require more shots to stop a threat.  And New Jersey also bans magazines that hold more than 10 rounds of ammunition.  So New Jerseyans are left with capacity-limited magazines and forced to carry substandard ammunition.

Just as law enforcement and the military use hollow points to minimize danger to bystanders, so too should civilians. Self-defense should not come with unnecessary risks to loved ones or the public. The right to bear arms must include the right to use the safest and most effective tools available.

**INTERROGATORY 14:** As to the Organizational Plaintiffs, Identify whether any member Identified in Your response to Interrogatory No. 12 has applied for a Permit to Carry a Handgun in New Jersey. If yes, Identify how many persons, the number and date(s) of each application submitted for each person, and the outcome of the application process. Identify all Documents Concerning any such application(s).

**RESPONSE 14:** See Response to Interrogatory No. 12.  Upon information and belief, Plaintiff Schoch has a Permit to Carry a Handgun in New Jersey, however, these Plaintiffs do not have documents regarding her Permit to Carry.

**INTERROGATORY 15:** As to the Organizational Plaintiffs, if any member Identified in Your response to Interrogatory No. 12 does not possess a Permit to Carry a Handgun, Identify and Describe all facts, Documents, and expert opinions that establish any specific injury You attribute to the Challenged Law.

**RESPONSE 15:** Upon information and belief, Plaintiff Schoch has a Permit to Carry a Handgun. Beyond that individual person, see Response to Interrogatory No. 12.

**INTERROGATORY 16:** As to the Organizational Plaintiffs, Describe Your purpose and the services You provide to Your members, and state whether You claim that the Challenged Law impedes Your ability to fulfill that mission or provide such services. If Your answer is in the affirmative, provide all facts, Documents, and expert opinions that show, support, explain, Describe, or Identify how the Challenged Law impedes Your ability to fulfill that mission or provide such services.

**RESPONSE 16:** These Plaintiffs have not claimed direct organizational standing, rather they are proceeding on the theory of associational or representational standing on behalf of their members and supporters. Without waiving the foregoing objections, Plaintiffs state as follows: Plaintiffs do not make the claim that New Jersey's ban on "hollow nose" or "dum dum" ammunition "impedes" their "ability to fulfill" their "mission or provide such services." Plaintiffs "purpose and the services" they provide are found in paragraphs 16-18 of Plaintiffs' Complaint (ECF #1) and also in the Declaration of Erich Pratt, attached as Exhibit B to the Complaint. Plaintiffs are Second Amendment advocacy organizations and protection of the rights and interests advanced in this litigation are germane to their missions. These Plaintiffs routinely litigate cases throughout the country on behalf of their members and supporters, and they are capable of fully and faithfully representing the interests of their members and supporters without the necessity of individualized participation of their members and supporters.

**INTERROGATORY 17:** Identify all addresses from which You, whether individually or through any corporate entity or business, have conducted business in New Jersey, including the street name and number, city, state, zip code, identity of property owner, identity of lessee, the dates of your use, and the business name(s) used. Identify all Documents Concerning Your business use of such addresses.

**RESPONSE 17:** Plaintiff objects to this request as "conducted business" is not defined, but under the normal understanding of "conducted business," Plaintiffs do not believe they have "conducted business" in New Jersey. If Plaintiffs' understanding of "conducted business" includes the work they do as Gun Owners of America, Inc., and Gun Owners Foundation, then "conducted business" would be limited to their advocacy and litigation.

**INTERROGATORY 18:** Describe fully each and every Source of Knowledge about the factual allegations that Hollow Point Ammunition is "the most effective type[] of self-defense ammunition" and "the quintessential type of 'self-defense' ammunition," Comp. ¶ 3, including identifying any Documents Concerning same.

**RESPONSE 18:** Plaintiffs object to this request to list "each and every Source of Knowledge about the factual allegations that Hollow Point Ammunition is the most effective type of self-defense ammunition" as Plaintiffs could not possibly be in possession of "each and every" source to demonstrate this. Discovery is ongoing, and to the extent more is needed, Plaintiffs may supplement this request. Without waiving the foregoing objections, Plaintiffs state as follows: Plaintiffs have cited a number of papers and reports in their Complaint

7

explaining how hollow point ammunition is better for self-defense than full metal jacket ammunition. For instance, https://www.ojp.gov/ncjrs/virtual-library/abstracts/hollow-point-versus-ball-duty-ammo (at fn 11 in Complaint) explains that:

> Hollow-point ammunition is designed with a cavity centrally located on the forward end of the bullet, so as to cause the bullet to increase in diameter on impact with an object. Ball ammunition is designed with a tough metal covering or jacket over a central core material that is designed to remain intact on impact. Consequently, it does not expand on impact as does the hollow-point bullet. Compared to ball ammunition, hollow-point ammunition penetrates shorter distances in impacted objects; travels through an object less often; cannot penetrate various types of barriers, including body armor; imparts more energy and damage to an object ; ricochets less; is more effective at rapidly incapacitating a person; and is significantly more expensive. Compared to hollow-point ammunition, ball ammunition has greater penetration in people and barriers, including body armor; imparts less energy and damage to an object; ricochets more and with larger particles; feeds more reliably in semi-automatic weapons; is significantly less effective in rapidly incapacitating a person; and is significantly less expensive. These attributes of the two types of duty ammunition were obtained from and summarize the results of several studies performed by the FBI, various ammunition manufacturers, and other independent investigations.

