# Exhibit 6

Harfenist Kraut & Perlstein, LLP
Steven J. Harfenist, Esq. (Atty Id. No. 045671989)
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: sharfenist@hkplaw.com
*Attorney for Plaintiffs*

Stephen D. Stamboulieh*
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------------X
HEIDI BERGMANN-SCHOCH, COALITION OF NEW
JERSEY FIREARM OWNERS, GUN OWNERS OF
AMERICA, INC., and GUN OWNERS FOUNDATION,

                     Plaintiffs,

   -against-

MATTHEW PLATKIN, in his official capacity as
the Attorney General of New Jersey,
COLONEL PATRICK J. CALLAHAN, in his official
capacity as the Superintendent of the New Jersey
State Police, and LACHIA L. BRADSHAW, in her
Official capacity as the Burlington County Prosecutor,

                     Defendants.
-----------------------------------------------------------------X

**Civil Action No.:**
**25-CV-997(CPO)(MJS)**

**COALITION OF NEW JERSEY FIREARM OWNERS' RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

To:    Andrew H. Yang, Esq.
        Giancarlo Piccinini, Esq.
        Jonathan Mangel, Esq.
        New Jersey Office of the Attorney General
        124 Halsey Street
        Newark, NJ  07101

1

Andrew.Yang@law.njoag.gov
Jonathan.Mangel@law.njoag.gov
Giancarlo.Piccinini@law.njoag.gov

## INTRODUCTORY STATEMENT

Investigation, discovery and preparation for trial have not been completed, and the following responses are given without prejudice to the right to produce evidence at trial or on a motion for summary judgment of any subsequently discovered facts. These responses, therefore, do not purport to state herein anything more than the information presently known.

In responding to these Interrogatories, you have been furnished with such information as is presently available. This may include hearsay and other forms of evidence which are neither reliable nor admissible in evidence. Each answer is subject to appropriate objections (including, but not limited to, objections concerning competency, relevancy, materiality, propriety, privilege and admissibility) which would require the exclusion of any statement contained herein if the request were asked of, or any statement contained herein were made by, a witness present and testifying in court. All such objections and grounds are preserved and may be interposed at the time of trial.

Except for explicit facts admitted herein, no admissions of any nature whatsoever are implied or should be inferred. The fact that any request herein has been answered, should not be taken as an admission or acceptance of the existence of any facts set forth or assumed by such a request, or that such answer constitutes admissible or reliable evidence. This preliminary statement is incorporated into each of the responses set forth below.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY 1:** Identify all Person(s) who have, claim to have, or who You believe may have knowledge, Documents, or information relating to any fact alleged in the Complaint filed in this Action, or any fact underlying the subject matter of this Action.

**RESPONSE 1:** John Pyle, who is responding on behalf of the Coalition of New Jersey Firearm Owners; *see also* initial disclosures.

**INTERROGATORY 2:** Describe in detail the nature and substance of the knowledge, Documents, or information that You believe the Person(s) Identified in response to Interrogatory No. 1 may have.

**RESPONSE 2:** John Pyle may testify to the practical and liability issues of using full metal jacket instead of hollow point ammunition allegations contained in the Complaint and his declaration. Mr. Pyle may testify about CNJFO's general membership desires of carrying hollow point rather than full metal jacket ammunition, how polymer rounds can lead to jamming issues with firearms carried for self-defense, and how some members of CNFJO complain about the lack of ability to carry hollow point ammunition. The remainder of the individuals listed in

the initial disclosures may testify according to their Declarations filed in this case, the Answer filed in this case, or pursuant to their discovery responses or deposition testimony.

**INTERROGATORY 3:** As to the Individual Plaintiff, state how long You have been and/or previously were a member of each of the Organizational Plaintiffs, if at all, including the date range(s) of any such membership.

**RESPONSE 3:** Not directed to this Plaintiff.

**INTERROGATORY 4:** As to the Individual Plaintiff, Identify issuance and expiration dates of each and every Firearms Purchaser Identification Card, Permit to Purchase a Handgun, or Permit to Carry a Handgun You have obtained in New Jersey. Identify all documents Concerning Your Firearms Purchaser Identification Card(s), Permit(s) to Purchase a Handgun, and Permit(s) to Carry a Handgun.

