**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| HEIDI BERGMANN-SCHOCH, COALITION OF NEW JERSEY FIREARM OWNERS, GUN OWNERS OF AMERICA, INC, and GUN OWNERS FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>JENNIFER DAVENPORT, in her official capacity as Attorney General of New Jersey, JEANNE HENGEMUHLE, in her official capacity as Acting Superintendent of the New Jersey Division of State Police, and LACHIA L. BRADSHAW, in her official capacity as the Burlington County Prosecutor,<br><br>Defendants. | Hon. Christine P. O'Hearn, U.S.D.J.<br>Hon. Matthew J. Skahill, U.S.M.J.<br><br>Docket No.: 1:25-cv-997-CPO-MJS<br><br><u>Return Date: To Be Set By The Court</u> |

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS OR, IN THE ALTERNATIVE, TO REOPEN DISCOVERY**

---

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 116
Trenton, New Jersey 08625
(609) 696-5366

Jonathan.Mangel@law.njoag.gov
*Attorney for Defendants*

David E. Leit
*Assistant Attorney General*
Of Counsel

Jonathan B. Mangel (NJ Bar No. 281382018)
Amanda I. Morejón (NJ Bar No. 405942022)
Lucy I. Sprague (NJ Bar No. 471242024)
Andrew H. Yang (NJ Bar No. 066382013)
*Deputy Attorneys General*
On The Brief

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..... 3

STANDARD OF REVIEW ..... 5

ARGUMENT ..... 6

A. Significant Change in the Law in *ANJRPC* Presents Good Cause for Reopening Expert Discovery. ..... 7

1. ANJRPC's Redefining of "Arms" Protected by the Second Amendment ..... 8

2. ANJRPC's Circuit Split on "Common Use" ..... 10

B. Additional Expert Evidence Is Necessary Under *ANJRPC*'s New Methodology ..... 15

C. Additional Expert Discovery Prejudices No One ..... 18

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Cases**


*Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207 (3d Cir. 1976)................5, 7

*Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023).......................................8

*Bianchi v. Brown*, 111 F.4th 438 (4th Cir. 2024) .......................................... *passim*

*Capen v. Campbell*, 708 F. Supp. 3d 65 (D. Mass 2023),
*aff'd*, 134 F.4th 660 (1st Cir. 2025) ..................................................................10

*Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025) ....................................................10

*Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553 (D.N.J. 2022) ...............................6

*J.G. v. C.M.*, No. 11-2887, 2014 WL 1652793 (D.N.J. Apr. 23, 2014) ....................6

*Landis v. North Am. Co.*, 299 U.S. 248 (1936)........................................................5

*Marlowe Pat. Holdings LLC v. Dice Elecs, LLC*,
293 F.R.D. 688 (D.N.J. 2013)......................................................................... 6, 15

*Nat'l Ass'n for Gun Rights v. Lamont*, 153 F.4th 213 (2d Cir. 2025).....................13

*Nat'l Ass'n for Gun Rights v. Lamont*, 685 F. Supp. 3d 63 (D. Conn. 2023) ..........10

*Ass'n. of N.J. Rifle & Pistol Clubs v. Att'y Gen. of New Jersey*, 183 F.4th 211
(3d Cir. 2026) (en banc) ...................................................................... *passim*

*N.Y. Rifle and Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).......................... *passim*

*Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38 (1st Cir. 2024)......... 11, 13

*Or. Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874 (D. Or. 2023) ..........................10

*United States v. Bridges*, 150 F.4th 517 (6th Cir. 2025) ........................................13

*United States v. Rahimi*, 602 U.S. 680 (2024).........................................................1

*Visa Int'l Serv. Ass'n v. JSL Corp.*, No. 2:01-CV-0294,
2006 WL 3248394 (D. Nev. Nov. 7, 2006) ......................................................15

