Steven J. Harfenist
Harfenist Kraut & Perlstein, LLP
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: sharfenist@hkplaw.com
*Attorneys for Plaintiffs*

Oliver M. Krawczyk*
Ambler Law Offices, LLC
115 South Hanover Street, Suite 100
Carlisle, PA 17013
T: (717) 525-5822
E: oliver@amblerlawoffices.com
PA Bar No. 334423
*Admitted Pro Hac Vice

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------------X

HEIDI BERGMANN-SCHOCH, COALITION OF NEW JERSEY FIREARM OWNERS, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION,

Plaintiffs,

**Civil Action No.: 25-CV-997(CPO)(MJS)**

-against-

JENNIFER DAVENPORT, in her Official Capacity as the Attorney General of New Jersey, JEANNE HENGEMUHLE, in her Official Capacity as the Acting Superintendent of the New Jersey State Police, and LACHIA BRADSHAW, in her Official Capacity as the Burlington County Prosecutor,

Defendants.

-------------------------------------------------------------------X

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS OR, IN THE ALTERNATIVE, TO REOPEN DISCOVERY

# TABLE OF CONTENTS

***Page***


TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

POINT I DEFENDANTS AUDACIOUSLY SEEK TO MINIMIZE *ANJPRC*, ASSERTING THAT THE CASE WAS WRONGLY DECIDED AND THAT THIS COURT SHOULD NOT FOLLOW IT ........ 1

POINT II IT IS NOT NECESSARY TO AWAIT *VIRAMONTES* WHEN *ANJRPC* PROVIDES THIS COURT ALL IT NEEDS TO GRANT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ........ 6

POINT III THIS COURT SHOULD DECLINE TO REOPEN DISCOVERY AND ENTERTAIN NEW BRIEFING, THEREBY GIVING DEFENDANTS A SECOND BITE AT THE APPLE ........ 9

CONCLUSION ........ 13

## TABLE OF AUTHORITIES

***Page***

**U.S. Constitution**

Amendment II ........ *passim*

**Cases**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*
2026 LX 386071 (3d Cir. July 17, 2026) ........ *passim*

*Blystone v. Horn*
664 F.3d 397 (3d Cir. 2011) ........ 10

*Caetano v. Massachusetts*
577 U.S. 411 (2016) ........ 10

*District of Columbia v. Heller*
554 U.S. 570 (2008) ........ *passim*

*Elrod v. Burns*
427 U.S. 347 (1976) ........ 8

*Garland v. Cargill*
602 U.S. 406 (2024) ........ 5

*Gold v. Johns-Manville Sales Corp.*
723 F.2d 1068 (3d Cir. 1983) ........ 8

*Heller v. District of Columbia*
670 F.3d 1244 (D.C. Cir. 2011) ........ 5

*N.Y. State Rifle & Pistol Ass'n v. Bruen*
597 U.S. 1 (2022) ........ *passim*

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
605 U.S. 280 (2025) ........ 5, 6

*Snope v. Brown*
145 S. Ct. 1534 (2025) ........ 5

*Staples v. United States*
511 U.S. 600 (1994) ........ 5

*United States v. Hemani*
146 S. Ct. 1677 (2026) ........ 7

*United States v. Rahimi*
602 U.S. 680 (2024) ........ 7

*United States v. Singletary*
268 F.3d 196 (3d Cir. 2001) ........ 3

*Viramontes v. Cook County*
No. 25-238 (U.S.) ........ *passim*

*Wolford v. Lopez*
146 S. Ct. 2032 (2026)....................3, 7

**Rules**

Fed. R. Civ. P. 59(e)....................10

## ARGUMENT

## POINT I

### DEFENDANTS AUDACIOUSLY SEEK TO MINIMIZE *ANJPRC*, ASSERTING THAT THE CASE WAS WRONGLY DECIDED AND THAT THIS COURT SHOULD NOT FOLLOW IT

Defendants label the en banc Third Circuit's recent decision in *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 2026 LX 386071 (3d Cir. July 17, 2026) ("*ANJRPC*"), a "significant development in Second Amendment law in this Circuit, as applied to weapons possession restrictions." ECF # 61-1 at 1. If by that, Defendants mean that the Third Circuit no longer will allow New Jersey to ban entire classes of popular "Arms" overwhelmingly chosen by "the people" to "keep and bear," then Plaintiffs agree. But that is not what Defendants mean. To the contrary, Defendants assert that the Third Circuit got it *wrong* in *ANJRPC*, that *ANJRPC* violates Supreme Court precedent multiple times over, and that, as a result, this Court should refuse to follow *ANJRPC* here, instead staying the case in the hopes that *ANJRPC* will be overturned. Of course, this Court has no authority to conclude that *ANJRPC* was wrong, much less to reject binding circuit precedent. And for that reason, Defendants' mere objections to *ANJRPC* form no basis for granting a stay here.

