Steven J. Harfenist
Harfenist Kraut & Perlstein, LLP
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: sharfenist@hkplaw.com
Attorneys for Plaintiffs

Oliver M. Krawczyk*
Ambler Law Offices, LLC
115 South Hanover Street, Suite 100
Carlisle, PA 17013
T: (717) 525-5822
E: oliver@amblerlawoffices.com
PA Bar No. 334423
*Admitted Pro Hac Vice

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------------------X

HEIDI BERGMANN-SCHOCH, COALITION OF NEW JERSEY FIREARM OWNERS, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION,

Plaintiffs,

**Civil Action No.: 25-CV-997(CPO)(MJS)**

-against-

JENNIFER DAVENPORT, in her Official Capacity as the Attorney General of New Jersey, JEANNE HENGEMUHLE, in her Official Capacity as the Acting Superintendent of the New Jersey State Police, and LACHIA BRADSHAW, in her Official Capacity as the Burlington County Prosecutor,

Defendants.

---------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

***Page***


TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ........................................................................................1

LEGAL STANDARD....................................................................................3

ARGUMENT ..............................................................................................3

POINT I PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ........................................................................................4

A. *ANJRPC* Demonstrates Conclusively that (i) Plaintiffs Satisfy *Bruen*'s Plain-Text Inquiry, (ii) the Challenged Statute Is Presumptively Unconstitutional, and (iii) Defendants Bear the Burden to Show a Historical Tradition Justifying Their Regulation ......................................4

B. *ANJRPC* Reiterates that the Founding Era Is the Primary Time Period for Historical Analysis ..........................................................................9

C. *ANJRPC* Already Flatly Rejected Defendants' Historical Analogues.....10

1. Founding-Era "Dangerous and/or Unusual Weapons" .................10
2. Founding-Era Gunpowder Storage ..............................................11
3. Nineteenth-Century Bowie Knife Restrictions ..............................12
4. Defendants' Interest Balancing Is (Still) Prohibited......................12
5. *Bruen*'s Contemplated "Nuanced Approach" Does Not Apply Here ...........................................................................................13

POINT II PLAINTIFFS SUFFER IRREPARABLE HARM ............................14

POINT III THE EQUITABLE FACTORS OVERWHELMINGLY FAVOR PLAINTIFFS...................................................................................16

CONCLUSION..........................................................................................17

# TABLE OF AUTHORITIES

***Page***

**U.S. Constitution**

Amendment II ........ *passim*
Amendment XIV ........ 1, 13

**Cases**

*Adams v. Bordeau Metals Se., LLC*
2025 U.S. Dist. LEXIS 153906 (N.D. Ga. May 21, 2025) ........ 15
*Antonyuk v. Bruen*
624 F. Supp. 3d 210 (N.D.N.Y. 2022) ........ 16
*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*
2026 LX 386071 (3d Cir. July 17, 2026) ........ *passim*
*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*
108 F.4th 194 (3d Cir. 2024) ........ 14, 15
*District of Columbia v. Heller*
554 U.S. 570 (2008) ........ *passim*
*Elrod v. Burns*
427 U.S. 347 (1976) ........ 14
*Kim v. Hanlon*
99 F.4th 140 (3d Cir. 2024) ........ 17
*Nken v. Holder*
556 U.S. 418 (2009) ........ 3
*N.Y. State Rifle & Pistol Ass'n v. Bruen*
597 U.S. 1 (2022) ........ *passim*
*Reilly v. City of Harrisburg*
858 F.3d 173 (3d Cir. 2017) ........ 3
*United States v. Hemani*
146 S. Ct. 1677 (2026) ........ 7
*Viramontes v. Cook County*
No. 25-238 (U.S.) ........ 2
*Winter v. Nat. Res. Def. Council, Inc.*
555 U.S. 7 (2008) ........ 3
*Wolford v. Lopez*
686 F. Supp. 3d 1034 (D. Haw. 2023) ........ 16
*Wolford v. Lopez*
146 S. Ct. 2032 (2026) ........ *passim*

**Statutes**

N.J.S.A. § 2C:39-3(f)(1) ........ 1

## INTRODUCTION

This case involves a Second Amendment challenge to New Jersey's ban on the public possession, transportation, and carrying of widely available and commonly owned hollow point self-defense ammunition, which applies to both handgun and long gun (*i.e.*, rifle and shotgun) ammunition, including the component parts thereof. *See* N.J.S.A. § 2C:39-3(f)(1) (the "Challenged Statute"). On March 12, 2026, Plaintiffs filed their Motion for Summary Judgment (ECF # 41), after which Defendants filed their Cross-Motion for Summary Judgment (ECF # 43) on April 9, 2026. Plaintiffs filed their Response (ECF # 44) on May 7, 2026, and Defendants filed their Reply (ECF # 47) on June 6, 2026.

