**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

HEIDI BERGMANN-SCHOCH, COALITION OF NEW JERSEY FIREARM OWNERS, GUN OWNERS OF AMERICA, INC, and GUN OWNERS FOUNDATION,

Plaintiffs,

v.

JENNIFER DAVENPORT, in her official capacity as Attorney General of New Jersey, JEANNE HENGEMUHLE, in her official capacity as Acting Superintendent of the New Jersey Division of State Police, and LACHIA L. BRADSHAW, in her official capacity as the Burlington County Prosecutor,

Defendants.

Hon. Christine P. O'Hearn, U.S.D.J.
Hon. Matthew J. Skahill, U.S.M.J.

Docket No.: 1:25-cv-997-CPO-MJS

---

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO REOPEN DISCOVERY**

---

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 116
Trenton, New Jersey 08625
(609) 696-5366

Jonathan.Mangel@law.njoag.gov
*Attorney for Defendants*

David E. Leit
*Assistant Attorney General*
Of Counsel

Sadia Ahsanuddin (NJ Bar No. 298432019)
Jonathan B. Mangel (NJ Bar No. 281382018)
Amanda I. Morejón (NJ Bar No. 405942022)
Andrew H. Yang (NJ Bar No. 066382013)
*Deputy Attorneys General*
On The Brief

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

PRELMINARY STATEMENT ..........................................................................1

I. Defendants Request a Stay So That This Court May Apply Appropriate Legal Standards. ...............................................................................................3

A. ANJRPC substantially reshapes the framework governing Second Amendment challenges and departs from other circuits. ....................................4

B. It makes little sense to litigate this case when Viramontes will address and, thus, resolve, the methodological questions that ANJRPC created......................9

II. If a Stay is Not Entered, Re-opening Discovery is Appropriate Because there Have Been Significant Intervening Changes in the Law. ..............................12

CONCLUSION ..............................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Ass'n of N.J. Rifle and Pistol Clubs Inc. v. Attorney General New Jersey*, No. 19-3142, 2022 WL 22860232 (3d Cir. Aug. 25, 2022) ................................11

*Association of New Jersey Rifle & Pistol Clubs v. Attorney General of New Jersey*, 183 F.3d 211 (3d Cir. 2026)........................................................................ passim

*Bechtel Corp. v. Loc. 215, Laborers' Int'l Union*, 544 F.2d 1207 (3d Cir. 1976)........................................................................ 2, 4, 9

*Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023).............................. 4, 5, 7

*Bianchi v. Brown*, 111 F.4th 438 (4th Cir. 2024) ............................................ 4, 5, 8

*Capen v. Campbell*, 134 F.4th 660 (1st Cir. 2025)..................................................4

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024)..........................................................................10

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..........................................5, 7

*Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553 (D.N.J. 2022) ............................12

*Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068 (3d Cir. 1983) .......................10

*Gov't Emps. Ins. Co. v. Active Med. Care, P.C.*, No. 2:24-CV-10909, 2026 WL 74193 (D.N.J. Jan. 9, 2026) ............................................................................10

*Homa v. Am. Express Co.*, No. 06–2985, 2010 WL 4116481 (D.N.J. Oct. 18, 2010).........................................................10

*J.G. v. C.M.*, No. 11-2887, 2014 WL 1652793 (D.N.J. Apr. 23, 2014).........................................................................................13

*Marlowe Pat. Holdings LLC v. Dice Elecs, LLC*, 293 F.R.D. 688 (D.N.J. 2013).........................................................................12

*Nat'l Ass'n for Gun Rts v. Lamont*, 153 F.4th 213 (2d Cir. 2025), *cert. granted sub nom. Grant v. Higgins*, No. 25-566, --- S. Ct. ---, 2026 WL 1871312 (U.S. June 30, 2026) (Mem) ..........................................................................................1, 4

*New York Rifle and Pistol Association, Inc. v .Bruen*, 597 U.S. 1 (2022).. 4, 5, 8, 14

*Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38 (1st Cir. 2024)..................6

*PennEast Pipeline Co., LLC v. Permanent Easement for 0.21 Acres*, No. 19-1097, 2020 WL 14027150 (D.N.J. Mar. 2, 2020) ...................................10

*United States v. Rahimi*, 602 U.S. 680 (2024).......................................................1, 4

*Viramontes v. Cook Cnty*, No. 24-1437, 2025 WL 1553896 (7th Cir. June 2, 2025), *cert. granted sub nom. Viramontes v. Cook Cnty., Illinois*, No. 25-238, --- S. Ct. ---, 2026 WL 1871322 (U.S. June 30, 2026) (Mem) ...........................................1, 3

*Visa Int'l Serv. Ass'n v. JSL Corp.*, No. 2:01-CV-0294, 2006 WL 3248394 (D. Nev. Nov. 7, 2006) .........................................................13

*Wolford v. Lopez* 146 S. Ct. 2032 (2026) .............................................................7, 8

**PRELMINARY STATEMENT**

Defendants request that this court stay these proceedings until the U.S. Supreme Court issues a decision that will materially inform the correct legal standards applicable to this case. The Supreme Court's forthcoming *Viramontes* decision will of course address the circuit split on the specific question of whether the Second Amendment protects possession of AR-15s. *See Viramontes v. Cook Cnty*, No. 24-1437, 2025 WL 1553896 (7th Cir. June 2, 2025), *cert. granted sub nom. Viramontes v. Cook Cnty., Illinois*, No. 25-238, --- S. Ct. ---, 2026 WL 1871322 (U.S. June 30, 2026) (Mem); *Nat'l Ass'n for Gun Rts v. Lamont*, 153 F.4th 213 (2d Cir. 2025), *cert. granted sub nom. Grant v. Higgins*, No. 25-566, --- S. Ct. ---, 2026 WL 1871312 (U.S. June 30, 2026) (Mem). But it will also likely address broader questions about the standards and methodology lower courts must apply in cases governing what firearms-related items receive constitutional protection. In upholding important federal gun safety legislation, the Supreme Court previously acknowledged that "some courts have misunderstood the methodology of our recent Second Amendment cases" and recognized the need to provide greater clarity about "the appropriate analysis." *United States v. Rahimi*, 602 U.S. 680, 691–92 (2024). So too here. The Third Circuit's *en banc* decision in *Association of New Jersey Rifle & Pistol Clubs v. Attorney General of New Jersey*, 183 F.3d 211 (3d Cir. 2026) ("*ANJRPC*") has created a circuit split in Second Amendment jurisprudence

demonstrating that again, "some courts have misunderstood the methodology." *Rahimi*, 602 U.S. at 691. The Supreme Court may agree with the methodology used in *ANJRPC.* The Supreme Court may agree with the methodology used in other circuits. Or the Supreme Court may chart a third path. In any event, it is in the interest of judicial economy to stay any dispositive motion practice in this case until the Supreme Court resolves those critical open questions, which will be resolved soon.

Absent a stay, this Court runs the risk of deciding dueling summary judgment motions addressing a Third Circuit case—*ANJRPC*—that may or may not remain good law after *Viramontes*. *ANJRPC*'s methodology is squarely before the Supreme Court, and thus subject to a wide range of outcomes. The uncertainty of possible outcomes warrants judicial caution here. *See Bechtel Corp. v. Loc. 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976) ("[A] court may hold one lawsuit in abeyance to abide the outcome of another which <u>may substantially affect it</u> or be dispositive of the issues") (emphasis added). Judicial economy counsels staying this case pending *Viramontes*, or at least allowing for renewed discovery to address arguments that *ANJRPC*'s updated methodology now seems to require.

