Steven J. Harfenist
Harfenist Kraut & Perlstein, LLP
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
E: sharfenist@hkplaw.com
Attorneys for Plaintiffs

Oliver M. Krawczyk*
Ambler Law Offices, LLC
115 South Hanover Street, Suite 100
Carlisle, Pennsylvania 17013
T: (717) 525-5822
E: oliver@amblerlawoffices.com
PA Bar No. 334423
*Admitted Pro Hac Vice

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------------X

HEIDI BERGMANN-SCHOCH, COALITION OF NEW JERSEY FIREARM OWNERS, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION,

Plaintiffs,

**Civil Action No.: 25-CV-997(CPO)(MJS)**

-against-

JENNIFER DAVENPORT, in her Official Capacity as the Attorney General of New Jersey, JEANNE HENGEMUHLE, in her Official Capacity as the Acting Superintendent of the New Jersey State Police, and LACHIA BRADSHAW, in her Official Capacity as the Burlington County Prosecutor,

Defendants.

-------------------------------------------------------------------X

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

***Page***

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 3

I. PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM .......... 3

II. PLAINTIFFS ARE HIGHLY LIKELY TO SUCCEED ON THE MERITS .......... 10

III. THE EQUITIES FAVOR PLAINTIFFS .......... 12

IV. DEFENDANTS' RESPONSE HAS UNDERMINED THEIR MOTION TO STAY THIS CASE .......... 14

CONCLUSION .......... 14

## TABLE OF AUTHORITIES

**U.S. Constitution**

Amendment II .................... *passim*

**Statutes**

N.J.S.A. § 2C:58-4(d)(1).................... 13

Pennsylvania Uniform Firearms Act of 1995 .................... 3

**Cases**

*ACLU v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003).................... 12

*Ams. for Prosperity Found. v. Albence*, 2026 U.S. App. LEXIS 26711 (3d Cir. Aug. 31, 2026).................... 3

*ANJRPC, Inc. v. Att'y Gen. N.J.*, 183 F.4th 211 (3d Cir. 2026).................... *passim*

*ANJRPC, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106 (3d Cir. 2018).................... 8

*Barnett v. Raoul*, 180 F.4th 1035 (7th Cir. 2026).................... 8

*Constructors Ass'n of W. Pa. v. Kreps*, 573 F.2d 811 (3d Cir. 1978).................... 10

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024).................... 10

*District of Columbia v. Heller*, 554 U.S. 570 (2008).................... 7, 9

*Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021).................... 7

*Kalshiex, LLC v. Flaherty*, 172 F.4th 220 (3d Cir. 2026).................... 10

*Khalil v. Trump*, 786 F. Supp. 3d 871 (D.N.J. 2025).................... 12

*Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004).................... 4

*Lara v. Comm'r Pa. State Police*, 125 F.4th 428 (3d Cir. 2024).................... 3, 4

*LCN Enters. v. City of Asbury Park*, 197 F. Supp. 2d 141 (D.N.J. 2002).................... 12

*Marxe v. Jackson*, 833 F.2d 1121 (3d Cir. 1987).................... 9, 10

*McDonald v. City of Chicago*, 561 U.S. 742 (2010).................... 8

*Mills v. District of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009).................... 6

*SI Handling Sys. v. Heisley*, 753 F.2d 1244 (3d Cir. 1985) ........................................ 5

*Times Mirror Magazines Inc. v. Las Vegas Sports News*, 212 F.3d 157 (3d Cir. 2000) ........................................ 4

*Viramontes v. Cook County*, No. 25-238 (U.S.) ........................................ 14

*Wolford v. Lopez*, 146 S. Ct. 2032 (2026) ........................................ 12, 13

## INTRODUCTION

Defendants' approach to litigating this matter is a case study on taking something exceedingly simple and attempting to make it exceedingly complex. Offering reams of pleadings, Defendants apparently believe that they can paper over the glaring constitutional problems with New Jersey's hollow point ban using "expert" reports and mountains of irrelevant "evidence." *See* Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Opp.") at 7 n.8, ECF 69. To that end, Defendants offer a lengthy brief largely rehashing the same arguments they made in their prior cross-motion for summary judgment. *See* Combined Brief in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment ("XMSJ"), ECF 43-1; *cf.* Plaintiffs' Memorandum of Law in Support of Summary Judgment ("MSJ"), ECF 41-11; *see also* Plaintiffs' Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and in Further Support of Plaintiffs' Motion for Summary Judgment ("MSJ Reply"), ECF 44.