And in footnote 13, Plaintiffs cited to https://www.ojp.gov/pdffiles1/Digitization/25037NCJRS.pdf, which was a 1976 report from the City of Albuquerque Police Department stating that law enforcement declared "a lack of confidence in [round nose lead bullets] effectiveness…" and expressed the desire to transition to "hollow nose" ammunition.

See also Response to Interrogatory No. 13.

**INTERROGATORY 19:** Identify the specific features of Hollow Point Ammunition that makes its use more "effective," Comp. ¶ 3, and "superior," Comp. ¶ 59, compared to other types of ammunition(s) for self-defense outside the home, and Identify all facts, Documents, and expert opinions that show, support, explain, Describe, or Identify that such features of Hollow Point Ammunition make it more effective than or superior to other types of ammunition(s) for self-defense outside the home.

**RESPONSE 19:** See Responses to Interrogatory Nos. 13 and 18.

**INTERROGATORY 20:** Describe fully each and every Source of Knowledge about the factual allegation that carrying Hollow Point Ammunition is the "widespread preference[] of the American people," Comp.¶ 4, including identifying any Documents Concerning same.

**RESPONSE 20:** These Plaintiffs believe that the "widespread preference" of the American people is demonstrated by the fact that there is only one state, New Jersey, which bans the carry of "hollow nose" or "dum dum" ammunition and that individuals, when being trained to carry a firearm in public for self-defense, are trained to carry hollow point ammunition for the reasons explained in Interrogatories numbered 13 and 18.

**INTERROGATORY 21:** Describe fully each and every Source of Knowledge about the factual allegation that "there was never an earlier American tradition of prohibiting the public carry of any type of ammunition," Comp. ¶ 4, including identifying any Documents Concerning same.

**RESPONSE 21:** Plaintiffs object to this request as the burden of demonstrating an early "American tradition of prohibiting the public carry of any type of ammunition" is on the Defendants.

**INTERROGATORY 22:** Describe fully each and every Source of Knowledge about the factual allegation that ammunition(s) other than Hollow Point Ammunition, including full metal jacket ammunition, are "the inferior option for self-defense outside the home," Comp. ¶ 59, including identifying any Documents Concerning same.

**RESPONSE 22:** See Responses to Interrogatory Nos. 13 and 18.

**INTERROGATORY 23:** Describe fully each and every Source of Knowledge about the factual allegation that ammunition(s) other than Hollow Point Ammunition are "so outdated and substandard when compared to modern hollow point ammunition" Comp. ¶ 76, including identifying any Documents Concerning same.

**RESPONSE 23:** See Responses to Interrogatory Nos. 13 and 18.

**INTERROGATORY 24:** Identify all Person(s) You expect to call at trial as fact witnesses and Describe the subject matter upon which each such Person is expected to testify.

**RESPONSE 24:** These plaintiffs have not made a decision yet as to which fact witnesses will be called to testify. These plaintiffs may call any witness that has been identified in the initial disclosures or identified through discovery. These plaintiffs may supplement this interrogatory at the appropriate time.

**INTERROGATORY 25:** Identify all Person(s) You expect to call at trial as expert witnesses and provide their occupation and field(s) of expertise, qualifications, subject matter of anticipated testimony, basis of anticipated testimony or opinion, title of any article(s) or publication(s) written, all Documents and other information relied upon in forming his or her opinion, and copies of all reports and/or statements.

**RESPONSE 25:** These plaintiffs objects to this request as premature. Without waiving the objection, these plaintiffs have not made a decision yet as to which expert witnesses, if any, will be called to testify. These plaintiffs may supplement this interrogatory at the appropriate time.

Dated: Lake Success, New York
July 10, 2025

HARFENIST KRAUT & PERLSTEIN, LLP

By: *Steven J. Harfenist*

Steven J. Harfenist
*Attorneys for Plaintiffs*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: SHarfenist@hkplaw.com

Stephen D. Stamboulieh
MS Bar No. 102784
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
T: (601) 852-3440
E: stephen@sdslaw.us
*Admitted Pro Hac Vice

## **CERTIFICATE OF SERVICE**

I certify that on July 10, 2025, a copy of the foregoing document or pleading has been sent to:

Andrew H. Yang, Esq.
Giancarlo Piccinini, Esq.
Jonathan Mangel, Esq.
New Jersey Office of the Attorney General
124 Halsey Street
Newark, NJ  07101
Andrew.Yang@law.njoag.gov
Jonathan.Mangel@law.njoag.gov
Giancarlo.Piccinini@law.njoag.gov

          *Steven J. Harfenist*
          STEVEN J. HARFENIST