**RESPONSE 4:** Not directed to this Plaintiff.

**INTERROGATORY 5:** As to the Individual Plaintiff, state whether any application for a Firearms Purchaser Identification Card, Permit to Purchase a Handgun, or Permit to Carry a Handgun was previously denied in New Jersey. If yes, Describe the reason(s) provided for the denial and Identify all documents Concerning such denial.

**RESPONSE 5:** Not directed to this Plaintiff.

**INTERROGATORY 6:** As to the Individual Plaintiff, state whether any Firearms Purchaser Identification Card, Permit to Purchase a Handgun, or Permit to Carry a Handgun was revoked in New Jersey. If yes, Describe the reason(s) provided for the denial and Identify all documents Concerning such revocation.

**RESPONSE 6:** Not directed to this Plaintiff.

**INTERROGATORY 7:** As to the Individual Plaintiff, state whether You have ever previously owned Hollow Point Ammunition in New Jersey. If yes, Identify (a) date range(s) of such ownership; (b) purpose(s) of such ownership; (c) events Relating to its use, if any; and (d) any Documents or Information Concerning the acquisition or disposition of such Hollow Point Ammunition.

**RESPONSE 7:** Not directed to this Plaintiff.

**INTERROGATORY 8:** As to the Individual Plaintiff, state whether You have previously used a firearm for self- defense, either through showing or brandishing the firearm, or actually discharging it. If yes, Describe the events in which You used a firearm in self-defense, and Identify (a) date(s); (b) firearm(s) and ammunition(s) used for self-defense; and (3) any Documents Relating to the events, including but not limited to: police report(s), if any.

**RESPONSE 8:** Not directed to this Plaintiff.

3

**INTERROGATORY 9:** As to the Individual Plaintiff, Describe the primary basis for seeking to load Hollow Point Ammunition "in a firearm she carries for self-defense," Comp. ¶ 14, including identifying any Documents Concerning same.

**RESPONSE 9:** Not directed to this Plaintiff.

**INTERROGATORY 10:** As to the Individual Plaintiff, Identify any and all types of firearm(s) and ammunition(s) You carry or have carried in the past outside the home for self-defense, Comp. ¶ 14, including identifying any Documents Concerning same.

**RESPONSE 10:** Not directed to this Plaintiff.

**INTERROGATORY 11:** As to the Individual Plaintiff, Identify and Describe fully each and every Source of Knowledge about the factual allegation that Hollow Point Ammunition "in the firearm she publicly carries" will have "the increased effectiveness of stopping a threat," Comp. ¶ 80, including identifying any Documents Concerning same.

**RESPONSE 11:** Not directed to this Plaintiff.

**INTERROGATORY 12:** As to the Organizational Plaintiffs, Identify all "affected members and supporters [who] would have standing to sue individually to challenge" the Challenged Law, Comp. ¶ 18, including, but not limited to: names of such members, and whether they reside in New Jersey, and Describe membership details, including the date range(s) of each membership.

**RESPONSE 12:** Plaintiff objects to this interrogatory to the extent it seeks identification of members or supporters of Plaintiff. The settled doctrine of representational standing does not require the identification of all individual members in order to obtain relief on their behalf. *See Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2158 (2023) ("Where, as here, an organization has identified members and represents them in good faith, our cases do not require further scrutiny into how the organization operates."). *See also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("Compelled disclosure of membership in an organization engaged in advocacy of particular beliefs is" an "effective … restraint on freedom of association."). To the extent an association does have to identify a member with individual standing, Plaintiff already has with specificity. *See also Marszalek v. Kelly*, 2021 U.S. Dist. LEXIS 107613, at *10-11 (N.D. Ill. June 9, 2021) ("Only one qualifying member is needed to satisfy this requirement, and he need not be named."). Without waiving the foregoing objections, Plaintiff has named Heidi Bergmann-Schoch as a member of CNFJO and Mr. Pyle is also a member of CNFJO. Both Mr. Pyle and Ms. Schoch live in New Jersey. Mr. Pyle has been a member of CNJFO since May 15, 2015 and Ms. Schoch has been a member of CNJFO since November 7, 2023.