## PRELIMINARY STATEMENT

The Supreme Court and the Third Circuit have issued a series of consequential Second Amendment rulings in the last several years, including in recent months. In 2022, the Supreme Court's decision in *New York Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), replaced means-end scrutiny with a two-step inquiry that asks whether the challenged modern laws contravene the Second Amendments' text, and if so, whether the modern laws are nevertheless consistent with our Nation's "historical tradition" of firearms regulation. That second step requires litigants and courts to delve into historical records to find laws representing historical analogues to the modern challenged law. But as the Supreme Court cautioned in *United States v. Rahimi*, 602 U.S. 680 (2024), this analogical reasoning must be adopted at a higher level of generality whereby courts ask only whether the challenged modern law is consistent with the *principles* that underpin our regulatory tradition, not whether that law has a perfect historical match, lest courts keep our law "trapped in amber." *Id.* at 691.

Courts across the country have since applied *Bruen* and *Rahimi* to a range of Second Amendment challenges. It was under this framework that parties to this case conducted discovery and filed dispositive motions. But on July 17, 2026, more than one month after the parties' summary judgment motions had been fully briefed, the Third Circuit issued an opinion in another Second Amendment case, *Association of*

*New Jersey Rifle & Pistol Clubs v. Attorney General of New Jersey ("ANJRPC")*, 183 F.4th 211 (3d Cir. 2026) (en banc). That case involved a challenge to two New Jersey statutes, one barring possession of certain semi-automatic rifles with especially dangerous features ("assault weapons"), and a second prohibiting possession of ammunition magazines capable of holding more than ten rounds (Large Capacity Magazines or LCMs). In striking down those two statutes, the Third Circuit created a circuit split with every other circuit concerning the constitutionality of these restrictions, and in doing so added a new gloss on the *Bruen* framework for challenges to weapons-possession laws.

*ANJRPC*'s test deviates dramatically from the standards previously used by courts in this Circuit as well as in sister circuits which have likewise confronted challenges to weapons possession restrictions. This development in the law prompts Defendants to file this motion to address next steps in this case. First, because the Supreme Court will decide *Viramontes v. Cook County* this Term, and may disagree with *ANJRPC*'s analysis, this Court should stay this case until the Supreme Court issues its decision and offers considerably more guidance on the methodology for such cases. Second, if this Court does not stay this case, it should reopen discovery. The Third Circuit decided *ANJRPC* after discovery in this case closed and briefing for dispositive motions was completed, leaving Defendants unable to account for *ANJRPC*'s significant changes to Second Amendment methodology in weapons

possession cases. For that reason, and to ensure this Court has the evidence before it to conduct the fulsome *Bruen* analysis under the auspices of *ANJRPC*'s new guidance, there exists good cause to reopen discovery.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Expert discovery in this case concluded on January 23, 2026. Defendants served Plaintiffs with four expert reports in this matter: (1) the expert report of Lucy Allen, M.Phil., M.A., M.B.A., of National Economic Research Associations, who provided analysis and opinion on the lethality of hollow point bullets as compared to non-expanding bullets using studies and other information; (2) the expert report of Dr. Stephen W. Hargarten, M.D., M.P.H., a board-certified emergency room doctor and professor with experience treating hundreds of patients who sustained gunshot wounds, who opined on how hollow point bullets damage soft tissues and organs upon impact as compared to non-expanding bullets; (3) the expert report of Professor Eric Ruben, J.D., a law professor at the Dedman School of Law at Southern Methodist University, who opined on the historical legal principles of self-defense, specifically the principles of necessity and proportionality; and (4) the expert report of Dr. Robert Spitzer, Ph.D., a distinguished professor emeritus at State University New York at Cortland and adjunct professor at the College of William & Mary School of Law, who opined on historical weapons regulations dating back to the Nation's founding.

On March 12, 2026, Plaintiffs filed their motion for summary judgment. ECF No. 41. Defendants filed their cross-motion for summary judgment and opposition to Plaintiffs' motion for summary judgment on April 9, 2026. ECF No. 43. Plaintiffs opposed Defendants' motion and filed their reply in further support of their motion on May 7, 2026. ECF No. 44. Defendants filed their reply to Plaintiffs' opposition on June 4, 2026. ECF No. 47.