For example, Defendants assert that "*ANJRPC* creates a circuit split not only on its ultimate holding … but in the framework and analyses," and that "the Third

Circuit created a circuit split with every other circuit." ECF # 61-2 ("Mot.") at 2; *see also id.* ("ANJRPC's test deviates dramatically from the standards previously used by courts in this Circuit as well as in sister circuits."); at 8 (*ANJRPC*'s "new standards represent a split from all other circuits in how to apply *Bruen*"); at 9 (Third Circuit "discarded the reasoning of its sister circuits"); at 10 ("Third Circuit has embraced an argument explicitly rejected by every other circuit to consider it"); at 13 ("Other circuits have kept to this instruction from *Heller*...."). But while the Supreme Court is free to consider and resolve circuit splits, this Court is not. And while the decisions of other courts may have persuasive weight in the *absence* of a Third Circuit opinion on the subject, they are entirely irrelevant now that the Third Circuit has definitively spoken. This Court is bound by the Third Circuit's 10-to-5 decision in *ANJRPC*. What the First, Fourth, Seventh, or Ninth Circuits have said on the issue has no role to play in this Court's analysis, because the Third Circuit has conclusively decided the issue.

Defendants also assert that the Third Circuit's decision conflicts with *Bruen*, claiming that "*ANJRPC* has materially re-framed the *Bruen* step one analysis." Mot. at 8; *see also id.* at 2 (*ANJRPC* "added a new gloss on the *Bruen* framework for challenges to weapons-possession laws."). But there was no re-framing, and there is no gloss. The Third Circuit merely applied the Supreme Court's precedents as written, albeit reaching a result that Defendants do not like.

Undaunted, Defendants claim that, "[p]rior to *ANJRPC*, courts in this circuit … followed the Supreme Court's framing of the first step of the test" (Mot. at 8), implying that *ANJRPC does not* "follow[]" *Bruen*.[1] *See also id.* at 11-12 ("the Supreme Court … regarded the 'central component' of the Second Amendment to be 'self-defense,'" and "*Bruen* clearly contemplated a self-defense-centric inquiry," but *ANJRPC* "expanded the scope" and drastically expanded that principle"); at 12 (Third Circuit "go[ing] far beyond … the U.S. Supreme Court"); at 13 ("until *ANJRPC*, the Supreme Court's test considered evidence of a weapon's unusually or disproportionately dangerous features"). But even if it were true (it is not) that *ANJRPC* conflicts with Supreme Court precedent, it is not for this Court to declare a Third Circuit "gloss" to exist, to declare that the Third Circuit got it wrong, or to decline to follow its decisions. *See United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001) (lower courts bound by express holdings of courts above them, and even if "decisions have somehow weakened the precedential value … we may not precipitate its decline … [we] follow … directly applicable precedent, even if that precedent appears weakened"). Indeed, as Defendants are finally forced to admit, *ANJPRC* "binds courts in this District." Mot. at 4.

---

[1] Hilariously, Defendants accuse the Third Circuit of having "stretche[d] the Second Amendment's plain text's provisions," by "defin[ing]" an "Arm" to be "any 'weapon customarily used for offensive or defensive purposes.'" Mot. at 9. But *ANJPRC* did not cut that language from whole cloth. To the contrary, the Court merely quoted *Wolford v. Lopez*, 146 S. Ct. 2032 (2026). It therefore seems that Defendants' gripe is not with the Third Circuit, but with the Supreme Court itself. This Court should not entertain the notion that the *Supreme Court* got it wrong, and that this Court has the purview to refuse to follow its teachings.