Following the completion of the parties' summary-judgment briefing, the *en banc* Third Circuit issued its opinion in *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 2026 LX 386071 (3d Cir. July 17, 2026) ("*ANJRPC*") which change the landscape of this case.

There, the Third Circuit applied *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), to rule that New Jersey's ban on semiautomatic "assault firearms" and so-called "large capacity ammunition magazines" violates the Second and Fourteenth Amendments. *ANJRPC*, 2026 LX 386071 at *9-10.

Following *ANJRPC*, this Court held a status conference on August 6, 2026 regarding the effect of the Third Circuit's decision on this litigation. *See* ECF # 56. Thereafter,

Following the conference the Court administratively terminated the parties' pending cross-motions and ordered that Defendants file a motion to reopen discovery. *See* ECF # 55. On August 20, 2026, Defendants filed that motion, alternatively seeking a stay of proceedings pending the U.S. Supreme Court's decision in *Viramontes v. Cook County*, No. 25-238, a consolidated Second Amendment challenge to the "assault weapons" bans of two other jurisdictions. *See* ECF # 61. *Viramontes* is currently being briefed, with an oral argument date set for December 2, 2026 and a decision reasonably expected in June or July of 2027. *See* Nos. 25-238, 25-566 (U.S.).[1]

But in the meantime, *ANJRPC* remains binding Circuit precedent, solidifying and confirming that New Jersey's hollow point ban plainly violates the Second Amendment. The practical effect of the *ANJRPC* is that the Plaintiffs are suffering irreparable harm *right now*, and every day the Challenged Statute remains in effect.

*ANJRPC* also makes Defendants' recent request to delay this case's resolution – or perhaps even *start over* – all the more harmful to Plaintiffs' constitutional rights. If Plaintiffs must wait additional time for a ruling through no fault of their own, then

[1] https://www.supremecourt.gov/docket/docketfiles/html/public/25-238.html.

this Court should remedy their harms in the meantime and preliminarily enjoin the Challenged Statute, using *ANJRPC*'s straight application of the *Heller* and *Bruen* decisions as its guide.

## LEGAL STANDARD

To obtain a preliminary injunction, Plaintiffs must "establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Likelihood of success and irreparable harm are the "'most critical factors,'" *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), whereas the equitable factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

After *ANJRPC*, it is clear that New Jersey's hollow point ban violates the Second Amendment. Indeed, virtually every argument Defendants have made in this case has been explicitly rejected by the Third Circuit sitting.

Significantly, *ANJRPC* was not a close call- a 10-5 decision- holding that the Second Amendment protects both "assault firearms" and "large capacity ammunition magazines," and confirming that 1791 is the proper focal point for historical analysis. *ANJRPC*, 2026 LX 386071, at *28.

Not only does *ANJRPC* explicitly foreclose Defendants' repeated attempts to shirk their duty to present a historical tradition justifying the Challenged Statute, but in fact *ANJRPC* also explicitly rejected the historical analogues Defendants presented here. There is no analysis left for this Court to conduct, and this Court should simply apply *ANJRPC* to preliminarily enjoin enforcement of New Jersey's outlier ban on hollow point ammunition.

## POINT I

## PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A. *ANJRPC* Demonstrates Conclusively that (i) Plaintiffs Satisfy *Bruen*'s Plain-Text Inquiry, (ii) the Challenged Statute Is Presumptively Unconstitutional, and (iii) Defendants Bear the Burden to Show a Historical Tradition Justifying Their Regulation

As Plaintiffs previously reported in their Notice of Supplemental Authority (ECF # 49-1), the Supreme Court's recent decision in *Wolford v. Lopez*, 146 S. Ct. 2032 (2026), clarified and reiterated the proper analysis that should occur at *Bruen*'s threshold textual analysis.