## ARGUMENT

### I. Defendants Request a Stay So That This Court May Apply Appropriate Legal Standards.

Plaintiffs argue that "it is not necessary to await *Viramontes* when *ANJRPC* provides this Court all it needs to grant Plaintiffs' motion for summary judgment." ECF No. 62 at 6 ("Opp."). But as the Court noted at the conference on August 6, *ANJRPC* is a significant change in the state of the law in the Third Circuit.[1] So, while *ANJRPC* substantially reshapes the standards and methodologies governing Second Amendment challenges and departs from other circuits, *Viramontes* is likely to

[1] As noted, since the Third Circuit published its decision in *ANJRPC*, the Attorney General sought, and the Third Circuit granted, an application to stay the mandate in *ANJRPC* pending the Attorney General's forthcoming petition for certiorari to the U.S. Supreme Court. *See* Order on Motion to Stay Mandate Pursuant to Fed. R. App. 41(d)(1), *ANJRPC*, No. 24-2415(3d Cir. Aug. 4, 2026), ECF No. 129. The Supreme Court is likely to grant the Attorney General's petition for certiorari review in *ANJRPC* because it has already granted certiorari this coming Term for two cases dealing with substantively similar assault weapons statutes. *See Viramontes v. Cook Cnty*, No. 24-1437, 2025 WL 1553896 (7th Cir. June 2, 2025), *cert. granted sub nom. Viramontes v. Cook Cnty., Illinois*, No. 25-238, 2026 WL 1871322553896 --- S. Ct. ---, 2026 WL 1871322 (U.S. June 30, 2026) (Mem); *Nat'l Ass'n for Gun Rts v. Lamont*, 153 F.4th 213 (2d Cir. 2025), *cert. granted sub nom. Grant v. Higgins*, No. 25-566, --- S. Ct. ---, 2026 WL 1871312 (U.S. June 30, 2026) (Mem). The Supreme Court granting the Attorney General's petition is also likely because *ANJRPC* creates a significant circuit split on the constitutionality of assault weapons statutes and the methodology used in Second Amendment weapons-possession cases.

address and resolve, or at the very least "substantially affect," the methodological questions that *ANJRPC* created. *See Bechtel Corp.*, 544 F.2d at 1215.[2]

*A. ANJRPC substantially reshapes the framework governing Second Amendment challenges and departs from other circuits.*

*ANJRPC* represents a significant shift in how courts in this Circuit apply the Supreme Court's test created in *New York Rifle and Pistol Association, Inc. v .Bruen*, 597 U.S. 1 (2022), in cases that involve challenges to regulations on the possession of certain types of weapons or weapons accessories. *ANJRPC* announced new standards and methodologies at both steps of the *Bruen* test that create a split from how all other circuits have applied *Bruen* to laws regulating possession of weapons. *Contrast ANJRPC*, 183 F.4th 211 *with Capen v. Campbell*, 134 F.4th 660 (1st Cir. 2025); *Lamont*, 153 F.4th 213; *Bianchi v. Brown*, 111 F.4th 438 (4th Cir. 2024); *Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023). It is no secret that Defendants disagree with the *ANJRPC* decision: that is why the Attorney General

[2] Plaintiffs argue that because *Viramontes* is about AR-15s and other assault weapons, it will not "be dispositive of the issues" in this case about hollow point bullets. *See* Opp. at 7. But that is not the standard for a discretionary stay. A court may hold one lawsuit in abeyance, in its discretion, "'to abide the outcome of another which may *substantially affect* it or be dispositive of the issues.'" *See* ECF No. 61-2 at 5 ("Br.") (quoting *Bechtel Corp.*, 544 F.2d at 1215 (emphasis added)). Plaintiffs' citation to page 5 of Defendants' brief omits that part of the standard applicable to this motion. As Defendants argue *infra*, the Supreme Court's application of *New York Rifle and Pistol Ass'n, Inc. v .Bruen*, 597 U.S. 1 (2022) and *United States v. Rahimi*, 602 U.S. 680 (2024) in *Viramontes*, will "substantially affect" how this Court must apply *Bruen* and *Rahimi* to hollow point bullets.

sought a stay of the mandate and will be filing a petition for certiorari. But Defendants do not seek a stay here merely because, as Plaintiff puts it, Defendants have a "gripe" with *ANJRPC* or the Supreme Court's Second Amendment jurisprudence generally. See Opp. at 3 n. 1, and 12. In fact, Plaintiffs' arguments highlight the extent of the split the Supreme Court is poised to resolve.