For example, Defendants once again claim that hollow point bullets ("HPBs") were developed "for warfare." Opp. at 4 n.2. But they were not. MSJ Reply at 16-17 & n.16. Defendants once again claim that HPBs are "phenomenal[ly] lethal[]." Opp. at 36. But they are not, albeit they are more effective for self-defense than the neutered ammunition New Jersey allows its residents to carry. MSJ Reply at 18.

And Defendants once again claim that HPBs pose "significant public safety and health risks." Opp. at 5. But they do not, and in fact they pose *less* risk to innocent third parties. MSJ Reply at 19-22.

But none of Defendants' histrionics matter after *ANJRPC, Inc. v. Att'y Gen. N.J.*, 183 F.4th 211, 239 (3d Cir. 2026), which binds this Court to a "straightforward" framework for resolving this case. First, HPBs are "Arms" under the Second Amendment's plain text because, as a type of ammunition, they "unquestionably facilitate[] the arm user's ability 'to cast at or strike another.'" *Id.* at 248; *cf. id.* at 247 ("Second Amendment covers all magazines, not just magazines that New Jersey considers 'standard capacity.'").

Second, Defendants "must look to Founding-era laws for analogies to modern-day regulations," not regulations that "are too late in time...." *Id.* at 232, 244. And third, *ANJRPC* already has rejected the historical analogues Defendants offer here. *See id.* at 243-46; *cf.* Opp. at 29-34. That is enough to demonstrate that Plaintiffs have *at minimum* a high likelihood of success on the merits[1] and, for the reasons that follow, this Court should grant Plaintiffs' Motion for Preliminary Injunction.

---

[1] Defendants assert that Plaintiffs "rely exclusively" on *ANJRPC*, but then say "in that case, *the district court* grounded its decision in statistical evidence" on "common use" that they claim Plaintiffs did not present here. Opp. at 2 (emphasis added). But not only did Plaintiffs *present* evidence of HPBs' common use here (MSJ at 25-26), this Court is bound by what the en banc *Third Circuit* said in *ANJRPC*, not what the district court required.

## ARGUMENT

### I. PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM

Defendants focus their analysis of irreparable harm not on the actual harm that could befall Plaintiffs, but instead on Plaintiffs' purported delay in seeking preliminary relief. To that end, Defendants claim that Plaintiffs have a "decadeslong delay in seeking relief," which Defendants assert is a "dispositive basis" for denying relief. Opp. at 10; *see also id.* at 11 (claiming that Plaintiffs waited "48 years"). But challengers to a statute are not on the hook for every day, week, and year an unconstitutional statute remains on the books – often long before they were even born. Indeed, the Third Circuit already has implicitly rejected such a ridiculous argument. In *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 431 (3d Cir. 2024), the Court considered a preliminary challenge to Pennsylvania's ban on 18-to-20-year-olds from bearing arms outside of their homes during declared states of emergency, reviewing a district court "order denying them preliminary injunctive relief." But even though the Court noted that the statute under review was the Pennsylvania Uniform Firearms Act *of 1995* – meaning it had been in effect for nearly 30 years – the Third Circuit "reversed and remanded for the District Court to enjoin." *Id.*[2]

[2] Defendants rely heavily on *Ams. for Prosperity Found. v. Albence*, 2026 U.S. App. LEXIS 26711 (3d Cir. Aug. 31, 2026), to dispute Plaintiffs' showing of irreparable harm. *See* Opp. at 9, 15. But in that case, the Third Circuit had *first* upheld a law, the Supreme Court "later … clarified how to

Of particular import, the *Lara* Court expressly noted that the state of the law had recently changed – "last year, in [*Bruen*], the Supreme Court" upheld the "'right to carry a handgun … outside the home.'" *Lara v. Comm'r Pa. State Police*, 91 F.4th 122, 128-29 (3d Cir. 2024).