**INTERROGATORY 13:** As to the Organizational Plaintiffs, provide all facts, Documents, and expert opinions that show, support, explain, Describe, or Identify how the Challenged Law affects or has affected Your member(s) Identified in Your response to Interrogatory No. 12.

4

**RESPONSE 13:** Plaintiff objects to this request to the extent it is prematurely seeking expert information prior to this Court's scheduling order and to the extent it seeks documents protected by the attorney/client and/or work product privileges. Without waiving the foregoing objections, Mr. Pyle has read multiple reports about the benefits of utilizing hollow point ammunition in self-defense scenarios and believes that the superiority of hollow points as self-defense ammunition over full metal jackets is common knowledge. When fired into a human target, full metal jacket ammunition has a greater tendency to penetrate and therefore pass through targets, as compared to hollow points which are specifically designed to mushroom upon impact and thus slow down and stay within the body. Plaintiff's member desire to be able to carry the most effective ammunition that is available for self-defense outside the home, and New Jersey's ban on the carry of hollow point ammunition reduces CNJFO members' ability to defend themselves outside the home. Plaintiff also relies on documents linked in its complaint and in addition, the following Seton Hall law review article, found here: https://scholarship.shu.edu/cgi/viewcontent.cgi?article=1953&context=shlj.

**INTERROGATORY 14:** As to the Organizational Plaintiffs, Identify whether any member Identified in Your response to Interrogatory No. 12 has applied for a Permit to Carry a Handgun in New Jersey. If yes, Identify how many persons, the number and date(s) of each application submitted for each person, and the outcome of the application process. Identify all Documents Concerning any such application(s).

**RESPONSE 14:** Plaintiff objects to this request as New Jersey maintains records of Permits to Carry issued or applied for in New Jersey and would know the exact dates of application and issuance of permits. Plaintiff additionally objects to this interrogatory to the extent it seeks identification of members or supporters of Plaintiff. The settled doctrine of representational standing does not require the identification of all individual members in order to obtain relief on their behalf. *See Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2158 (2023) ("Where, as here, an organization has identified members and represents them in good faith, our cases do not require further scrutiny into how the organization operates."). *See also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("Compelled disclosure of membership in an organization engaged in advocacy of particular beliefs is" an "effective … restraint on freedom of association."). To the extent an association does have to identify a member with individual standing, Plaintiff already has with specificity. *See also Marszalek v. Kelly*, 2021 U.S. Dist. LEXIS 107613, at *10-11 (N.D. Ill. June 9, 2021) ("Only one qualifying member is needed to satisfy this requirement, and he need not be named."). Notwithstanding that objection, John Pyle has applied for and received three permits: Mr. Pyle applied in July or August 22 and was issued a permit in October 2022. After New Jersey passed a new law, Mr. Pyle went back and requalified, then reapplied for an unrestricted license and was issued unrestricted by his police department. Then, since New Jersey permits expire in two years, Mr. Pyle had to renew his permit, which he did, and he is currently on his third permit. CNFJO does not have information as to when Ms. Schoch applied for or received her Permit to Carry.

**INTERROGATORY 15:** As to the Organizational Plaintiffs, if any member Identified in Your response to Interrogatory No. 12 does not possess a Permit to Carry a Handgun, Identify and Describe all facts, Documents, and expert opinions that establish any specific injury You

5

attribute to the Challenged Law.

**RESPONSE 15:** All identified members have Permits to Carry. The injury is a violation of Second Amendment as, to my knowledge, no other state outlaws the carry of hollow point ammunition outside of the home for self-defense, and as stated previously and in the Complaint, hollow point ammunition is better suited for self-defense purposes than full metal jacket ammunition. *See also* Response to No. 13.

**INTERROGATORY 16:** As to the Organizational Plaintiffs, Describe Your purpose and the services You provide to Your members, and state whether You claim that the Challenged Law impedes Your ability to fulfill that mission or provide such services. If Your answer is in the affirmative, provide all facts, Documents, and expert opinions that show, support, explain, Describe, or Identify how the Challenged Law impedes Your ability to fulfill that mission or provide such services.