On July 17, 2026, the Third Circuit issued its *en banc* decision in *ANJRPC*, laying out new guidance for Second Amendment cases involving challenges to the possession of particular weaponry, which binds courts in this District. *See* 183 F.4th 211 (3d Cir. 2026) (en banc).[1]

[1] As discussed at the conference on August 6, 2026, the Third Circuit has granted a stay of the mandate of its decision in *ANJRPC*, pending the resolution of the New Jersey Attorney General's forthcoming petition for a writ of certiorari to the Supreme Court.

This petition is likely to be granted, as the Supreme Court has already granted certiorari to two cases from two other circuits dealing with substantively similar statutes as that at issue in *ANJRPC*. *See Viramontes v. Cook County*, 2025 WL 1553896, *cert granted*, 25-238, --- S. Ct. ---, 2026 WL 1871322 (U.S. June 30, 2026) (Mem); *Nat'l Assoc. for Gun Rights v. Lamont*, 153 F.4th 213 (2d Cir. 2025), *cert granted sub nom*, *Grant v. Higgins*, 25-566, --- S. Ct. ---, 2026 WL 1871312 (U.S. June 30, 2026) (Mem). As detailed *infra*, *ANJRPC* creates a circuit split not only on its ultimate holding of the constitutionality of those statutes, but in the framework and analyses the Third Circuit used to arrive at that holding.

For that reason, it is likely that the Supreme Court's decision on those cases this coming Term will, in a matter of months, provide meaningful guidance on the *Bruen*/*Rahimi* framework as applied to laws regulating specific weapons under the Second Amendment.

On July 21, 2026, this Court scheduled a status conference and instructed the parties discuss whether the Motions for Summary Judgment should be withdrawn and resubmitted in full or whether supplemental briefing addressing *ANJRPC* would be sufficient. Counsel for both parties met and conferred on July 29, 2026. During the status conference on August 6, 2026, the Court acknowledged that *ANJRPC* is a significant change in the state of the law in this Circuit, administratively terminated the pending motions, and instructed Defendants to file a motion to reopen discovery.

**STANDARD OF REVIEW**

"A United States district court has broad power to stay proceedings." *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976); *see Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). The Third Circuit has held, "[i]n the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp.*, 544 F.2d at 1215.

Motions to reopen discovery are governed by Federal Rule of Civil Procedure 16(b)(4), which provides a case schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Good cause" exists where the

moving party has shown that "despite its diligence, it could not reasonably have met the scheduling order deadline." *See Marlowe Pat. Holdings LLC v. Dice Elecs, LLC*, 293 F.R.D. 688, 701 (D.N.J. 2013); *see also Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553, 558 (D.N.J. 2022). Courts in this District distill the question of whether "good cause" exists to four factors: "(1) the good faith and diligence of the moving party; (2) the importance of the evidence; (3) the logistical burdens and benefits of re-opening discovery; and (4) prejudice to the non-moving party." *J.G. v. C.M.*, No. 11-2887, 2014 WL 1652793, at *2 (D.N.J. Apr. 23, 2014). While good cause "is not a low threshold," *id.*, the Court may consider circumstances beyond the moving party's control in determining whether movant exercised good faith and diligence prior to the expiration of the discovery deadline. *See Faiella*, 341 F.R.D. at 561 ("Good cause may be satisfied on a showing that an inability to comply with a scheduling order is due to mistake, excusable neglect or *other factors that may account for failure to comply with a scheduling order*") (emphasis added).

## ARGUMENT

The Supreme Court's forthcoming decision this Term in *Viramontes* will have a significant impact on the methodology and standards governing this case. That decision will further inform any evidentiary records that Defendants will need to develop in addition to, or in place of, the proposed expert reports discussed below, *see infra* Point B. Judicial economy and efficiency counsel in favor of staying this

case. *See Bechtel Corp.*, 544 F.2d at 1215 ("In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."). But if this Court does not stay the case pending the Supreme Court's decision in *Viramontes*, then good cause exists here under Fed. R. Civ. P. 16(b)(4) for the Court to reopen expert discovery for the sole purpose of allowing Defendants to obtain additional expert support for the demanding historical inquiry required under the *Bruen* test as applied by the Third Circuit in *ANJRPC*.