Nor have Defendants learned their lesson after *ANJRPC* even as to the issues decided in that case. For example, they continue to malign firearms they pejoratively label as "assault weapons" as having "especially dangerous features." Mot. at 2. But *ANJPRC* rejected this notion, explaining that purported dangerousness is "no justification for laws restricting the public carry of weapons that are unquestionably in common use today." *ANJRPC*, 2026 LX 386071, at *32 (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 47 (2022)); *see also id.* at *33 (items "in common use" cannot be "dangerous and unusual"); at *76 (Matey, J., concurring) ("the already accessible evidence of the regulated objects' common use should illustrate the unsuitability of New Jersey's overly broad analogy to 'unusually dangerous' weapons"). The fact that Defendants are refusing to back down from their arguments, even after being conclusively overruled by the Third Circuit, demonstrates that their invitation for this Court to ignore *ANJRPC* as well. This Court should not take the bait.

Defendants also seek to undermine *ANJRPC* by implying that it may be overruled when the Supreme Court decides *Viramontes v. Cook County*, No. 25-238. For example, they claim that the Supreme Court "may disagree with *ANJPRC*'s analysis." Mot. at 2; *see also id.* at 7 n.2 (*Viramontes* expectedly "will impact the Third Circuit's ruling in *ANJPRC*"). But Defendants' prediction could not be more unlikely. In fact, the Supreme Court's past decisions all but confirm

that *ANJRPC*'s reasoning will be affirmed in *Viramontes*. For instance, in *Staples v. United States*, 511 U.S. 600 (1994), the Court recognized that semiautomatic rifles "traditionally have been widely accepted as lawful possessions...." *Id.* at 612. Echoing these weapons' ubiquity in *Garland v. Cargill*, 602 U.S. 406 (2024), Justices Sotomayor, Kagan, and Jackson acknowledged that AR-15s are "commonly available, semiautomatic rifles." *Id.* at 430 (Sotomayor, Kagan & Jackson, JJ., dissenting). Likewise, in *Snope v. Brown*, 145 S. Ct. 1534 (2025), Justice Kavanaugh observed that "Americans today possess an estimated 20 to 30 million AR-15s. And AR-15s are legal in 41 of the 50 States, meaning that the States such as Maryland that prohibit AR-15s are something of an outlier." *Id.* at 1534 (Kavanaugh, J., respecting denial of certiorari). As Justice Thomas separately explained, the AR-15 is "the most popular civilian rifle in America." *Id.* at 1535 (Thomas, J., dissenting from denial of certiorari). In fact, "[t]ens of millions of Americans own AR-15s, and the 'overwhelming majority' of them 'do so for lawful purposes, including self-defense and target shooting.'" *Id.* at 1536; *accord Heller v. District of Columbia*, 670 F.3d 1244, 1269-70 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("Semiautomatic rifles, like semi-automatic handguns, have not traditionally been banned and are in common use by law-abiding citizens for self-defense in the home, hunting, and other lawful uses."). Thus, in *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025), the Court

*unanimously* explained that so-called "'military style' assault weapons, … includ[ing] AR-15 rifles, AK-47 rifles, and .50 caliber sniper rifles," are "both widely legal and bought by many ordinary consumers," and "[t]he AR-15 is the most popular rifle in the country." *Id.* at 297. These prior statements from the Court do not foretell a reversal of *ANJPRC*, as Defendants apparently believe. Quite the opposite. Even so, it is not for this Court to read the tea leaves, or to divine future Supreme Court precedent. This Court must follow *ANJRPC* unless and until it is overruled.

## POINT II

## IT IS NOT NECESSARY TO AWAIT *VIRAMONTES* WHEN *ANJRPC* PROVIDES THIS COURT ALL IT NEEDS TO GRANT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants claim that *Viramontes* will be decided "in a matter of months" (ECF # 61-1 at 1), but fail to show their math. In reality, due to the fact that oral argument is currently scheduled for December 2, 2026,[2] and given the likely divided nature of the Court's eventual opinion and the likelihood of dissents and concurrences, it is likely a decision may not issue until June of 2027 – or more than nine months from now (if even then). That period of time – when added together with the significant *additional* litigation Defendants no doubt will demand *after*

[2] *See* https://www.supremecourt.gov/oral_arguments/argument_calendars/MonthlyArgumentCalDecember2026.pdf. Defendants similarly claim that *ANJRPC* could be "consolidated" with *Viramontes* (ECF # 61-1 at 2), but that seems highly unlikely given that the case already has been set for argument, with a time limit allotted.

*Viramontes* is decided – is simply too long to wait while Plaintiffs' constitutional rights are continually being infringed.