Indeed, *Bruen*'s initial inquiry is nothing more than a subject-matter qualifier, and it represents a low bar for Plaintiffs to clear. It is satisfied if the Challenged Statute applies to "the people," if it concerns "any form of 'Arms,'" meaning "implements used for offense or defense," and if the law places "any restrictions on either the 'keep[ing]' … or the 'bearing'" of those implements. *Id.* at 2043, 2041,

2043. *Wolford* thus confirmed Plaintiffs' prior description of this threshold analysis. *Cf.* ECF # 41-11 ("MSJ") at 6.

Further explaining *Bruen*'s threshold analysis in her *Wolford* concurrence, Justice Barrett cautioned that courts may not "smuggle additional limits, drawn from our regulatory tradition, into the plain-text stage of the inquiry." *Wolford*, 146 S. Ct. at 2054 n.1 (Barrett, J., concurring).

The Third Circuit's recent *en banc* opinion in *ANJRPC* provides significant further confirmation that Plaintiffs' view of *Bruen*'s threshold test is correct, and that Defendants' is erroneous.

Not only did the Third Circuit reiterate that "*Bruen*'s first step 'entails three subsidiary questions'" (2026 LX 386071, at *25), but also the court explicitly rejected each one of the "additional limits" that Defendants have sought to "smuggle … into the plain-text stage of the inquiry" in this case.

*First*, Defendants here claimed that "hollow point bullets" are not "Arms" under the Second Amendment. ECF # 43-1 ("XMSJ") at 10. Spuriously attempting to differentiate "firearms and bullets" from the "bows and arrows" discussed in *Heller*, Defendants theorize that arrows are still pointy all by themselves, whereas bullets alone cannot be used "in wrath to cast at or strike another." *Id.* at 11.

But *ANJRPC* explicitly rejected this sort of ridiculous argument, rejecting New Jersey's identical claim that "a large-capacity magazine is an ammunition

container that is harmless when it is not attached to a gun." *ANJRPC*, 2026 LX 386071, at *57.

Indeed, the Third Circuit went further, noting that "[t]he Supreme Court has long recognized that '[t]he possession of arms also implie[s] the possession of ammunition.'" *Id.* at *56; *see also id.* at *18 (explaining that magazines are "Arms" *because* "ammunition is necessary for such a gun to function as intended," thereby strongly implying that ammunition itself is protected). *ANJRPC* thus forecloses Defendants' claim that hollow point ammunition is not an "Arm."

*Second*, Defendants have theorized that New Jersey "allow[s] its residents to possess and carry many other types of ammunition...." XMSJ at 3; *see also id.* at 12 n.12, 28 ("leaving open other avenues of self-defense"). But *ANJRPC* expressly rejected this argument as well.

As the Third Circuit explained, "nowhere in *Heller* or *Bruen*'s textual analyses did the Supreme Court suggest that the availability of alternative equipment changes the definition of an arm under the Second Amendment. … Thus, *Bruen*'s textual step is not the correct place for such an inquiry." *ANJRPC*, 2026 LX 386071, at *59.

*ANJRPC*'s holding on this front is no surprise – the Supreme Court already has rejected similar arguments. *See Heller,* 554 U.S. at 629 ("It is no answer to say … that it is permissible to ban the possession of handguns so long as the possession

of other firearms … is allowed."); *Wolford*, 146 S. Ct. at 2049-50 (rejecting the notion that the Second Amendment permits a ban on carry on certain property open to the public so long as public carry in other places is still allowed).

Defendants' 'other ammo, just not this ammo' argument is no better than Hawaii's 'other places, just not these places' argument, or Washington, DC's 'other firearms, just not these firearms' argument. To the contrary, the Second Amendment presumptively protects "all … bearable arms," presumptively protects "all Americans," and presumptively extends to all keeping and bearing. *Heller*, 554 U.S. at 582, 581; *see also Bruen*, 597 U.S. at 24; *United States v. Hemani*, 146 S. Ct. 1677 (2026).

*Third*, Defendants claimed here that "[t]he Second Amendment's plain text protects 'only' 'arms' that are '"in common use" today for self-defense.'" XMSJ at 9; *see id.* (disputing that hollow points are commonly used for self-defense, despite their ubiquity in virtually every police and self-defense firearm in the nation). But the Third Circuit rejected the notion that common use has any role to play at the "step-one textual analysis." *ANJRPC*, 2026 LX 386071, at *36 ("'common use' appears nowhere in the Second Amendment's text," and "[c]ommon use has no bearing on th[e] definition[]" of Arms), at *38 ("we will address 'common use' at *Bruen*'s second step").