For example, most circuits have followed the Supreme Court's holding in *District of Columbia v. Heller*, 554 U.S. 570, 509 (2008)—which was reiterated in *Bruen*—that self-defense is the "central component" of the Second Amendment right. *See also Heller*, 554 U.S. at 628 ("[T]he inherent right of self-defense has been central to the Second Amendment right"); *Bruen*, 597 U.S. at 29 (same). Ever since, other circuits based their Second Amendment analyses in weapons cases on whether the weapon at issue is "in common use today for self-defense." *See e.g. Bianchi*, 111 F.4th at 450 ("Arms typically used by average citizens for self-defense are generally within the ambit of the Second Amendment"); *Bevis*, 85 F.4th at 1195 ("We find substantial support for the proposition that Arms protected by the Second Amendment do not include weapons that may be reserved for military use"). But *ANJRPC* deviates from that approach, holding that self-defense is "one lawful purpose relevant to the common-use inquiry, but it is not the only one." 183 F.4th at 234. So *ANJRPC* has seemingly broadened the lens, suggesting that the Second Amendment also protects weapons used for "target shooting, hunting, and pest

control," *id.* at 241, even if the weapon is "disproportionately used in some crimes," because "those may still represent a small fraction of those weapons' overwhelmingly lawful use." *Id.* at 241, n. 29.

In doing so, *ANJRPC* broke from other circuits on what it means for a weapon to be "in common use." *ANJRPC* embraced an argument explicitly rejected by every other circuit to consider it: that sheer numbers of a type of weapon in circulation amongst the public can put that weapon "in common use for lawful purposes." *Contrast ANJRPC*, 183 F.4th at 241 (concluding AR-15s are in common use for lawful purposes because "there are around 24 million AR-15s and similar sports weapons in circulation"), *with Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 51 (1st Cir. 2024) ("[The Supreme Court] has not suggested that the constitutionality of arms regulations is to be determined based on the ownership rate of the weapons at issue, regardless of its usefulness for self-defense"), *and Bianchi*, 111 F.4th at 460 ("Such a trivial counting exercise makes a mockery of the careful interest balancing between individual self-defense and societal order that our legal tradition has carved into the heart of the right to keep and bear arms").

As another example, Plaintiffs disagree with Defendants that *ANJRPC* "stretches the Second Amendment's plain text's provisions" by redefining what constitutes a protected "Arm." *See* Opp. at 3 n. 1. Plaintiffs argue that *ANJRPC*'s definition of an Arm as "any 'weapon customarily used for offense or defensive

purposes,'" is quoted from the Supreme Court's recent decision in *Wolford v. Lopez* (146 S. Ct. 2032 (2026)), *see* Opp. at 3 n. 1, but ignore that *ANJRPC* went on to hold that "all firearms constitute[] Arms" within the meaning of the Second Amendment. *See* ECF No. 61-2 at 9 ("Br.") (quoting *ANJRPC*, 183 F.4th at 239). That definition came from one historical thesaurus cited in *Heller*, 554 U.S. at 581-82, a definition that has *not* been adopted by any other Circuit as the controlling definition of "Arms" in Second Amendment weapons possession cases.[3] *See e.g.*, *Bevis*, 85 F.4th at 1192 (defining Arms under the Second Amendment as "weapons in common use for self-defense"). Thus, *ANJRPC* conflicts with other circuits and the Supreme Court's own repeated pronouncements that the Second Amendment was not a right "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *Heller*, 554 U.S. at 626. *Contrast ANJRPC*, 184 F.4th at 239 ("Because semi-