Likewise, Plaintiffs sought preliminary relief soon after the Third Circuit's opinion in *ANJRPC*, which all but mandates a ruling in their favor.

Next, Defendants offer a wall of cases which have held that delays of varying lengths undermined the litigants' claims of irreparable harm. Opp. at 11-12 (delays ranging from 44 days to two years). But *none* of those cases purports to establish a bright-line rule that a delay of any certain period of time is *per se* unreasonable or undermines a finding of irreparable harm. Indeed, other decisions have found irreparable harm *in spite of* lengthy delays. *See, e.g.*, *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) ("13 months"); *Times Mirror Magazines Inc. v. Las Vegas Sports News*, 212 F.3d 157, 160 (3d Cir. 2000) ("15-month delay").

---

apply" the governing standard, and *then* "[f]ive years after" that, the plaintiffs in that case filed suit. *Albence*, 2026 U.S. App. LEXIS 26711, at *2. Here, the Third Circuit has *never* upheld New Jersey's HPB ban, and Plaintiffs moved for a preliminary injunction less than two months after *ANJRPC* clarified the applicable framework (not five years). Moreover, in *Albence*, the district court originally "found no likelihood of success on the facial challenge" and "also doubted that the challengers would succeed on their as-applied challenge," and the Third Circuit ultimately agreed that the "likelihood of success is hazy." *Albence*, 2026 U.S. App. LEXIS 26711, at *3, *7. In other words, the fact that the challenged statute "had been 'on the books' and enforced for more than a decade" was an afterthought to both courts' focus on the likelihood of success. Plus, the Third Circuit made clear that "[o]ld statutes are not immune from preliminary relief...." *Id.* at *4, *7. In contrast here, Plaintiffs have a high likelihood of success, much more so after *ANJRPC*.

This proves nothing more than that each case must be weighed according to its unique facts, where "[t]he relevant inquiry is whether the movant is in danger of suffering irreparable harm *at the time the preliminary injunction is to be issued*." *SI Handling Sys. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985) (emphasis added). Ultimately, Defendants admit as much, conceding that any purported delay here only is "weighed against [the] need for urgent action" and merely "tends to indicate … a reduced need" for relief. Opp. at 12, 13.

Next, although now seemingly admitting that any purported delay is, in fact, "not dispositive," Defendants nevertheless accuse Plaintiffs of "offer[ing] no explanation for their delay...." Opp. at 13. But in the very next breath, Defendants focus in on Plaintiffs' explanation, and demur that "[t]he Third Circuit's decision in *ANJRPC* does not excuse Plaintiffs' delay either." *Id.* Indeed, as Plaintiffs explained, while they initially did not opt to seek preliminary relief, the Third Circuit's recent decision in *ANJRPC* has now foreclosed Defendants' arguments in this case, and all but mandates relief in Plaintiffs' favor. *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Preliminary Injunction ("MPI") at 2-4, ECF 63-2.

And, of course, once that governing Circuit law was handed down, showing Plaintiffs' likelihood of success to be overwhelming, they did not delay, filing their Motion shortly thereafter. Now that *ANJRPC* has resolved nearly all (if not all) of

the issues in this case in Plaintiffs' favor, it has become all too clear that their Second Amendment rights are being violated. *See Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ("appellants have sufficiently demonstrated irreparable injury, particularly in light of their strong likelihood of success on the merits.... The harm to the rights of appellants is apparent.").

In other words, because in constitutional cases the likelihood of success and the required showing of irreparable harm are tightly linked, the Third Circuit's resolution of the legal landscape in *ANJRPC* has made Plaintiffs' irreparable harm all the more clear.

Defendants disagree, asserting that "[t]he same arguments Plaintiffs raise now were available before *ANJRPC* was decided; in fact, Plaintiffs made similar arguments...." Opp. at 13. But that is precisely the point – the fact that the en banc Third Circuit has *agreed* with Plaintiffs' arguments forecloses Defendants' contrary arguments here, and not only requires a ruling in Plaintiffs' favor but also helps to establish the irreparable harm they are suffering. Defendants' disagreements with the way *ANJRPC* was decided (Opp. at 14) do not absolve this Court of its duty to follow that binding precedent.