**RESPONSE 16:** CNJFO's mission is to preserve the Second Amendment through education and awareness. Through our support of the Second Amendment, including during litigation, the organization itself is not harmed, but rather seeks to assert the rights of its members to exercise their Second Amendment rights. In other words, CNJFO has not claimed that New Jersey's ban on "hollow nose" or "dum dum" ammunition "impedes" its ability to fulfill our mission or provide services to its members and supporters.

**INTERROGATORY 17:** Identify all addresses from which You, whether individually or through any corporate entity or business, have conducted business in New Jersey, including the street name and number, city, state, zip code, identity of property owner, identity of lessee, the dates of your use, and the business name(s) used. Identify all Documents Concerning Your business use of such addresses.

**RESPONSE 17:** CNJFO: May 2015 until May 31, 2025 address is PO Box 768, Sewell, NJ 08080; From May 31, 2025 new PO Box 245, Marlton, NJ 08053. CNFJO does not have a physical location; CNFJO is registered with the New Jersey Secretary of State. In lieu of identifying documents, CNFJO has produced a number of documents related to it in its responses to the Request for Production of Documents.

**INTERROGATORY 18:** Describe fully each and every Source of Knowledge about the factual allegations that Hollow Point Ammunition is "the most effective type[] of self-defense ammunition" and "the quintessential type of 'self-defense' ammunition," Comp. ¶ 3, including identifying any Documents Concerning same.

**RESPONSE 18:** Mr. Pyle, on behalf of CNJFO, has not compiled a library of sources, but has read various reports that demonstrate that hollow point ammunition is one of the most effective types of ammunition for self-defense purposes. Additionally, law enforcement officers throughout New Jersey utilize hollow points, as do bailiffs, security officers, etc. Restricting this entire class of ammunition for use by the general public violates the Second Amendment rights of New Jerseyans and our members and supporters. My understanding is that for legal/liability purposes, New Jersey has decided to prohibit its law enforcement officers from utilizing full metal

6

jacket rounds in the firearms they carry in public.  Additionally, carrying hollow point ammunition is the standard practice in every state except New Jersey and is in common use everywhere.  If "full metal jacket" rounds were better for self-defense, than New Jersey law enforcement would use them and prefer them to hollow point ammunition as full metal jacket ammunition is also cheaper to purchase than hollow point ammunition.

**INTERROGATORY 19:** Identify the specific features of Hollow Point Ammunition that makes its use more "effective," Comp. ¶ 3, and "superior," Comp. ¶ 59, compared to other types of ammunition(s) for self-defense outside the home, and Identify all facts, Documents, and expert opinions that show, support, explain, Describe, or Identify that such features of Hollow Point Ammunition make it more effective than or superior to other types of ammunition(s) for self-defense outside the home.

**RESPONSE 19:** CNJFO responds as follows: The specific feature of hollow point ammunition that makes it more "effective" is the hollow point.  First, hollow point ammunition generally does not have copper jacketing at the tip, but instead lead, which is more malleable, and more likely to mushroom and expand, in comparison to the copper tip of "full metal jacket" which is more likely to penetrate.  Second, hollow point ammunition utilizes a hollowed out cavity at the tip, rather than a pointed nose which, upon impact with the target, allows the bullet to "petal" or spread and thus mushroom into a larger diameter projectile, dumping energy into the target, slowing the round, and increasing the odds that it does not leave the body.  This allows hollow points to transmit more/all of their energy into the target, and thus they have an increase in stopping power versus a full metal jacket round.  In comparison, full metal jacket ammunition can pass through a human target, leading to the potential for collateral and/or unintended injuries to bystanders if used in public.  Additionally, there are many books and other reports that explain the utility of hollow point versus full metal jacket ammunition, found here: Carter Lloyd book, regarding hollow points and full metal jacket ammunition: https://search.worldcat.org/title/5831929168; https://www.ojp.gov/ncjrs/virtual-library/abstracts/hollow-point-versus-ball-duty-ammo; https://cjttec.org/; http://web.archive.org/web/20051125213038/http:/www.nlectc.org/nlectcrm/ammo.html; https://scholarship.shu.edu/cgi/viewcontent.cgi?article=1953&context=shlj