### A. Significant Change in the Law in *ANJRPC* Presents Good Cause for Reopening Expert Discovery.

The Third Circuit issued its *en banc* decision in *ANJRPC* on July 17, 2026, almost seven months after the final exchange of expert reports in this matter. As this Court noted at the August 6, 2026 case management conference, *ANJRPC* is a significant development for Second Amendment law in the Third Circuit.[2] The main two-step structure of the *Bruen* test remains: first assessing whether the Second Amendment covers the regulated conduct, *Bruen*, 597 U.S. at 17; and if it does, determining whether the regulation is consistent with "the principles that underpin

[2] The changes in *ANJRPC* are representative of the ever-shifting state of Second Amendment jurisprudence at the district court and circuit court levels since *Bruen*, as the Supreme Court issues opinions providing guidance iterating on the instructions of *Bruen* and *Rahimi*. It is reasonable to expect the Supreme Court will issue an opinion that will impact the Third Circuit's ruling in *ANJRPC* this coming term.

our Nation's historical tradition," *Rahimi*, 602 U.S. at 692. But *ANJRPC* represents a significant shift in how courts in this Circuit must apply the *Bruen* test in cases that involve challenges to the possession of particular weaponry (which this case clearly is). Its new standards represent a split from all other circuits in how to apply *Bruen* to laws regulating possession of weapons at both steps of the *Bruen* test.

1. *ANJRPC's Redefining of "Arms" Protected by the Second Amendment*

*ANJRPC* has materially re-framed the *Bruen* step one analysis by changing the definition of what constitutes an "Arm" receiving the protection of the Second Amendment. Prior to *ANJRPC*, courts in this circuit (and every other) followed the Supreme Court's framing of the first step of the test: that the Second Amendment protects weapons "in common use today for self-defense." *Bruen*, 597 U.S. at 32 (citation modified); *Bianchi v. Brown*, 111 F.4th 438, 452–53 (4th Cir. 2024), while acknowledging the Second Amendment does not protect "any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. 570, 626 (2008); *see also Bianchi*, 111 F.4th at 452 (the Second Amendment was "not concerned with ensuring citizens have access to military-grade or gangster-style weapons"); *Bevis v. City of Naperville*, 85 F.4th 1175, 1194 (7th Cir. 2023) (finding "substantial support for the proposition that Arms protected by the Second Amendment do not include weapons that may be reserved for military use"). *ANJRPC*, however, moved all assessments of a weapons' qualitative features and

actual uses to *Bruen*'s second step—not the first step where other courts and the dissenters placed it.

*ANJRPC* has foreclosed much of the prior *Bruen* step one framework in ways that require consideration of different arguments and different evidence than was required in this Circuit under the pre-*ANJRPC* regime. First, in explaining what constitutes an "Arm" within the meaning of the Second Amendment's plain text, *ANJRPC* defined it as any "weapon customarily used for offensive or defensive purposes." *See ANJRPC*, 183 F.4th at 236. This stretches the Second Amendment's plain text's protections further than the Third Circuit did previously. The Third Circuit went on to hold that "all firearms constitute[] 'arms'" within the meaning of the Second Amendment. *See id.* at 239. While other circuits have routinely defined Second Amendment-protected Arms as ones in "common use for self-defense" at this step, *ANJRPC* holds that "common use has no bearing on" the definition of "Arms" *Id.* at 236.

Additionally, in its analysis of New Jersey's LCM provision, *ANJRPC* discarded the reasoning of its sister circuits to conclude that "the text of the Second Amendment does not limit 'Arms' to the minimum equipment necessary to operate a weapon." *See id.* at 248. This creates a circuit split with multiple other courts that have squarely held that LCMs are not "Arms" within the meaning of the Second Amendment, largely because LCMs are part of a subclass of items not themselves

*necessary* for a firearm to function. *See, e.g.*, *Capen v. Campbell*, 708 F. Supp. 3d 65, 89 (D. Mass 2023), *aff'd*, 134 F.4th 660 (1st Cir. 2025); *Duncan v. Bonta*, 133 F.4th 852, 868 (9th Cir. 2025); *Or. Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874, 912–31 (D. Or. 2023).