Nor is *Viramontes* the magic pill that Defendants make it out to be. At issue there are so-called "assault weapons" – whereas this case involves hollow point ammunition, meaning *Viramontes* will not directly "be dispositive of the issues" (Mot. at 5) here. Instead, claiming that a stay may issue anytime a pending case might "significant[ly] impact … the methodology and standards governing this case" (*id.* at 6), Defendants ignore that *ANJRPC already* has a "significant impact" on the decision this Court must reach – being a "significant development for Second Amendment law in the Third Circuit," it as Defendants put it. *Id.* at 7. Thus, for *Viramontes* to have further "significant impact," it must *overrule* the result reached in *ANJRPC*. And as discussed *supra*, it seems highly unlikely that will occur.

Nevertheless, Defendants claim that Viramontes will provide "meaningful guidance." ECF # 61-1 at 1. But, by definition, *every* Second Amendment decision from the Supreme Court provides meaningful guidance. And as Defendants admit, there have been "a series of consequential Second Amendment rulings in the last several years" (Mot. at 1), and there is no reason to believe that *Viramontes* is the last. *See id.* at 7 (acknowledging the "ever-shifting state of Second Amendment jurisprudence"). Indeed, each of the Supreme Court's recent

decisions (*Bruen*, *Rahimi*, *Hemani*, *Wolford*) has provided guidance as to the appropriate methodology for Second Amendment cases. If that is the test to justify a stay, then Defendants could seek a further stay after *Viramontes* is decided, so long as there is another pending Supreme Court decision that could provide further "meaningful guidance," and thereby delaying this case into perpetuity and staving off Defendants' inevitable loss.

Finally, "[i]t is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983). But Defendants entirely omit this requirement from their standard of review (Mot. at 5), and they do not even begin to explain how it is met here. Indeed, *ANJRPC* controls the resolution of this case – it all but requires a finding that Plaintiffs' constitutional rights are being infringed. And because the violation of enumerated constitutional rights constitutes irreparable harm (*Elrod v. Burns*, 427 U.S. 347, 373 (1976)), a stay will clearly "work damage" to Plaintiffs, by allowing the constitutional violation to perpetuate. Aside from noting that *Viramontes* may eventually provide "meaningful guidance," Defendants offer *nothing* to show some "hardship or inequity" to them by being required to proceed – much less one that overrides the established irreparable harm to Plaintiffs that is, after *ANJRPC*, unquestionably

occurring.[3]

## POINT III

## THIS COURT SHOULD DECLINE TO REOPEN DISCOVERY AND ENTERTAIN NEW BRIEFING, THEREBY GIVING DEFENDANTS A SECOND BITE AT THE APPLE

Seeking in the alternative to reopen discovery, designate new experts, submit new expert reports, offer additional historical analogues – and presumably then to re-brief the case – Defendants note that "[t]he Third Circuit decided *ANJRPC* after discovery in this case closed and briefing for dispositive motions was completed, leaving Defendants unable to account for *ANJRPC*'s significant changes to Second Amendment methodology in weapons possession cases." Mot. at 2-3. But if "account[ing] for" *ANJRPC* was what Defendants wanted, then basic supplemental briefing on the impact of *ANJRPC* would suffice, and Plaintiffs would not object to an order directing the parties to submit additional briefing on the impact of *ANJRPC*. To the contrary, what Defendants really seek is to move this case back to square one. But for the reasons below, there is no reason to give Defendants a mulligan.

As discussed above, there is nothing novel in the Third Circuit's *ANJRPC* opinion that was not already included in the arguments that Plaintiffs advanced in their summary judgment briefing. *ANJRPC* simply applied Supreme Court

[3] Of course, were this Court to grant Plaintiffs' contemporaneously filed Motion for Preliminary Injunction, the infringement of Plaintiffs' constitutional rights would cease.