*Fourth*, Defendants have attempted to minimize the impact of their hollow point ban, on the theory that New Jersey bans only carry *outside* the home, as opposed to possession *within* the home. As Defendants theorized, "the need for self-defense 'is most acute' in the home," and the "retreat requirement" and "proportionality standards" do not apply within the home. XMSJ at 23 n.15; *see also id.* at 35 (arguing that "New Jersey's law is tailored" to apply "outside the home" and "for public carry"). But *ANJRPC* rejected this notion as well, citing *Wolford* for the notion that *Bruen*'s subject-matter qualifier is met when "the law restricts either the keeping … or the bearing … of arms." *ANJRPC*, 2026 LX 386071, at *25 (cleaned up); *see also id.* at *47 (noting that, in *Bruen*, "the Court found no analogues that supported 'a tradition of broadly prohibiting' even 'the public *carry* of commonly used firearms for self defense' – a limitation far less stringent than a full ban on possession").

*ANJRPC* has thus rejected – specifically and expressly – each of Defendants' four attempts to "smuggle additional limits … into the plain-text stage of the inquiry." *Wolford*, 146 S. Ct. at 2054 n.1 (Barrett, J., concurring).[2]

As Plaintiffs have explained, the plain-text inquiry here is simple. Plaintiffs are clearly members of "the people." Their handguns and the hollow point

[2] Of course, it is hardly surprising that *ANJRPC*'s holdings overlay so well with this case. Indeed, *ANJRPC* involved some of the same Defendants as here, making the same legal arguments, and offering the same historical analogues.

ammunition they wish to bear with them are clearly "Arms." And Plaintiffs' proposed course of conduct, carrying arms in public for self-defense, clearly constitutes "bear[ing]" arms. Nothing more is needed to clear what *Bruen*'s subject matter qualifier and put Defendants to their burden to show a broad and enduring historical tradition justifying their ammunition ban.

### B. *ANJRPC* Reiterates that the Founding Era Is the Primary Time Period for Historical Analysis

*ANJRPC* also noted that the Supreme Court to date "has not needed to address which historical period" – 1791 or 1868 – "courts should primarily look to when considering the Second Amendment...." *ANJRPC*, 2026 LX 386071, at *27.

Nevertheless, as the Third Circuit explained, "we concluded that we must look to Founding-era laws for analogies." *Id.* at *28. Plaintiffs previously briefed the issue, explaining that this Court must focus on the Founding in conducting its historical analysis. *See* MSJ at 16-17. Defendants did not squarely address the issue, but did not appear to agree, arguing that "[c]ourts have relied on common law to determine the 'public understanding of the right when the Bill of Rights was adopted in 1791,'" and claiming that "cases implicating unprecedented societal concerns or dramatic technological changes" allow courts to look for "a more generalized historical principle." XMSJ at 27, 38 n.21.

Indeed, when it came time to provide historical analogues, Defendants were all over the map. *See id.* at 25-26 ("if English law, Founding-era law, and 19th-

century law all point in the same direction, this Court can consider them all"), at 26 ("Nor is Founding-era *silence* somehow in any conflict with Reconstruction-era *regulation*.").

Thus, Defendants cited English sources from 1383 and 1396, a "1686 East New Jersey law," and purported "laws regulating … dangerous features … into the 20th century." *Id.* at 29. And they cited anti-poison laws from "1675[] Germany and France," to the "Lieber Code of 1863," to the Hague Declaration of 1899. But *ANJRPC* puts the issue to rest. *Id.* at 33-34.

Contrary to the Defendant's position, this Court must look to the Founding era only, and the periods directly surrounding it. The rights of Englishmen in the 14th century, like the late-coming restrictions of Reconstruction – and certainly the irrelevant laws of other countries – have nothing to say about the meaning of the *American* Second Amendment adopted in 1791.

## C. *ANJRPC* Already Rejected Defendants' Historical Analogues

### 1. Founding-Era "Dangerous and/or Unusual Weapons"

Defendants claim a Founding-era historical tradition of regulating the carry of "dangerous and unusual weapons," which they assert justifies restricting hollow points today. XMSJ at 28. But as the Third Circuit explained, "a weapon 'in common use for lawful purposes' cannot be 'dangerous and unusual.'" *ANJRPC*, 2026 LX 386071, at *33. Indeed, *ANJRPC* recounted that, "[i]n *Bruen*, any

argument that … 'handguns … were considered "dangerous and unusual weapons" in the 1690s' could 'provide no justification' for restrictions on the public carry of handguns today, when handguns are 'unquestionably in common use.'" *Id.* at *34. So too here – because hollow points unquestionably are in common use today – they are carried daily by tens of millions of American citizens, police, and military personnel – no historical tradition can justify banning their public carry. *See also id.* at *63 ("Bans on weapons in common use for lawful purposes are unlawful. … So are severe restrictions on weapons in common use for lawful purposes.").