[3] In the context of *Heller*, the Supreme Court quoted that definition to *contrast* Framing-era definitions of "Arms." 554 U.S. at 581–82. The Supreme Court explained in *Heller* that, at the Framing, the term "Arms" "was applied, then as now, to weapons that were not specifically designed for military use and were not employed in a military capacity." *Id.* at 581. The *Heller* Court then went on to cite the Trusler thesaurus, which it characterized as "limit[ing] 'arms' (as opposed to 'weapons') to 'instruments of offence *generally* made use of in war,'" and further noted that the Trusler thesaurus "stated that all firearms constituted 'arms.'" *Id.* at 581–82 (quoting 1 J. Trusler, The Distinction Between Words Esteemed Synonymous in the English Language 37 (3d ed. 1794)). No court is better situated to clarify what the Supreme Court meant in *Heller* when it cited the Trusler thesaurus (or what definitions and standards apply at either step of the *Bruen* test) than the Supreme Court itself. A stay here would merely preserve the status quo until the Supreme Court resolves the issue, just as it did in *Rahimi*.

automatic rifles are firearms, they are 'Arms' within the meaning of the Second Amendment") *with Wolford*, 146 S. Ct. at 2042 ("*Heller* explained—and later cases have reiterated—that the Second Amendment… right, as understood at the time, was not an 'unlimited' right 'to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose") (citation modified). Again, Plaintiffs no doubt disagree.

Finally, *ANJRPC* not only lowered the bar for those analyses in ways that isolate this circuit from all others, but also disrupted the prevailing Circuit-level interpretation of *Bruen*'s two-step test by shifting entire analyses from step one to step two. Prior to *ANJRPC*, courts in this circuit (and every other) followed the Supreme Court's framing of the first step of the *Bruen* test: that the Second Amendment protects weapons "in common use today for self-defense." *Bruen*, 597 U.S. at 32 (citation modified). This typically involved an assessment of a subject weapons' features and whether it was "in common use for self-defense." *See, e.g.*, *Bianchi*, 111 F.4th at 459–61 (analyzing the AR-15's qualitative features at *Bruen* step one). *ANJRPC* instead allocated assessment of a weapon's qualitative features and uses to the second step of the *Bruen* analysis, if done at all.

The point of this motion is not whether Plaintiff or Defendants are correctly characterizing *ANJRPC.* Defendants do not ask this Court to "reject binding circuit precedent," Opp. at 1, nor suggest that this Court is "free to consider and resolve

circuit splits," *see id.* at 2. Defendants request only that this Court order "that all proceedings and deadlines in this action are STAYED until further order of this Court," ECF No. 61-3, because the Supreme Court will soon resolve these methodological issues. Defendants' request for a stay does not "[m]inimize" *ANJRPC*, Opp. at 1; it recognizes *ANJRPC* is Circuit precedent in a complex jurisprudential landscape for which the Supreme Court is about to provide further clarity this Term.

*B. It makes little sense to litigate this case when Viramontes will address and, thus, resolve, the methodological questions that ANJRPC created.*

The circuit split created by *ANJRPC* will be resolved by *Viramontes*, which is highly likely to provide clarity concerning (a) what qualifies as "Arms" protected by the Second Amendment, (b) how to understand the meaning of "in common use today for self-defense," and (c) the historical inquiry required in weapons-related challenges. Each of these methodological issues are central to the questions before this Court. Judicial economy and efficiency counsel in favor of staying this case pending a decision in *Viramontes*. *See Bechtel Corp.*, 544 F.2d at 1215.