At last focusing on the actual likelihood of irreparable harm to Plaintiffs in a single dismissive paragraph, Defendants discount Plaintiffs' ability to defend themselves with quality ammunition as merely a general "wish" and a "generalized

claim of harm." Opp. at 15. Not so. Plaintiff Bergmann-Schoch clearly described her desire to obtain "the best available ammunition in her firearm to defend her own life." MPI at 15; *see also* Compl. ¶¶80, 83 (Plaintiffs relegated to carrying "subpar" and less "effective" ammunition); Declaration of Heidi Bergmann-Schoch ¶10, ECF 1-3 ("If New Jersey did not ban me from carrying hollow point ammunition outside my home, I would.... But because hollow points are banned, I have refrained from violating the law and do not carry or own them."). Courts and judges likewise have recognized that access to the most effective weapons is critical to self-defense. *See, e.g.*, *ANJRPC*, 183 F.4th at 248 (large-capacity magazines "unquestionably facilitate[] the arm user's ability 'to cast at or strike another'"); *Duncan v. Bonta*, 19 F.4th 1087, 1155 (9th Cir. 2021) (Bumatay, J., dissenting) (magazines "holding more than ten rounds are 'more effective at incapacitating a deadly threat and, under some circumstances, may be necessary to do so'").

But Defendants' point – that Plaintiffs remain free to use subpar ammunition in their firearms (Opp. at 15) – does not undermine the irreparable harm that could occur – not only to Plaintiff Bergmann-Schoch, but also to the thousands of members and supporters of the organizational Plaintiffs – if they were forced to defend themselves using less-effective tools. The Supreme Court already has explained the importance of "[t]he inherent right to self-defense" *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008), which is "the central component of the Second

Amendment right" *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010). Not only Plaintiffs – but also Defendants' own "expert" – have explained the great utility of HPBs over target-shooting rounds like full metal jacket. *See* MSJ at 8-9, 25-26; *see also* XMSJ at 5, 17 (HPBs more effective to "stop" and "knock down" a threat).

Plaintiffs (and Defendants) also have explained the heightened risk to third parties when non-self-defense ammunition is used in self-defense encounters. *See* MSJ at 26 ("as Defendant Hengemuhle's predecessor explained in discovery, hollow points are superior at … 'prevent[ing] potential innocent unintended targets by getting struck by a … round that may pass through'"). And Plaintiffs likewise collected self-defense authorities explaining that "an attacker often 'will have surprise in his favor, and this is an almost insurmountable advantage to him,'" which "confirm[s] the necessity of responding to lethal force with as advantageous of a tool as one can muster." MSJ Reply at 14.

Unsurprisingly, then, numerous federal judges have recognized the benefits to self-defense of being well-armed. *See, e.g.*, *ANJRPC, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 128 (3d Cir. 2018) (Bibas, J., dissenting) ("smaller magazines mean more reloading. That may make guns less effective for ill – but so too for good," and noting that New Jersey's "own police detective testified that … 'law abiding citizens in a gunfight' would also find them 'advantageous'"); *Barnett v. Raoul*, 180 F.4th 1035, 1051 (7th Cir. 2026) (conceding that "every round matters in a self-defense

scenario"); *ANJRPC*, 183 F.4th at 247 ("ammunition is 'necessary to make meaningful an individual's right to carry a []gun for self-defense'"). If "every round matters" in a self-defense encounter, then surely *the type* of round matters as well.

To be sure, it may not be certain (or even likely) that Plaintiff Bergmann-Schoch will find herself in a self-defense encounter, and perhaps even less that a more effective HPB would make the difference between life and death. But Plaintiffs GOA, GOF, and CNJFO represent thousands of similarly situated persons across New Jersey who, like Plaintiff Bergmann-Schoch, carry firearms for self-defense on a daily basis and wish to utilize self-defense ammunition. The likelihood that at least one such person will need to engage in armed self-defense is exponentially higher than for any one individual. Even so, when weighing irreparable harm, courts must balance "the likelihood that injury will occur" with "the seriousness of the alleged irreparable injury to the plaintiff." *Marxe v. Jackson*, 833 F.2d 1121, 1128 (3d Cir. 1987).