***ATTRIBUTES - HOLLOW POINT AMMUNITION:***
- PENETRATES LESS THAN BALL AMMUNITION
- TRAVELS COMPLETELY THROUGH AN OBJECT LESS OFTEN THAN BALL AMMUNITION
- CANNOT TRAVEL THROUGH OBJECTS SUCH AS WALLS, VEHICLE DOORS, ETC. AS WELL AS BALL AMMUNITION
- PENETRATES BODY ARMOR LESS EFFECTIVELY THAN BALL AMMUNITION
- DUE TO THIS REDUCED PENETRATION, GENERALLY IMPARTS MORE ENERGY(AND DAMAGE) TO AN OBJECT THAN BALL AMMUNITION
- RICOCHETS LESS THAN BALL AMMUNITION
- FEEDS LESS RELIABLY THAN BALL AMMUNITON (ALTHOUGH NEW DESIGNS HAVE MINIMIZED THIS PROBLEM TO BE ESSENTIALLY AN EQUAL TO BALL AMMUNITION)
- SIGNIFICANTLY MORE EXPENSIVE THAN BALL AMMUNITION
- SIGNIFICANTLY MORE EFFECTIVE THAN BALL AMMUNITION AT *RAPIDLY* INCAPACITATING A PERSON WHO IS SHOT

***ATTRIBUTES - BALL AMMUNITION:***
- PENETRATES MORE THAN HOLLOW POINT AMMUNITION
- DEFEATS BARRIERS BETTER THAN HOLLOW POINT AMMUNITION
- TRAVELS COMPLETELY THROUGH OBJECTS (WALLS, VEHICLE DOORS, HUMAN BODIES, ETC.) MORE OFTEN THAN HOLLOW POINT AMMUNITION
- DUE TO THIS INCREASED PENETRATION, GENERALLY IMPARTS LESS ENERGY (AND DAMAGE) TO AN OBJECT THAN HOLLOW POINT AMMUNITION
- RICHOCHETS MORE THAN HOLLOWPOINT AMMUNITION, AND WITH GENERALLY LARGER PARTICLES, CONTAINING MORE ENERGY
- PENETRATES BODY ARMOR MORE EFFECTIVELY THAN HOLLOW POINT AMMUNITION
- FEEDS MORE RELIABLY IN SEMI-AUTOMATIC WEAPONS THAN ANY OTHER TYPE OF AMMUNITION
- SIGNIFICANTLY LESS EXPENSIVE THAN HOLLOWPOINT AMMUNITION
- SIGNIFICANTLY LESS EFFECTIVE THAN HOLLOW POINT AMMUNITION AT *RAPIDLY* INCAPACITATING A PERSON WHO IS SHOT

Also, the police carry hollow point ammunition, because this type of ammunition is more effective at stopping a threat.

**INTERROGATORY 20:** Describe fully each and every Source of Knowledge about the factual allegation that carrying Hollow Point Ammunition is the "widespread preference[] of the American people," Comp. ¶ 4, including identifying any Documents Concerning same.

**RESPONSE 20:** To my knowledge, no state bans its citizens from carrying hollow point ammunition except for New Jersey. My understanding is that firearm training classes generally teach students that hollow points are preferred over full metal jacket ammunition for self-defense ammunition. Additionally, law enforcement agencies mandate the carry of hollow point ammunition in duty firearms. Finally, most individuals who carry firearms in public prefer to carry what the police carry because if the police carry it, it signifies that some study or report was conducted and the agency made the best selection based on the available information and evidence. *See also,*
https://web.archive.org/web/20090705190114/https://www.nytimes.com/1998/07/09/nyregion/new-york-police-will-start-using-deadlier-bullets.html and
http://web.archive.org/web/20131203165200/http://www.nytimes.com/1998/07/09/nyregion/new-york-police-will-start-using-deadlier-bullets.html?pagewanted=2

**INTERROGATORY 21:** Describe fully each and every Source of Knowledge about the factual allegation that "there was never an earlier American tradition of prohibiting the public carry of any type of ammunition," Comp. ¶ 4, including identifying any Documents Concerning same.