2. *ANJRPC's Circuit Split on "Common Use"*

In addition to re-allocating the questions of whether a weapon is "in common use" from *Bruen* step one to *Bruen* step two, *ANJRPC* broke from other circuits on what it means for a weapon to be "in common use." Previously, whether a weapon was "in common use for self-defense" was generally measured by presentations of whether those weapons are actually used and qualitatively useful for self-defense. *See Bianchi*, 111 F.4th at 459 (relying on statistics and studies showing how many shots are fired on average in a self-defense scenario in determining whether LCMs were "in common use for self-defense" (citing *Nat'l Ass'n for Gun Rights v. Lamont*, 685 F. Supp. 3d 63, 96 (D. Conn. 2023)); *see also Heller*, 554 U.S. at 629 (listing a range of objective features the Court considered that make the handgun at issue in that case "the quintessential self-defense weapon").

In *ANJRPC*, however, the Third Circuit has embraced an argument explicitly rejected by every other circuit to consider it: that sheer numbers of a type of weapon in circulation amongst the public can, at least for certain weapons like the assault weapons and LCMs at issue there, put that weapon "in common use for lawful uses."

*Contrast ANJRPC*, 183 F.4th at 241 (basing its conclusion that AR-15s are in common use for lawful purposes on the fact "there are around 24 million AR-15s and similar sports weapons in circulation"), *with Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 50 (1st Cir. 2024) ("While the Supreme Court has noted the common selection of handguns for self-defense in the home, it has not suggested that the constitutionality of arms regulations is to be determined based on the ownership rate of the weapons at issue, regardless of its usefulness for self-defense"), *and Bianchi*, 111 F.4th at 460 ("Such a trivial counting exercise makes a mockery of the careful interest balancing between individual self-defense and societal order that our legal tradition has carved into the heart of the right to keep and bear arms"). While other circuits have declined to "read [the Second Amendment] to expand or contract based on nothing more than contemporary market trends," *Bianchi*, 111 F.4th at 461, the Third Circuit looked to circulation. *ANJRPC*, 183 F.4th at 241–42.[3]

*ANJRPC* also expanded the scope of what "lawful uses" a weapon may have that should inform the *Bruen* step two analysis. Since *Heller*, the Supreme Court and every other circuit to consider the question regarded the "central component" of the

[3] It is also of note that *ANJRPC* does not consider the disproportionate use of a weapon in crime to affect its determination that same weapon is in common use for lawful purposes. "Even if semi-automatic rifles are disproportionately used in some crimes, those may still represent a small fraction of those weapons' overwhelmingly lawful use." 183 F.4th at 241 n. 29.

Second Amendment to be "self-defense." *Heller*, 554 U.S. at 599; *see Bruen*, 597 U.S. at 29 ("self-defense is '*the central component*' of the Second Amendment right"); *Bianchi*, 111 F.4th at 452; 460 (also noting that a popularity contest form of "common use inquiry leads to absurd consequences because it totally detaches the Second Amendment's right to keep and bear arms from its purpose of individual self-defense"). *Bruen* was clear that "whether modern and historical regulations impose a comparable burden *on the right of armed self-defense* and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry." 597 U.S. at 29 (emphasis added). *Bruen* even quoted from *Heller* in defining the scope of the Second Amendment right as the "individual right to possess and carry weapons *in case of confrontation*." *Bruen*, 597 U.S. at 33 (quoting *Heller*, 554 U.S. at 592) (emphasis added). *Bruen* clearly contemplated a self-defense-centric inquiry at both steps.