precedent as written. Indeed, the arguments in Plaintiffs' Motion for Summary Judgment align quite closely with the holdings of *ANJRPC* – which means that Defendants already have had every opportunity to respond. For example, Defendants hand-wring that the Third Circuit now looks to "sheer numbers" of regulated items in circulation, instead of how "weapons are actually used," which is what Defendants proposed. Mot. at 10-11. But Plaintiffs already briefed how the challenged statute restricts "ammunition used by tens of millions of Americans across the country in both private and government capacities," while in contrast "'approximately 200,000' known examples at that time" was good enough for the Supreme Court in *Caetano v. Massachusetts*, 577 U.S. 411 (2016), meaning that "[a] ban on 'Arms' that are 'in common use' is simply 'invalid.'" ECF # 41-11 at 2, 25, 28. The fact that Defendants did not take Plaintiffs' arguments seriously, or fully respond to them, and now regret that decision since that the Third Circuit has *taken Plaintiffs' side*, does not mean that Defendants should be permitted to start this case anew. *See Blystone v. Horn*, 664 F.3d 397, 416 (3d Cir. 2011) (finding, in the context of a Rule 59(e) motion that, while "an intervening change in the controlling law" theoretically might suffice to amend a judgment, "such motions are not to be used as an opportunity to relitigate the case" and "cannot be used to present new arguments that could have been raised prior to judgment"). Defendants clearly could have addressed the numerosity of hollow point

ammunition previously.

Conversely, Defendants bemoan the Third Circuit's holding that the Second Amendment protects "lawful uses" aside from "self-defense" (Mot. at 11-12), ignoring that Plaintiffs *never alleged* any desire to own hollow point ammunition *aside from* self-defense. *See* ECF # 41-11, passim. And so it is entirely unclear why Defendants would need to go "far beyond" (Mot. at 12) the self-defense arguments that Plaintiffs have actually made.

Nor are Defendants ever clear as to *which* additional experts and *what* evidence they wish to submit – other than that they wish to find *some* experts and submit *some* evidence. Defendants profess the need "to obtain additional expert support for the demanding historical inquiry required under the *Bruen* test as applied by the Third Circuit in *ANJRPC*." Mot. at 7. But *ANJRPC* merely followed *Bruen*, and Defendants provide no hint at the "additional … support" they wish to provide now. Defendants continue with generalities, claiming that *ANJRPC* "require[s] consideration of different arguments and different evidence." *Id.* at 9. But Defendants never say what those arguments are or what that evidence is, just that they will be "different." Defendants predict that "the government may need to defend its firearms regulations by pointing to historical analogues that go far beyond what the U.S. Supreme Court and every other sister circuit has required to this point." *Id.* at 12-13. But they fail to provide any hints as to what that

means. As Defendants point out, courts considering motions to reopen discovery must consider "the importance of the evidence" (*id.* at 6) – which naturally requires knowing *what* the evidence will be. And yet Defendants have not explained even the four corners of their theoretical new experts and new evidence, much less do they purport to show how it is "importan[t]" to their case. Defendants' failure to provide any detail means the Court cannot satisfy itself that this required showing has been met.

At bottom, Defendants' request for a mulligan is nothing more than a gripe about *ANJRPC*, with Defendants objecting to their loss, reeling that their arguments were shot down, and dumbfounded that their historical evidence was rejected. That is not a reason to return this litigation to the starting gate. *ANJRPC* provides this Court all that it needs to render judgment in Plaintiffs' favor. All that remains is to do it.[4]

[4] Additionally, motions to reopen discovery – like motions to stay – require a court's consideration of "prejudice to the non-moving party." Mot. at 6. Here, there is significant prejudice to Plaintiffs from being required to start over – the continued violation of their constitutional rights, which *ANJRPC* establishes as fact, leading to ongoing irreparable harm to their ability to defend themselves.
Separately, while Defendants are governmental parties with hundreds of lawyers and unlimited taxpayer resources, Plaintiffs are private individuals, and nonprofit organizations that rely on the donations of their members and supporters. They already have put forth significant expense to litigate this case, and would be seriously prejudiced by Defendants' request to avoid *ANJRPC* (even temporarily) by re-litigating the matter.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

Dated: Lake Success, New York
September 8, 2026

HARFENIST KRAUT & PERLSTEIN, LLP

By: *Steven J. Harfenist*

Steven J. Harfenist
*Attorneys for Plaintiffs*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: SHarfenist@hkplaw.com

Oliver M. Krawczyk*
Ambler Law Offices, LLC
115 South Hanover Street, Suite 100
Carlisle, Pennsylvania 17013
T: (717) 525-5822
E: oliver@amblerlawoffices.com
**Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I, Steven J. Harfenist, hereby certify that I have filed a true and correct copy of the foregoing document or pleading with this Court's CM/ECF system, which generated a Notice of Electronic Filing, and provided a copy of the above to all counsel of record.

Dated: September 8, 2026

*Steven J. Harfenist*
STEVEN J. HARFENIST