**2. Founding-Era Gunpowder Storage.**

Next, Defendants rely on several "gunpowder laws" dating from the 1600s to 1934 as evidence of a tradition of "restricting particularly dangerous weapons and ammunition" that "pose a public safety threat...." XMSJ at 30, 28. These gunpowder regulations generally "required that gunpowder be stored safely," because "'[t]he depositing of loaded arms in the houses of the town … [wa]s dangerous'" given the technology of the day. *Id.* at 30, 31. But *ANJRPC* rejected the same types of gunpowder analogues used by New Jersey in that case, because "gunpowder laws were enacted as *fire-safety measures*, not to address *firearm violence*." *ANJRPC*, 2026 LX 386071, at *49 (emphases added).

The Third Circuit likewise rejected gunpowder regulations in the "large capacity magazine" context, for the same reasons. *See id.* at *62-63. All told,

"gunpowder aggregation laws that New Jersey points to are not apt comparators because the 'why' is not analogous." *Id.* at *49.

### 3. Nineteenth-Century Bowie Knife Restrictions

Defendants also rely on several Bowie knife restrictions. XMSJ at 32-33. But *ANJRPC* flatly rejected those restrictions too, finding them to be "too late in time, and [that] none enacted an outright ban on a class of weapons in common use for lawful purposes." *ANJRPC*, 2026 LX 386071, at *50. Moreover, the Bowie knife restrictions primarily regulated their *manner* of public carry – some "prohibited the concealed carry of Bowie knives, and some prohibited open carry" – but almost none "banned the possession of Bowie knives" in public "outright." *Id.* at *51. Finally, these regulations are "an inapt analogue because they did not target a class of weapons in common use for lawful purposes." *Id.* at *52. This Court should reject Defendants' Bowie knife restrictions. If they were inapplicable and irrelevant in *ANJRPC*, they are equally inapplicable and irrelevant here.

### 4. Defendants' Interest Balancing Is (Still) Prohibited

Defendants next claim that hollow point ammunition is "disproportionate for self-defense." XMSJ at 35. But this is prohibited interest balancing, plain and simple. To engage in such "means-end scrutiny" would "miss[] the mark." *ANJRPC*, 2026 LX 386071, at *21. Defendants' opinion as to the usefulness or

proportionality of what Americans choose for self-defense is irrelevant to the textual and historical inquiry this Court must conduct.

### 5. *Bruen*'s Contemplated "Nuanced Approach" Does Not Apply Here

Finally, Defendants argue that a "nuanced approach" to historical analysis is required because hollow point ammunition "did not exist at the time the States ratified the Second and Fourteenth Amendments...." XMSJ at 27, 37. Of course, New Jersey made similar arguments in *ANJRPC*, which the Third Circuit roundly rejected. *See ANJRPC*, 2026 LX 386071, at *53-54 ("We are not persuaded. … [T]his case implicates the societal concern of people 'misusing weapons to harm or menace others.' … That concern 'has persisted since the 18th century,' and 'the Founders themselves could have adopted [a similar law] to confront that problem,' but they did not."). Thus, "we need not employ a 'nuanced approach'" here, because "[b]ans on weapons in common use for lawful purposes are unlawful. … So are severe restrictions on weapons in common use for lawful purposes. … However much nuance we might employ, we could not overcome the dearth of relevantly similar Founding-era restrictions." *Id.* at *63. The American people's overwhelming preference for hollow point ammunition is dispositive.

## POINT II

## PLAINTIFFS SUFFER IRREPARABLE HARM

*ANJRPC* confirms that New Jersey's hollow point ban violates the Second Amendment. Full stop. This means the Challenged Statute violates Plaintiffs' constitutional rights, and such harm is *per se* irreparable.

Indeed, the "loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (First Amendment); *see also Bruen*, 597 U.S. at 70 ("The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.").