A decision in that case is not far off. Oral argument in *Viramontes* has already been scheduled for December 2, 2026. *Supreme Court of the United States October Term 2026*, Sup. Ct. of the U.S., https://www.supremecourt.gov/oral_arguments/argument_calendars/MonthlyArgumentCalDecember2026.pdf (last visited Sept. 14, 2026). And the Supreme Court

will issue a decision no later than June 2027. So, a stay of this case pending *Viramontes* would not "force[]" plaintiffs "to wait for an indefinite" time before their case can be heard. *See Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983). Rather, in no more than nine months, the Supreme Court will speak on what methodology governs weapons-related challenges. That makes a stay particularly appropriate, which is why courts have routinely stayed cases in similar circumstances.[4] *See, e.g.*, *Gov't Emps. Ins. Co. v. Active Med. Care, P.C.*, No. 2:24-CV-10909, 2026 WL 74193, at *3 (D.N.J. Jan. 9, 2026); *PennEast Pipeline Co., LLC v. Permanent Easement for 0.21 Acres*, No. 19-1097, 2020 WL 14027150, at *1 (D.N.J. Mar. 2, 2020); *Homa v. Am. Express Co.*, No. 06–2985, 2010 WL 4116481, at *9 (D.N.J. Oct. 18, 2010).

Litigating this case in the meantime will only cause inefficiencies for the parties and the Court. Everyone agrees that, at the very least, supplemental briefing is needed in light of *ANJRPC*. *See* ECF No. 52 (setting status conference at which

---

[4] Plaintiffs cite to *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075–76 (3d Cir. 1983) in support of their argument that Defendants have not satisfied the requirements for a stay. Opp. at 8. But, unlike the plaintiffs in *Gold*, Plaintiffs here would not be "clear[ly] damage[d]" by a stay. *Gold*, 723 F.2d at 1076. As Defendants will explain more fully in response to Plaintiffs' preliminary-injunction motion, Plaintiffs have complied with the challenged law for years, belying any contention of urgent harm. *See Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 206 (3d Cir. 2024). And, of course, Plaintiffs can continue to carry lawful firearms with traditional non-expanding bullets and may continue to possess hollow point bullets in their homes.

the Court asked the parties on proposed next steps in light of *ANJRPC*, including whether to re-brief summary judgment motions or submit supplemental briefing only). But Defendants think more is needed: if the case is not stayed, the Court should reopen expert discovery to allow Defendants to obtain additional expert support for the historical inquiry that *ANJRPC* now seems to require. *See infra* Section II. After that, the parties would file cross motions for summary judgment, addressing the new evidence under the *ANJRPC* framework. All of that briefing (and discovery) may be rendered obsolete in mere months when the Supreme Court decides *Viramontes*. At the very least, the parties will need to file supplemental briefs addressing *Viramontes*. And it is possible that *Viramontes* sets forth a methodology that (again) requires reopening expert discovery. So even if the Court does not decide this case before *Viramontes*, it will be burdened with serial briefs every few months addressing evolving legal standards based on discovery that may need to be redone.

Those issues are not ameliorated by rushing to judgment. If the Court decides this case before *Viramontes*—either after supplemental briefing or after more discovery and summary judgment motions—any appeal from that decision would come shortly before the Supreme Court issues its clarifying decision in *Viramontes*. And the Third Circuit would likely remand any appeal in light of *Viramontes* anyway. *See e.g., Ass'n of N.J. Rifle and Pistol Clubs Inc. v. Attorney General New Jersey*, No. 19-3142, 2022 WL 22860232, at *1 (3d Cir. Aug. 25, 2022) (remanding

to the district court just two months after the Supreme Court decided *Bruen*). So there will likely be additional proceedings in this Court after *Viramontes* regardless.

In short, the Third Circuit has created a circuit split on Second Amendment methodology that will likely be resolved by the Supreme Court's decision in *Viramontes*. Without a stay, the parties will spend time and resources litigating issues that will likely return to this Court—either for supplemental briefing or on remand from the Third Circuit—once *Viramontes* is decided. That approach makes little sense.

## II. If a Stay is Not Entered, Re-opening Discovery is Appropriate Because there Have Been Significant Intervening Changes in the Law.