And the seriousness of the potential injury here, from being relegated to subpar ammunition, cannot be understated – the cost is potentially one's life. That is by definition irreparable.[3] Defendants entirely fail to engage with this reality, and

---

[3] Of course, all of this says nothing about the irreparable harm to Plaintiffs' Second Amendment rights, central to which is the right of self-defense. *See Heller*, 554 U.S. at 599. To be sure, as Defendants are eager to point out, in this Circuit such harm is not presumed irreparable. *See* Opp. at 15. But Plaintiffs already conceded that point. *See* MPI at 14-15. And even though "we do not presume constitutional harms irreparable," the Third Circuit explained that "[w]e do not hold that

their protestations about Plaintiffs' purported delay in seeking relief do not undermine Plaintiffs' showing of irreparable harm.

## II. PLAINTIFFS ARE HIGHLY LIKELY TO SUCCEED ON THE MERITS

Although four factors must be met for issuance of a preliminary injunction, "[t]he first two are the most important threshold factors." *Kalshiex, LLC v. Flaherty*, 172 F.4th 220, 225 (3d Cir. 2026). And "the strength of the plaintiff's showing with respect to one may affect what will suffice with respect to another." *Marxe*, 833 F.2d at 1128. For example, "where the threatened irreparable injury is limited or is balanced to a substantial degree by countervailing injuries which would result to third parties, or to the public interest from the issuance of an injunction, 'greater significance must be placed upon the likelihood that the party will ultimately succeed on the merits of the litigation.'" *Constructors Ass'n of W. Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978).

Here, Defendants have claimed Plaintiffs' showing of irreparable harm to be the weakest, accusing them of "waiting nearly fifty years" to move for preliminary relief, and objecting to Plaintiffs' claims of the harm that could befall them. Opp. at 14, 15. But even if Defendants were correct about that (they are not) about some delay, Plaintiffs have shown a *uniquely* strong likelihood of success on the merits –

---

Second Amendment harms, or constitutional harms generally, cannot be irreparable." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024).

especially after the Third Circuit's recent opinion in *ANJRPC*. This particularly strong showing is more than sufficient to offset any purported weakness Defendants might find in Plaintiffs' showing of irreparable harm.

Indeed, on the merits, Defendants *ignore* the reality that *ANJRPC* has ruled against them – indeed, the premise of Plaintiffs' Motion for Preliminary Injunction. Instead, they merely rehash their arguments from their summary judgment briefing. *See* Opp. at 17-21 (claiming HPBs are not "Arms" under the Second Amendment's plain text); XMSJ at 10-13 (same); Opp. at 21-25 (claiming HPBs are not "Arms" because they are "disproportionate"); XMSJ at 14-24 (same); Opp. at 29-34 (claiming history supports the HPB ban via reference to irrelevant English and colonial restrictions, gunpowder regulations enacted for fire-safety reasons, 19th-century pistol cartridge bans enacted to disarm newly freed slaves, 19th-century Bowie knife restrictions that never uniformly banned public carry, and HPB bans from other countries); XMSJ at 28-34 (same).

Of course, Plaintiffs already dealt with each of these arguments. *See* MSJ Reply at 3-22 (textual arguments), 22-34 (historical arguments). And more importantly, the Third Circuit rejected these historical regulations in *ANJRPC*. MPI at 10-13. Plaintiffs therefore have a uniquely strong likelihood of success for the reasons already briefed, and there is no need to overcomplicate the simple questions presented by relitigating all the same issues.