8

**RESPONSE 21:** To my knowledge, I do not have a document that specifically says "there was never an earlier American tradition of prohibiting the public carry of any type of ammunition." However, as I understand it, it is the Defendants' burden to prove that there is a historical tradition of whatever law they seek to uphold. I am unaware of any "earlier American tradition" of prohibiting the carry of any type of ammunition, and doubt that one would exist.

**INTERROGATORY 22:** Describe fully each and every Source of Knowledge about the factual allegation that ammunition(s) other than Hollow Point Ammunition, including full metal jacket ammunition, are "the inferior option for self-defense outside the home," Comp. ¶ 59, including identifying any Documents Concerning same.

**RESPONSE 22:** See Responses to Nos. 18, 19, and 20. Additionally, full metal jacket ammunition can ricochet and be less effective at close ranges as it can pass through a person because full metal jacket ammunition is not designed to expand on impact. Thus, hollow points are a safer ammunition option to use in public.

**INTERROGATORY 23:** Describe fully each and every Source of Knowledge about the factual allegation that ammunition(s) other than Hollow Point Ammunition are "so outdated and substandard when compared to modern hollow point ammunition" Comp. ¶ 76, including identifying any Documents Concerning same.

**RESPONSE 23:** *See* Responses to Nos. 18, 19, 20 and 22. Full metal jacket rounds may be useful if one needed to penetrate a substantial barrier, but for most self-defense applications, hollow point ammunition is a better choice for stopping threats. Full metal jacket ammunition is preferable for target shooting simply because the rounds are cheaper. But in public for self-defense, if someone is forced to shoot a threat and the bullet goes through the attacker, it is a big risk for the shooter using full metal jacket ammunition, as it increases the risk of bystander injury/collateral damage either through passthrough or ricochet. Likewise, as for home use, I understand that hollow points can be stopped by walls, rather than passing through walls like full metal jacket ammunition would do, thus leading to a safer environment if the need arises to discharge a firearm in the home.

**INTERROGATORY 24:** Identify all Person(s) You expect to call at trial as fact witnesses and describe the subject matter upon which each such Person is expected to testify.

**RESPONSE 24:** This Plaintiff has not decided yet as to which fact witnesses will be called to testify. This Plaintiff may call any witness that has been identified in the initial disclosures or identified through discovery. This Plaintiff may supplement this interrogatory at the appropriate time.

**INTERROGATORY 25:** Identify all Person(s) You expect to call at trial as expert witnesses and provide their occupation and field(s) of expertise, qualifications, subject matter of anticipated testimony, basis of anticipated testimony or opinion, title of any article(s) or publication(s) written, all Documents and other information relied upon in forming his or her opinion, and copies of all reports and/or statements.

**RESPONSE 25:**   This Plaintiff objects to this request as premature.  Without waiving the objection, this Plaintiff has not made a decision yet as to which expert witnesses, if any, will be called to testify.  This Plaintiff may supplement this interrogatory at the appropriate time and in accordance with the Court's scheduling order.

Dated: Lake Success, New York
July 10, 2025

HARFENIST KRAUT & PERLSTEIN, LLP

By:   *Steven J. Harfenist*

Steven J. Harfenist
*Attorneys for Plaintiffs*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: SHarfenist@hkplaw.com

Stephen D. Stamboulieh
MS Bar No. 102784
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
T: (601) 852-3440
E: stephen@sdslaw.us
*Admitted Pro Hac Vice

## **CERTIFICATE OF SERVICE**

I certify that on July 10, 2025, a copy of the foregoing document or pleading has been sent to:

Andrew H. Yang, Esq.
Giancarlo Piccinini, Esq.
Jonathan Mangel, Esq.
New Jersey Office of the Attorney General
124 Halsey Street
Newark, NJ  07101
Andrew.Yang@law.njoag.gov
Jonathan.Mangel@law.njoag.gov
Giancarlo.Piccinini@law.njoag.gov

*Steven J. Harfenist*
STEVEN J. HARFENIST

## VERIFICATION

The undersigned, being duly sworn, hereby deposes and says, that I am the Vice President and Treasurer of the Coalition of New Jersey Firearm Owners, a Plaintiff in the instant action, I have read the responses to these Interrogatories, and that I know the contents thereof upon information and belief; and that the same are true to the best of my knowledge.

Dated: July 7, 2025

_____
JOHN C. PYLE