*ANJRPC* has drastically expanded that principle, stating "self-defense is one lawful purpose relevant to the common use inquiry, but it is not the only one. … [O]ther lawful purposes also bring a commonly used weapon within the ambit of the Second Amendment." 183 F.4th at 234. In addition to its effect on the step one analysis, this departure broadens the *Bruen* step two aperture. Now the government may need to defend its firearms regulations by pointing to historical analogues that go far beyond what the U.S. Supreme Court and every other sister circuit has

required to this point. *See ANJRPC*, 183 F.4th at 241 (noting a wide range of protected "lawful purposes including self-defense, target shooting, hunting, and pest control"). Defendants' arguments in this case now should account for lawful purposes beyond self-defense in proffering historical analogues for this court's consideration (and for a potential appeal), not just those regulating self-defense and weapon possession, which had been the crux of the historical inquiry on modern regulations of specific weaponry prior to *ANJRPC*.

Finally, *ANJRPC* enlarged the frame of analysis at *Bruen*'s second step by holding that any weapon "'in common use for lawful purposes' cannot be 'dangerous and unusual.'" 183 F.4th at 234. This is significant because, until *ANJRPC*, the Supreme Court's test considered evidence of a weapon's unusually or disproportionately dangerous features, in asking whether regulating those weapons was consistent with the principles underlying our Nation's history of firearms regulation. *See Heller*, 554 U.S. at 627. Other circuits have kept to this instruction from *Heller*, and upheld laws on "dangerous and unusual weapons," even those in large circulation across the country, like AR-15s. *See Bianchi*, 111 F.4th at 452–53; *United States v. Bridges*, 150 F.4th 517, 527–28 (6th Cir. 2025); *Ocean State Tactical*, 95 F.4th at 47; *Nat'l Ass'n for Gun Rights v. Lamont*, 153 F.4th 213, 233 (2d Cir. 2025) (noting "[t]he cases do not hold that the Second Amendment

*necessarily* protects *all* weapons in common use. They do not shield popular weapons from review of their potentially unusually dangerous character.”).[4]

*ANJRPC* has put the onus on whether at least some weaponry is “in common use” for lawful purpose beyond self-defense measured by the number of the regulated item in circulation. A State defending its laws at *Bruen* step two now should address the sheer number of a given regulated item, with little guidance from *ANJRPC* on what measurements to use for what constitutes “common use” or how to give consideration to the role that legislation (or lack thereof) plays in affecting the market and circulation of regulated items. *See ANJRPC*, 183 F.4th at 242 (“[W]e need not precisely define the quantity or qualities that make a weapon in common use for lawful purposes. Regardless of where those lines may be drawn, the many millions of semi-automatic rifles in circulation for lawful purposes are plainly in common use.”). That requires factual development.

[4] The *ANJRPC* majority did note that some weapons may require a court to “qualitatively examine a weapon’s features to determine whether a weapon is in common use for lawful purposes” and accepted that “‘certain categories of guns’ … [are] different from other categories of guns that ‘traditionally have been widely accepted as lawful possessions.’” *ANJRPC*, 184 F.4th at 242 (citation omitted). But the opinion declines to engage with what those qualities may be, beyond listing specific types of weapons previously listed by the Supreme Court as examples of “certain categories of guns … including the machineguns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulation.” *Id.* Those arguments will need to play out in cases like this one, which will require as before fulsome records for analyzing these bullets.

### B. Additional Expert Evidence Is Necessary Under *ANJRPC*'s New Methodology

The evidence in this case was assembled and presented to this court prior to these significant, circuit-splitting changes to Second Amendment jurisprudence. As explained above, *ANJRPC* has reframed both "Arms" under step one, and multiple points of step two. These changes since the close of discovery in this matter have altered the methodology this court may employ in analyzing the constitutionality of the HBP Carry Law at issue. Defendants, despite their diligence, could not reasonably have produced expert reports on such circulations and statistical analyses (when no circuit court up to that point had agreed with that methodology) in response to the *ANJRPC* decision by the Court's discovery deadline in this case. *See Marlowe*, 293 F.R.D. at 701. Courts have found good cause to reopen discovery in situations like this, where "intervening change in the law … modified the standards" after close of discovery. *See Visa Int'l Serv. Ass'n v. JSL Corp.*, No. 2:01-CV-0294, 2006 WL 3248394, at *1 (D. Nev. Nov. 7, 2006) (holding it "necessary to reopen discovery" to account for "intervening change in the law" where "such additional discovery may be helpful to the Court"). To that end, should the Court grant this motion to reopen expert discovery in light of *ANJRPC*, Defendants would submit additional evidence to help the Court assess the HPB Carry Law in light of the new standards set in *ANJRPC*.