To the extent that the Third Circuit has suggested otherwise, *see Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203-04 (3d Cir. 2024), this case is distinguishable. There, the plaintiffs did not "offer any evidence that Delaware had tried to enforce the[] laws" being challenged, and so a likelihood of success on the merits did not necessarily guarantee irreparable harm. *Id.* at 198. And the plaintiffs in that case lacked irreparable harm because they had alleged only that they "'wish to obtain these firearms and magazines,'" not that anything bad would happen to them if they did not. *Id*. at 205. In stark contrast

here, Plaintiffs explained that Defendants actively enforce the Challenged Statute. *See* MSJ at 11-12.

And Plaintiffs have refrained from engaging in conduct that the Second Amendment protects, for fear of arrest and prosecution. As Plaintiff Schoch explained, this keeps her from carrying the best available ammunition in her firearm to defend her own life. Compl. ¶¶80, 83 (relegated to carrying "subpar" and less "effective" ammunition); *see also* Declaration of Heidi Bergmann-Schoch ¶10 ("If New Jersey did not ban me from carrying hollow point ammunition outside my home, I would.... But because hollow points are banned, I have refrained from violating the law and do not carry or own them.").

In short, Plaintiffs here have alleged the element missing in *Del. State Sportsmen's Ass'n* – the harm that will befall them if the Challenged Statute is allowed to continue in force.

Nor is any "delay" in seeking preliminary relief at this stage dispositive. *See, e.g.*, *Adams v. Bordeau Metals Se., LLC*, 2025 U.S. Dist. LEXIS 153906, at *12 (N.D. Ga. May 21, 2025)("a delay in seeking a preliminary injunction is not dispositive as to the irreparable injury factor as a whole, and this Court may consider an explanation for any such delay").

Here, Plaintiffs moved for preliminary relief shortly after issuance of the Third Circuit's *ANJRPC* decision, which has dispositively resolved the merits of

Plaintiffs' claims in their favor and solidified the fact that they are suffering irreparable harm. Defendants' recent motion to stay the case – rather than vindicating Plaintiffs' rights – also militates in favor of granting a preliminary injunction at this juncture.

## POINT III

## THE EQUITABLE FACTORS OVERWHELMINGLY FAVOR PLAINTIFFS

Finally, the balance-of-equities and public-interest factors favor Plaintiffs. Defendants face no harm should Plaintiffs exercise their Second Amendment rights to publicly carry commonly used self-defense ammunition.

Indeed, the only people who legally *would* be able to carry this ammunition would be those already licensed to carry firearms in public by the State of New Jersey. These licensees are quintessentially "law-abiding" (*Wolford*, 146 S. Ct. at 2045),[3] and so the only realistic threat of harm license holders may pose is against criminal attackers in self-defense (whose wellbeing it is not in the public's interest to protect, *see Antonyuk v. Bruen*, 624 F. Supp. 3d 210, 247-50 (N.D.N.Y. 2022)). Moreover, the use of hollow point ammunition in self-defense is inherently *safer* to innocent, uninvolved bystanders, because hollow points do "not over penetrate as

[3] *See also Wolford v. Lopez*, 686 F. Supp. 3d 1034, 1075 (D. Haw. 2023) ("According to the GOA Amicus Brief, the vast majority of individuals in the United States with concealed carry permits are law-abiding.").

compared with full metal jacket ammunition." MSJ at 8-9. Under the appropriate analysis, having concealed carriers armed with hollow point ammunition is in fact in the public interest.

Finally, "remedying an unconstitutional practice is always in the public interest." *Kim v. Hanlon*, 99 F.4th 140, 160 (3d Cir. 2024).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted and the Challenged Statute should be preliminarily enjoined following *ANJRPC*.

Dated: Lake Success, New York
September 8, 2026

HARFENIST KRAUT & PERLSTEIN, LLP

By: *Steven J. Harfenist*
Steven J. Harfenist
*Attorneys for Plaintiffs*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: SHarfenist@hkplaw.com

Oliver M. Krawczyk*
Ambler Law Offices, LLC
115 South Hanover Street, Suite 100
Carlisle, Pennsylvania 17013
T: (717) 525-5822
E: oliver@amblerlawoffices.com
**Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I, Steven J. Harfenist, hereby certify that I have filed a true and correct copy of the foregoing document or pleading with this Court's CM/ECF system, which generated a Notice of Electronic Filing, and provided a copy of the above to all counsel of record.

Dated: September 8, 2026

*Steven J. Harfenist*
STEVEN J. HARFENIST