In opposing Defendant's motion to reopen discovery, Plaintiffs erroneously claim that Defendants seek a "second bite at the apple." (Opp. at 9). To the contrary, if the case is not stayed, the Third Circuit's decision in *ANJRPC* requires new discovery to address the new ways *ANJRPC* interpreted and applied the *Bruen* test. 183 F.4th 211. Simply briefing the applicability of *ANJRPC* to this matter cannot substitute for the necessary evidence expert witnesses would provide.

Federal Rule of Civil Procedure 16(b)(4) permits a court to reopen discovery for "good cause." "Good cause" exists if the moving party has shown that "despite its diligence, it could not reasonably have met the scheduling order deadline." *See Marlowe Pat. Holdings LLC v. Dice Elecs., LLC*, 293 F.R.D. 688, 701 (D.N.J. 2013); *see also Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553, 558 (D.N.J. 2022). "Good

cause" exists here because Defendants have shown the following four factors weigh in their favor: "(1) the good faith and diligence of the moving party; (2) the importance of the evidence; (3) the logistical burdens and benefits of re-opening discovery; and (4) prejudice to the non-moving party." *J.G. v. C.M.*, No. 11-2887, 2014 WL 1652793, at *2 (D.N.J. Apr. 23, 2014). Good cause to reopen discovery exists in situations like this, where "intervening change in the law … modified the standards" after close of discovery. *See Visa Int'l Serv. Ass'n v. JSL Corp.*, No. 2:01-CV-0294, 2006 WL 3248394, at *1 (D. Nev. Nov. 7, 2006) (holding it "necessary to reopen discovery" to account for "intervening change in the law" where "such additional discovery may be helpful to the Court"). To that end, if the Court does not stay the case, it should reopen expert discovery to allow Defendants to submit additional evidence to help the Court assess New Jersey's hollow point bullet carry law in light of the new standards set forth in *ANJRPC*.

As noted above, *ANJRPC* altered the prevailing interpretations and applications of the *Bruen* framework in this Circuit. 183 F.4th at 246–49. *ANJRPC* both foreclosed certain modes of analysis and argument, as well as made other analyses necessary which were not before. For example, by boiling the question of "common use" down to sheer circulation numbers, rather than actual use or usefulness, as other Circuits have, *ANJRPC* now requires thorough presentation of

weapon or weapons-related circulation numbers to determine "common use" but forecloses evidence about how those weapons are actually used. *Id.* at 249–50.

As discussed more fully in their opening brief, Defendants should be permitted to present evidence from (1) a statistical or economics expert about the circulation of hollow point bullets amongst civilians in America, using publicly available industry and sales information; (2) a historian showing the "unprecedented societal concerns," *Bruen*, 597 U.S. at 27, hollow point bullets present, compared to non-expanding bullets in the context of civilian carry of semi-automatic weapons; (3) a linguistics expert who can explain the original public meaning of the word "Arms" as used in the Second Amendment and whether hollow point bullets comport with that meaning; and (4) a firearms expert explaining the mechanics of modern hollow point bullets, as well as non-expanding bullets, and other types of non-standard ammunition.

To allow Defendants to address that new governing standard, Defendants request that this Court reopen expert discovery for an additional 120 days.

## CONCLUSION

This Court should stay proceedings in this case pending the United States Supreme Court's decision this coming Term in *Viramontes* or, in the alternative, reopen expert discovery for the narrow purposes outlined above.

Dated: September 14, 2026

Respectfully submitted,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By: */s/ Jonathan B. Mangel*
Jonathan B. Mangel
Deputy Attorney General

**CERTIFICATE OF SERVICE**

I, Jonathan B. Mangel, hereby certify that I have filed a true and correct copy of the foregoing documents with this Court's CM/ECF system, which generated a Notice of Electronic Filing, and provided a copy of the above to all counsel of record.

Dated: September 14, 2026

*/s/ Jonathan B. Mangel*
Jonahtan B. Mangel
Deputy Attorney General