## III. THE EQUITIES FAVOR PLAINTIFFS

Next, Defendants claim the equitable factors favor the continued enforcement of New Jersey's HPB ban, on the theory that the ban enjoys a "'presumption of constitutionality'" and the State would suffer irreparable harm if "barred 'from effectuating statutes enacted by representatives of its people.'" Opp. at 38. But Defendants are wrong on both counts. The Supreme Court has made clear that, in the Second Amendment context, if a "law place[s] any restrictions" on "implements used for offense or defense," then "it is *presumptively unconstitutional....*" *Wolford v. Lopez*, 146 S. Ct. 2032, 2043, 2041, 2044 (2026) (emphasis added). And it is black-letter law that "the Government does not have 'an interest in the enforcement of an unconstitutional law,' and … the public interest [i]s 'not served by the enforcement of an unconstitutional law.'" *ACLU v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003), *aff'd*, 542 U.S. 656 (2004); *see also Khalil v. Trump*, 786 F. Supp. 3d 871, 880 (D.N.J. 2025) ("The [Government] can have little or no interest in applying the relevant underlying statutes in what is likely an unconstitutional way.").

Likewise, "[t]he public interest generally favors such constitutional protection even in the face of otherwise important public interests." *LCN Enters. v. City of Asbury Park*, 197 F. Supp. 2d 141, 154 (D.N.J. 2002). Defendants' fearmongering[4]

[4] *See* Opp. at 39 (claiming HPBs were "developed for military purposes" and are "so disproportionately deadly," which Plaintiffs already disputed).

and whataboutisms[5] are therefore unavailing, as is their laughably offensive (and incorrect) claim that gun owners are inclined towards violence, and that gun ownership is pointless for self-defense.[6] No doubt, if New Jersey had things its way, the Second Amendment would cease to exist within its borders. Fortunately, though, "the Second Amendment has the same meaning in all parts of the United States" and "[m]erely local attitudes can neither shrink nor inflate the meaning of fundamental Bill of Rights guarantees...." *Wolford*, 146 S. Ct. at 2050.

Plus, New Jersey only licenses those who it finds are "[un]likely to engage in conduct, other than lawful self-defense, that would pose a danger to the applicant or others," and so the State already has made the "determin[ation]" that those licensed to publicly carry – like Plaintiffs – *do not pose* a danger to public safety. N.J.S.A. § 2C:58-4(d)(1). Defendants cannot have it both ways, and this Court should reject their ridiculous argument to the contrary.

---

[5] *See* Opp. at 39, 40 (speculating that various supposed harms "could result" or "would be at greater risk" of occurring).

[6] *See* Opp. at 39 n.15 (claiming "[s]tudies show" that, "when a person is in the presence of a firearm, they are more likely to perceive others as hostile, increasing the chances that they will react aggressively," and that there is "'little evidence that self-defense gun use reduces the likelihood of victim injury during a crime'").

## IV. DEFENDANTS' RESPONSE HAS UNDERMINED THEIR MOTION TO STAY THIS CASE

One final point bears emphasis. Defendants have moved to stay this case pending *Viramontes v. Cook County*, No. 25-238 (U.S.), claiming that they should be given another bite at the apple so that they can construct an entirely new defense. *See* ECF 61. But now, in opposing Plaintiffs' Motion for Preliminary Injunction, Defendants have regurgitated *the very same arguments* they previously offered on summary judgment. But the point of staying this case or reopening discovery would be so that Defendants can develop *new* arguments, not repeat old ones. Clearly, Defendants have nothing new to offer in defense of their HPB ban, and so this Court should deny their motion to stay and grant Plaintiffs' Motion for Preliminary Injunction.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted and the Challenged Statute should be preliminarily enjoined following *ANJRPC*.

Dated: Lake Success, New York
October 20, 2026

HARFENIST KRAUT & PERLSTEIN, LLP

By: s/ Steven J. Harfenist

Steven J. Harfenist
*Attorneys for Plaintiffs*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600 F: (516) 355-9601
E: SHarfenist@hkplaw.com

Oliver M. Krawczyk*
Ambler Law Offices, LLC
115 South Hanover Street, Suite 100
Carlisle, Pennsylvania 17013
T: (717) 525-5822
E: oliver@amblerlawoffices.com
**Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I, Steven J. Harfenist, hereby certify that I have filed a true and correct copy of the foregoing document or pleading with this Court's CM/ECF system, which generated a Notice of Electronic Filing, and provided a copy of the above to all counsel of record.

Dated: October 20, 2026

s/ Steven J. Harfenist
STEVEN J. HARFENIST