Defendants will endeavor to develop the following expert reports and relevant studies and data in support:

First, Defendants would seek evidence from a statistical or economics expert to opine on the circulation of HPBs amongst civilians in America, using publicly available industry and sales information. While *ANJRPC* tied whether at least some regulated items are "in common use for lawful purposes" to that item's circulation, *ANJRPC* did not provide a precise methodology or benchmarks for what level of circulation is sufficiently before that item to be "in common use for lawful purposes." *See ANJRPC*, 183 F.4th at 242 ("Regardless of where those lines may be drawn, the many millions of semi-automatic rifles in circulation for lawful purposes are plainly in common use"). This statistical evidence on the prevalence of HPBs will aid this Court in assessing whether HPBs are "in common use for lawful purposes" and inform this Court's reasoning under step two. *See id.*

Second, Defendants will seek to present evidence from a historian showing the "unprecedented societal concerns" HPBs present, compared to more traditional non-expanding bullets in the context of civilian carry of semi-automatic weapons. Such historical evidence will address the now-heightened standard in this Circuit to show "unprecedented societal concerns or dramatic technological changes" that "require a more nuanced approach" at *Bruen* step two. *See Bruen*, 597 U.S. at 27. *ANJRPC* has now offered significant additional language regarding the level of

generality at which it views this inquiry, which it itself said breaks with "several of [its] sister circuits." 183 F.4th at 246 (listing cases).

Third, Defendants would seek to submit an opinion from a linguistics expert to opine on the meaning of the word "Arms" as used in the Second Amendment. Defendants have already submitted argument that HPBs are not themselves "Arms" and so fall outside the scope of the Second Amendment's protections at *Bruen* step one, but *ANJRPC* has added historical nuance to when an item other than a firearm may be considered as an "Arm" within the meaning of the Second Amendment. Linguistic evidence going to the usage and definitions of words and phrases related to arms and accoutrements such as ammunition of various types will facilitate the Court's analysis of whether HPBs are protected by the plain text of the Second Amendment in *Bruen* step one.

Finally, Defendants would submit evidence from a firearms expert opining on the mechanics of modern HPBs, as well as non-expanding bullets, and other types of non-standard ammunition. *ANJRPC* found magazines fall under the scope of Arms, and therefore the Legislature cannot prohibit a subset of magazines merely because it holds more than ten rounds. *See ANJRPC*, 183 F.4th at 247. A firearms expert would facilitate the Court's analysis that HPBs and non-expanding rounds are not just differences in scale of operation like magazines with different capacities. HPBs and non-expanding ammunition perform differently, with different results. A

firearms expert's opinion to that effect would facilitate this Court's analysis of whether HPBs are "Arms" under the Second Amendment at *Bruen* step one.

### C. Additional Expert Discovery Prejudices No One

Reopening discovery in this case post-*ANJRPC* for the purposes outlined above will facilitate this Court's full, equitable adjudication of the issues it presents. The constitutional issue before this Court is a significant one, and as this Court mentioned in the August 6, 2026 conference with the parties, *ANJRPC* is a different framework and provides some specific direction from the Circuit that did not previously exist. To allow Defendants to address that new governing standard, Defendants request that this Court reopen expert discovery for an additional 120 days to accommodate for any rebuttal reports or depositions.

## CONCLUSION

This Court should stay proceedings in this case pending the United States Supreme Court's decision this coming Term in *Viramontes* or, in the alternative, reopen expert discovery for the narrow purposes outlined above.

Dated: August 20, 2026

Respectfully submitted,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By: *<u>/s/ Jonathan B. Mangel</u>*
Jonathan B. Mangel
Deputy Attorney General